# EXHIBIT "A"



June 6, 2005

Anne Swan
Preferred Tax Service Inc
2201-A Market St
Wilmington, DE 19802

Dear Anne:

Now that the frenzied pace of tax season 2005 is behind you, have you thought about your future? Does the thought of getting ready for another tax season seem like a chore? Do you have a passion for moving on to something else? Jackson Hewitt Tax Service® can help you realize the fair market value of the company you have worked so hard to create with no broker fees and a short payout period, typically in less than 24 months.

Jackson Hewitt Tax Service (NYSE: JTX) is the second-largest and fastest-growing national tax preparation service company with over 5,400 offices in 49 states and the District of Columbia. *Entrepreneur®* magazine has named Jackson Hewitt the **#1 tax preparation service company** for the past 12 years, and ranked us the fourth-best franchise opportunity in its annual Franchise 500 list (January 2005).

The decision to sell your business is a difficult one and it's not just about the money. First and foremost in your mind may be the impact your announcement will have on client and employee retention. Jackson Hewitt respects and values the personal relationship you have with your customers and staff. As a leader in the tax industry, we certainly understand these are your greatest assets.

We have successfully integrated reputable tax practices like yours into the Jackson Hewitt system for the past five years. I will be scheduling appointments in your area during the next two weeks and would like to speak with you about this opportunity in more detail. Please contact me at 941-378-7256 or Kevin.Daly@jtax.com.

Sincerely,

Kevin Daly
Franchise Development Director

# EXHIBIT "B"

## Eddie Swan

**From:**    Eddie Swan [eddie.swan@verizon.net]
**Sent:**    Thursday, July 07, 2005 4:55 PM
**To:**      'Ken Leese'
**Subject:** RE: Preferred Tax service

Thursday, July 7, 2005

Ken,

Responding to your questions:

1. Top five preparers: Sheree Carter, Alexis Harmon, Amy Roberts, Sharon Larks, & Joanne Wyness
2. Calvin has no ownership. Calvin benefits by being able to access the client base for related services such as financial services, business planning & evaluations, wills, trusts, etc that he can provide. His participation during tax season is assisting the preparers with quick answers to situations and pitching in to assist with greeting clients, pulling copies, etc. This participation is done almost entirely during the two week peak period ( last week Jan/first week Feb).
3. Leasing 2132 Market St (Caterers) – Bob Piane Jr. called me today and this is what he is asking: approximately 1200 square feet – 1-2 year lease $1500 per month, 3-4 year lease $1300 per month, 5-6 year lease $1200. There was some other cost stipulations for options over 6 years. You can contact him at 302 658-4353.
4. A earn out is on the table.
5. If a proposal can be forthwith within two weeks it would be appreciated. Future plans are based on the outcome of this deal and with vacations and other unforeseen events it will be tax season all of a sudden.

Eddie Swan
Preferred Tax Service Inc
2201 A Market ST
Wilmington DE 19802
302 654 4388

-----Original Message-----
**From:** Ken Leese [mailto:Ken@JH1040.com]
**Sent:** Thursday, June 30, 2005 5:37 PM
**To:** Eddie.Swan@Verizon.net
**Cc:** Ken Leese
**Subject:** Preferred Tax service

Eddie,

Here are our questions:

1) Who are your top 5 preparers?

2) How much do you pay Calvin?
   Does Calvin have any ownership?

3) How much to lease  the Caterers space and how big is it?
   What would you do with your building?
--
--4) We are interested in an earn out. Would you be amenable?

5) When do you need a proposal?

Ken Leese
The Tax Authority, Inc.
DBA Jackson Hewitt Tax Service
1000 Maplewood Dr., Suite 110
Maple Shade, NJ 08052
Ph    856-482-5625 x1040
Fax    856-482-5387
Ken@JH1040.com
www.JacksonHewitt.com

# EXHIBIT "C"

## Eddie Swan

**From:**    Eddie Swan [eddie.swan@verizon.net]
**Sent:**    Thursday, July 07, 2005 4:55 PM
**To:**    'Ken Leese'
**Subject:** RE: Preferred Tax service

Thursday, July 7, 2005

Ken,

Responding to your questions:

1. Top five preparers: Sheree Carter, Alexis Harmon, Amy Roberts, Sharon Larks, & Joanne Wyness
2. Calvin has no ownership. Calvin benefits by being able to access the client base for related services such as financial services, business planning & evaluations, wills, trusts, etc that he can provide. His participation during tax season is assisting the preparers with quick answers to situations and pitching in to assist with greeting clients, pulling copies, etc. This participation is done almost entirely during the two week peak period ( last week Jan/first week Feb).
3. Leasing 2132 Market St (Caterers) – Bob Piane Jr. called me today and this is what he is asking: approximately 1200 square feet – 1-2 year lease $1500 per month, 3-4 year lease $1300 per month, 5-6 year lease $1200. There was some other cost stipulations for options over 6 years. You can contact him at 302 658-4353.
4. A earn out is on the table.
5. If a proposal can be forthwith within two weeks it would be appreciated. Future plans are based on the outcome of this deal and with vacations and other unforeseen events it will be tax season all of a sudden.

Eddie Swan
Preferred Tax Service Inc
2201-A Market ST
Wilmington DE 19802
302 654 4388

-----Original Message-----
**From:** Ken Leese [mailto:Ken@JH1040.com]
**Sent:** Thursday, June 30, 2005 5:37 PM
**To:** Eddie.Swan@Verizon.net
**Cc:** Ken Leese
**Subject:** Preferred Tax service

Eddie,

Here are our questions:

1) Who are your top 5 preparers?

2)How much do you pay Calvin?
   Does Calvin have any ownership?

3) How much to lease  the Caterers space and how big is it?
   What would you do with your building?
--
--4) We are interested in an earn out. Would you be amenable?

5) When do you need a proposal?

Ken Leese
The Tax Authority, Inc.
DBA Jackson Hewitt Tax Service
1000 Maplewood Dr., Suite 110
Maple Shade, NJ 08052
Ph    856-482-5625 x1040
Fax    856-482-5387
Ken@JH1040.com
www.JacksonHewitt.com

# EXHIBIT "D"

## Eddie Swan

| | |
|---|---|
| **From:** | Ken Leese [Ken@JH1040.com] |
| **Sent:** | Monday, August 08, 2005 4:50 PM |
| **To:** | Eddie.swan@verizon.net |
| **Subject:** | Preferred Tax service |

Sorry!

Ed,

Please see attached. As always, I am available for any questions. My cell phone number is 609-254-1040.

Ken Leese
The Tax Authority, Inc.
DBA Jackson Hewitt Tax Service
1000 Maplewood Dr., Suite 110
Maple Shade, NJ 08052
Ph    856-482-5625 x1040
Fax   856-482-5387
Ken@JH1040.com
www.JacksonHewitt.com

----- Original Message -----
**From:** Eddie Swan
**To:** 'Ken Leese'
**Sent:** Thursday, July 07, 2005 4:54 PM
**Subject:** RE: Preferred Tax service

Thursday, July 7, 2005

Ken,

Responding to your questions:

1. Top five preparers: Sheree Carter, Alexis Harmon, Amy Roberts, Sharon Larks, & Joanne Wyness
2. Calvin has no ownership. Calvin benefits by being able to access the client base for related services such as financial services, business planning & evaluations, wills, trusts, etc that he can provide. His participation during tax season is assisting the preparers with quick answers to situations and pitching in to assist with greeting clients, pulling copies, etc. This participation is done almost entirely during the two week peak period ( last week Jan/first week Feb).
3. Leasing 2132 Market St (Caterers) – Bob Piane Jr. called me today and this is what he is asking: approximately 1200 square feet – 1-2 year lease $1500 per month, 3-4 year lease $1300 per month, 5-6 year lease $1200. There was some other cost stipulations for options over 6 years. You can contact him at 302 658-4353.
4. A earn out is on the table.
5. If a proposal can be forthwith within two weeks it would be appreciated. Future plans are based on the outcome of this deal and with vacations and other unforeseen events it will be tax season all of a sudden.

Eddie Swan
Preferred Tax Service Inc
2201-A Market ST

10/5/2005

Wilmington DE 19802
302 654 4388

-----Original Message-----
**From:** Ken Leese [mailto:Ken@JH1040.com]
**Sent:** Thursday, June 30, 2005 5:37 PM
**To:** Eddie.Swan@Verizon.net
**Cc:** Ken Leese
**Subject:** Preferred Tax service

Eddie,

Here are our questions:

1) Who are your top 5 preparers?

2)How much do you pay Calvin?
   Does Calvin have any ownership?

3) How much to lease  the Caterers space and how big is it?
    What would you do with your building?
--
--4) We are interested in an earn out. Would you be amenable?

5) When do you need a proposal?

Ken Leese
The Tax Authority, Inc.
DBA Jackson Hewitt Tax Service
1000 Maplewood Dr., Suite 110
Maple Shade, NJ 08052
Ph    856-482-5625 x1040
Fax   856-482-5387
Ken@JH1040.com
www.JacksonHewitt.com



From:  Ken Leese
       The Tax Authority, Inc.
       DBA Jackson Hewitt Tax Service
       1000 Maplewood Dr, Suite 110
       Maple Shade, NJ 08052

To:    Eddie Swan
       Preferred Tax Service, Inc.
       Via Email:

Dear Mr. Swan:

The purpose of this letter is to open discussion on some of the basic terms and conditions of the proposed purchase by the undersigned (the "Buyer") of the Tax Business (the "Business") owned by you (the "Seller").  The terms set forth in this Letter will not become binding until a more detailed "Purchase Agreement" is negotiated and signed by the parties, as contemplated below by the section of this Letter entitled "Non-Binding."

**1. DESCRIPTION OF BUSINESS.**  The Business to be sold is the Preferred Tax Service, Inc. office located at 2201-A Market St. Wilmington, De. 19802. Included in the Business are all furnitures, fixtures, computers, signs, client lists, employee records and all property that integrally belongs to or is part of the Business, whether attached or detached, but specifically excluding those items deemed by the Seller and agreed by the Buyer to be personal property.

**2. PRICE.**  The purchase price is targeted at one times the net sales of the business as of April 30, 2005, if buyer retains 80% or more of the Seller's clients in the office located at 2201-A Market St. Wilmington, De. 19802. If Buyer retains less than 80% of the Seller's clients, the purchase price will be reduced 1% for every 1% that the retention is below 80%.

**3. CLOSING.**  Closing will take place September 30, 2005 or at another date by mutual agreement.

**4. DUE DILLIGENCE**.  After the final acceptance of a binding Purchase Agreement, Buyer or authorized designees will have 30 days to conduct due diligence reviews of financial, tax, legal, lease, employee or other records relating to the Business .

**5. FINANCIAL CONDITIONS.**  Buyer will pay a 10% down payment toward purchase price with the following due in future years at 6.0% simple interest:
   a.  April,1 2006 – 10% of the purchase price plus accrued interest
   b.  April 1, 2007 – 20% of the purchase price plus accrued interest
   c.  April 1, 2008 – 20% of the purchase price plus accrued interest
   d.  April 1, 2009 – 20% of the purchase price plus accrued interest
   e.  April 1, 2010 – 20% of the purchase price plus accrued interest

**6. OTHER CONDITIONS.**
   a.  Jackson Hewitt Tax Service, Inc. must approve the acquisition and participate in the funding.
   b.  The Tax Authority, Inc. will be granted the exclusive right to use the name Preferred Tax Service and any logos or marks associated with it.
   c.  Preferred Tax service, Inc. (or other Entity) will lease to the Tax Authority, Inc. the building known as 2201-A Market St. Wilmington, De. 19802 for the next two tax seasons at $1000 per month. The lease will include 5 - 1 yr options and the right for the Tenant to sublet.

d. The Tax Authority, Inc. will be granted the right of first refusal on the building at 2201-A Market St Wilmington, De. 19802.

e. The Buyer will assume all penalty and interest liabilities incurred by Seller's 2004 clients as a result of Seller's preparation of such client's tax.

f. For a period of three (3) years commencing with the Closing Date, neither Seller nor Eddie Swan nor Calvin _____ _____ shall, directly or indirectly, by himself or through, on behalf of, or in conjunction with any person or entity:

  a. Be engaged as an employee, independent contractor, director, officer, partner, shareholder or other equity interest holder, or otherwise work at, participate in or assist in any tax preparation and/or electronic filing and/or refund anticipation loan business at 2201-A Market St. Wilmington, De. or within twenty five (25) miles of this location;

  b. Request any current, former or prospective customers of the Business to curtail or cancel their business with Buyer, unless previously agreed to by Buyer;

  c. Disclose to any person or entity any trade secrets or any names of past or present customers of the Business or any other information relating to the Business; or

  d. Induce or attempt to influence any employee or customer of the Business to terminate his or her relationship with Buyer.

**7. STANDARD PROVISIONS.** The Purchase Agreement will include the standard provisions that are customary to the locality and/or that are required by law.

**8. STAND STILL.** Seller shall not initiate or carry on negotiations for the sale of the Business with any party other than Buyer unless either (1) Buyer and Seller fail to enter into a binding Purchase Agreement by August 31, 2005 or (2) Buyer or Seller abandon this Letter of Intent in writing.

**9. NON-BINDING.** This Letter of Intent does not, and is not intended to, contractually bind the parties, and is only a possible expression of the basic conditions to be incorporated into a binding Purchasing Agreement. This Letter does not require either party to negotiate in good faith or to proceed to the completion of a binding Purchase Agreement. The parties shall not be contractually bound unless and until they enter into a formal, written Purchase Agreement, which must be in form and content satisfactory to each party and to each party's legal counsel, in their sole discretion. Neither party may rely on this Letter as creating any legal obligation of any kind.

Sincerely,


_____          _____
Kenneth M. Leese, President                Date
The Tax Authority, Inc.

# EXHIBIT "E"

**Eddie Swan**

| | |
|---|---|
| **From:** | Ken Leese [Ken@JH1040.com] |
| **Sent:** | Monday, September 19, 2005 5:44 PM |
| **To:** | Eddie Swan |
| **Cc:** | Calvin Harmon |

**Subject:** LOI

I have made a few minor changes to our LOI. This LOI assumes that there is no non-compete or non-solicitation agreement with Calvin. If you are able to get an agreement with Calvin, then I would pay 120 % of net volume.

Please call or email with any questions.

Ken Leese
The Tax Authority, Inc.
DBA Jackson Hewitt Tax Service
1000 Maplewood Dr., Suite 110
Maple Shade, NJ 08052
Ph    856-482-5625 x1040
Fax   856-482-5387
Ken@JH1040.com
www.JacksonHewitt.com



From:  Ken Leese                            September 21, 2005
        The Tax Authority, Inc.
        DBA Jackson Hewitt Tax Service
        1000 Maplewood Dr, Suite 110
        Maple Shade, NJ 08052

To:     Eddie Swan
        Preferred Tax Service, Inc.
        Via Email:

Dear Mr. Swan:

The purpose of this letter is to open discussion on some of the basic terms and conditions of the proposed purchase by the undersigned (the "Buyer") of the Tax Business (the "Business") owned by you (the "Seller"). The terms set forth in this Letter will not become binding until a more detailed "Purchase Agreement" is negotiated and signed by the parties, as contemplated below by the section of this Letter entitled "Non-Binding."

**1. DESCRIPTION OF BUSINESS.** The Business to be sold is the Preferred Tax Service, Inc. office located at 2201-A Market St. Wilmington, De. 19802. Included in the Business are all furnitures, fixtures, computers, signs, client lists, employee records and all property that integrally belongs to or is part of the Business, whether attached or detached, but specifically excluding those items deemed by the Seller and agreed by the Buyer to be personal property.

**2. PRICE.** The purchase price is targeted at 100% of the net sales of the business as of April 30, 2005, if buyer retains 70% or more of the Seller's clients in the office located at 2201-A Market St. Wilmington, De. 19802. If Buyer retains less than 70% of the Seller's clients, the purchase price will be reduced 1% for every 1% that the retention is below 70%.

**3. CLOSING.** Closing will take place October 31, 2005 or at another date by mutual agreement.

**4. DUE DILLIGENCE.** After the final acceptance of a binding Purchase Agreement, Buyer or authorized designees will have 30 days to conduct due diligence reviews of financial, tax, legal, lease, employee or other records relating to the Business .

**5. FINANCIAL CONDITIONS.** Buyer will pay a 10% down payment toward purchase price with the following due in future years at 6.0% simple interest:
   a.  April,1 2006 – 10% of the purchase price plus accrued interest
   b.  April 1, 2007 – 20% of the purchase price plus accrued interest
   c.  April 1, 2008 – 60% of the purchase price plus accrued interest

**6. OTHER CONDITIONS.**
   a.  Jackson Hewitt Tax Service, Inc. must approve the acquisition and participate in the funding.
   b.  The Tax Authority, Inc. will be granted the exclusive right to use the name Preferred Tax Service and any logos or marks associated with it.
   c.  Preferred Tax service, Inc. (or other Entity) will lease to the Tax Authority, Inc. the building known as 2201-A Market St. Wilmington, De. 19802 until 4/30/07 at $1000 per month. The lease will include 5 - 1 yr options and the right for the Tenant to sublet.
   d.  The Tax Authority, Inc. will be granted the right of first refusal on the building at 2201-A Market St Wilmington, De. 19802.

   e. The Buyer will assume all penalty and interest liabilities incurred by Seller's 2004 clients as a result of Seller's preparation of such client's tax.

   f. For a period of three (3) years commencing with the Closing Date, neither Seller nor Eddie Swan shall, directly or indirectly, by himself or through, on behalf of, or in conjunction with any person or entity:

      a. Be engaged as an employee, independent contractor, director, officer, partner, shareholder or other equity interest holder, or otherwise work at, participate in or assist in any tax preparation and/or electronic filing and/or refund anticipation loan business at 2201-A Market St. Wilmington, De. or within twenty five (25) miles of this location;

      b. Request any current, former or prospective customers of the Business to curtail or cancel their business with Buyer, unless previously agreed to by Buyer;

      c. Disclose to any person or entity any trade secrets or any names of past or present customers of the Business or any other information relating to the Business; or

      d. Induce or attempt to influence any employee or customer of the Business to terminate his or her relationship with Buyer.

**7. STANDARD PROVISIONS.** The Purchase Agreement will include the standard provisions that are customary to the locality and/or that are required by law.

**8. STAND STILL.** Seller shall not initiate or carry on negotiations for the sale of the Business with any party other than Buyer unless either (1) Buyer and Seller fail to enter into a binding Purchase Agreement by August 31, 2005 or (2) Buyer or Seller abandon this Letter of Intent in writing.

**9. NON-BINDING.** This Letter of Intent does not, and is not intended to, contractually bind the parties, and is only a possible expression of the basic conditions to be incorporated into a binding Purchasing Agreement. This Letter does not require either party to negotiate in good faith or to proceed to the completion of a binding Purchase Agreement. The parties shall not be contractually bound unless and until they enter into a formal, written Purchase Agreement, which must be in form and content satisfactory to each party and to each party's legal counsel, in their sole discretion. Neither party may rely on this Letter as creating any legal obligation of any kind.

Sincerely,


_____  _____
Kenneth M. Leese, President                          Date
The Tax Authority, Inc.

# EXHIBIT "F"

## Eddie Swan

**From:** Calvin Harmon [Calvin.Harmon@preferredtax.com]
**Sent:** Friday, September 30, 2005 12:51 PM
**To:** 'Ken Leese'
**Cc:** eddie.swan@verizon.net
**Subject:** kenleese.doc

Please find attached the letter from Eddie about revisiting the sale after next tax season

# PREFERRED TAX SERVICE INC.

2201-A MARKET ST.
WILMINGTON, DE 19802

Telephone (302) 654-4388
Fax (302) 658-3789

September 30, 2005

Mr. Ken Leese
The Tax Authority, Inc.
D/b/a Jackson Hewitt Tax Service
1000 Maplewood Dr., Suite 110
Maple Shade, NJ 08052

Dear Ken:

I have decided not to sell Preferred Tax Inc. at this time. Since it appears that I will have to operate the office for another season, I want to see how the 2006 tax season goes before I make a commitment. If we are both still interested in a transaction after the 2006 tax season, we can revisit this.

Thank you for your effort and cooperation.


Sincerely,


Eddie Swan

# EXHIBIT "G"

# PREFERRED TAX SERVICE INC.

2201-A MARKET ST.                                               Telephone (302) 654-4388
WILMINGTON, DE 19802                                                  Fax (302) 658-3789

September 30, 2005

Mr. Robert A. Piane
Piane's Catering
Wilmington, DE 19802

Dear Bob:

I have decided not to sell Preferred Tax to Ken Leese, of Jackson Hewitt, at this time. I have advised Ken Leese of
my decision. In accordance with the agreement between you and me, I have attached a draft release between you and
Ken Leese, whereby you release one another from your respective obligations under the lease agreement between
you and him regarding the office space in your building.

Please call me if you have any questions.

Thank you for your help.

Sincerely,

Eddie Swan

## RELEASE

In connection with the Lease Agreement between Robert A. Piane ("Piane") and The Tax Authority, Inc. of Maple Shade N.J. ("Tax Authority") dated August 8, 2005 (the "Lease") , the parties agree as follows:

WHEREAS Tax Authority sought additional office space in connection with its negotiations with Preferred Tax Inc. for the purchase of that business and

WHEREAS, in furtherance of Piane's prior relationship with Preferred Tax, Piane desired to assist Tax Authority and Preferred Tax Inc. with those negotiations and

WHEREAS Preferred Tax Inc. has decided not to sell its business to Tax Authority at this time,

NOW THEREFORE, Piane hereby releases Tax Authority from any and all obligations pursuant to the Lease Agreement and Tax Authority hereby releases Piane from any and all obligations pursuant to the Lease Agreement, except that Piane shall refund the prepaid rent to Tax Authority within 7 days.

AGREED this _____ day of _____, 2005

_____ ____

Robert A. Piane


THE TAX AUTHORITY INC. OF MAPLE SHADE NJ


BY _____  _____

# EXHIBIT "H"

October 11, 2005

Mr. Ken Leese
The Tax Authority of Maple Shade NJ
1000 Maplewood Dr.
Suite 100
Maple Shade, NJ 08052

Dear Mr. Leese:

I understand that you and Eddie will not be completing your deal for Preferred Tax this fall. We entered into the August 8, 2005 lease based on your representation that the deal for Preferred Tax was already complete. Since that is not the case, it appears that we have two options. One option would be to go forward with the lease so that you can use the office for something other than a retail tax preparation office. The second option would be for us to attempt to re-lease the premises.

If we agreed to the re-lease option, we would not expect you to be liable beyond the first year and we would refund your prepayment to the extent that we found a new tenant during the first year.

Please advise us of how you would like to proceed.

Thanks for your cooperation.


Sincerely,


Robert A. Piane

# EXHIBIT "I"

<u>L E A S E</u>

THIS LEASE, made this _5 rh_ day of _Au_ ,
A.D., _200 5_, between ROBERT A. _____ PIANE, hereinafter called
the Landlord, and _TAX AUTHORITY_ , hereinafter called
the Tenant:    _OF MAPLE SHADE, NJ._

_1000 HARLOWOOD Dr._
_SUITE 110_
_MAPLE SHADE, N J._
_08052_
_PH: 856-482-5261_

WITNESSETH:

That the landlord leases to the Tenant and the Tenant
leases from the Landlord for a term of _69_ months, beginning on the
_1st_ day of _September_ , _2005_, and terminating on the _30_ day
of _APRIL_ , _2011_, part of the premises known as
2132 N. Market Street, _1st FLOOR CORNER STORE_ , city of Wilmington,
County of New Castle, State of Delaware. A monthly rental of _ONE_
_THOUSAND, TWO Hundred FIFTY_ Dollars ($ _1,250 oo_ ) per month, payable
in advance each month at such place as the Landlord might from time
to time designate. The first's month rent shall be due and payable
on the first day of the lease term and subsequent payments on the
same day of each month thereafter. The Landlord shall reserve the
right to increase the rental fee at the end of the term of this lease.

_1st YEAR PAID in Advance REDUCED RATE TO $1,175 FOR FIRST_
_12 MONTHS (total $14,100)_

The parties further agree:

1. All utility charges are to be paid by the Tenant
including heat, electricity and telephone.

2. Prior to the execution of this lease, the premises
were inspected by the Landlord and Tenant and found to be in good
repair.

3. During the lease term and any extension thereof, Land-
lord shall keep the leased premises fully insured against fire and
shall obtain and keep insurance against damage or injury to person
or property (owned by Landlord) upon the leased premises. Tenant
shall be responsible for obtaining and keeping insurance against
fire and theft of all contents owned by Tenant upon the leased
premises.

4. The Tenant shall not assign or sublet the premises
during the term without the written consent of the Landlord.

5. In case of default in any of the convenants, the
Landlord may resume possession of the premises by giving the Tenant
ten (10) days notice in writing of same default, and relet the
same for the remainder of term, at the best rent that can be obtained
for account of the Tenant, who shall make good any deficiency.

That the Landlord leases to the Tenant and the Tenant leases from the Landlord for a term of _69_ months, beginning on the _1ST_ day of _SEPTEMBER_, _2005_, and terminating on the _30_ day of _APRIL_, _2011_, part of the premises known as 2132 N. Market Street, _1ST FLOOR CORNER STORE_, city of Wilmington, County of New Castle, State of Delaware. A monthly rental of _ONE THOUSAND TWO Hundred FIFTY_ Dollars ($ _1,250.00_) per month, payable in advance each month at such place as the Landlord might from time to time designate. The first's month rent shall be due and payable on the first day of the lease term and subsequent payments on the same day of each month thereafter. The Landlord shall reserve the right to increase the rental fee at the end of the term of this lease.

**✱** _1ST YEAR PAID in Advance REDUCES RATE TO $1,175 FOR FIRST 12 MONTHS (Total $14,100)_

The parties further agree:

1. All utility charges are to be paid by the Tenant including heat, electricity and telephone.

2. Prior to the execution of this lease, the premises were inspected by the Landlord and Tenant and found to be in good repair.

3. During the lease term and any extension thereof, Landlord shall keep the leased premises fully insured against fire and shall obtain and keep insurance against damage or injury to person or property (owned by Landlord) upon the leased premises. Tenant shall be responsible for obtaining and keeping insurance against fire and theft of all contents owned by Tenant upon the leased premises.

4. The Tenant shall not assign or sublet the premises during the term without the written consent of the Landlord.

5. In case of default in any of the convenants, the Landlord may resume possession of the premises by giving the Tenant ten (10) days notice in writing of same default, and relet the same for the remainder of term, at the best rent that can be obtained for account of the Tenant, who shall make good any deficiency.

MAIL RENT TO:

R.A. HANE

2130 N. MARKET ST.

WILMINGTON, DE

19802

PH: 302-658-4353

6.  At the expiration of the said term or upon breach by the Tenant of any of the covenants herein mentioned, the Tenant shall yield and surrender quiet and peaceable possession of said premises in the same order and condition as the same now are, reasonable wear and tear thereof, accident happening by fire or other casualties excepted.

7.  The lease will terminate if the premises becomes uninhabitable because of delapidation, condemnation, fire, or other casualty for a period in excess of thirty days.  Rent shall abate for any period that the premises are uninhabitable.

8.  The Tenant shall take good care of the within demised premises and its fixtures;  and shall at his own cost or expense make and do all repairs required to walls, coilings, paper, plumbing work, pipes and fixtures belonging thereto, whenever damage or injury to the same shall have resulted from the misuse or neglect;  and shall repair and make good any damage occurring to the building or any tenant thereof, by reason of any neglect, carelessness or injury to the gas or water pipes, draining systems, water meter, faucets, property glass, or heating equipment;  and connections by the Tenant himself;  or upon premises leased to said tenant, and not to call on the Landlord for any disbursement therefor.

9.  The Tenant has no authority to make any alterations to the premises or to incur any debt or make any charge against the Landlord or create any lien upon the leased property for any work done or materials furnished without the express consent of the Landlord in writing.

10.  Tenant will allow Landlord or any agent of the Landlord duly authorized in writing to enter upon the premises for purposes of inspection, repair, alteration, or improvement at reasonable times during daylight hours.

11.

12.

13.  The Tenant is leasing the part of the premises known as follows:  2132 N. MARKET ST, 1ST FLOOR CORNER STORE

IN WITNESS WHEREOF, the parties have set their hands and seals to duplicate copies of this lease, each of which will rank as an original.

abate for any period that the premises are uninhabitable.

8.    The Tenant shall take good care of the within demised premises and its fixtures; and shall at his own cost or expense make and do all repairs required to walls, coilings, paper, plumbing work, pipes and fixtures belonging thereto, whenever damage or injury to the same shall have resulted from the misuse or neglect; and shall repair and make good any damage occurring to the building or any tenant thereof, by reason of any neglect, carelessness or injury to the gas or water pipes, draining systems, water meter, faucets, property glass, or heating equipment; and connections by the Tenant himself; or upon premises leased to said tenant, and not to call on the Landlord for any disbursement therefor.

9.    The Tenant has no authority to make any alterations to the premises or to incur any debt or make any charge against the Landlord or create any lien upon the leased property for any work done or materials furnished without the express consent of the Landlord in writing.

10.    Tenant will allow Landlord or any agent of the Landlord duly authorized in writing to enter upon the premises for purposes of inspection, repair, alteration, or improvement at reasonable times during daylight hours.

11.

12.

13.    The Tenant is leasing the part of the premises known as follows: 2132 N. MARKET ST, 1ST FLOOR CORNER STORE

IN WITNESS WHEREOF, the parties have set their hands and seals to duplicate copies of this lease, each of which will rank as an original.

SIGNED, SEALED AND DELIVERED
in the presence of:

Landlord

Robert A. Piane, Sr.

Tenant:                    Pres

The Tax Authority, Inc

# EXHIBIT "J"



**VORTEX**
**FITNESS EQUIPMENT, LLC.**
2130 N. Market St.
Wilmington, De 19302
Ph: (302) 426-0555  Fax: (302) 426-0701

## FACSIMILE COVER SHEET

FROM:   Robert A. Piane, Jr.

FAX #:   (302) 426-0701

PHONE #: (302) 426-0555

TO:   _Ed Swan / Calvin_

FAX #:   _658-3789_

COMPANY:   _____

MESSAGE:   _Please Advise_
  _— My cell # is 563-4487_

  _RL_

NUMBER OF PAGES (including cover page): _3_

DATE SENT: _10/12/05_

TIME SENT: _2:50 pm._



# Fax

| To: | Robert Plane, Sr. | From: | Ken Leese |
|-----|-------------------|-------|-----------|
| Fax: | 302-654-7976 | Pages: | 2 |
| Phone: | | Date: | 10/12/05 |
| Re: | Lease | cc: | |

☒ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

1000 Maplewood Dr. Ste. 110, Maple Shade, NJ 08052, Fax # 856-482-5387

● Comments:

Via email
Via fax
Certified



**JACKSON HEWITT® TAX SERVICE**

Independently Owned and Operated by The Tax Authority, Inc.
1000 Maplewood Drive #110
Maple Shade, NJ 08052
Phone (856) 482-5625
Fax (856) 482-5387

Mr. Robert A. Piane, Sr.
Piane Caterers
2130 North Market St.
Wilmington, De 19802

Dear Mr. Piane:

You are correct that we entered into a lease on August 8, 2005, a lease that contained no contingency clauses and one that my Company prepaid 12 months rent. However, I never represented that the deal with Preferred Tax was already complete. In fact, in our last meeting, we discussed that Preferred Tax changed their price and the deal was less likely to happen. It is unfortunate that a deal with Preferred Tax did not get done, but I made every reasonable effort and negotiated in good faith. I fully expected a deal to be consummated.

With that being said, I believe that it is you who has two options:
1) Return to me $14,100.00 by 9:00 am Monday Oct. 24, 2005 and I will agree to void the lease.
2) Honor the lease.

If I do not receive a check by the aforementioned date and time, I will assume you are honoring the lease and we will commence moving in the location. If we encounter any issues upon moving in, we will be prepared to immediately go to court and allow the legal system to decide this.

Sincerely,

Kenneth M. Leese

# EXHIBIT "K"

# Harmon & Associates

### *Attorneys at Law*
**2201-A N. Market St.**
**Wilmington, DE 19802**
**(302) 654-4388 PHONE**
**(302) 658-3789 FAX**

E. Calvin Harmon, Jr., Esq.

October 18, 2005

Mr. Robert A. Piane, Sr.
2130 N. Market Street
Wilmington, DE 19802

BY MAIL

### RE:    Lease of Office Space

Dear Mr. Piane:

My client, Mr. Edwin Swan, has requested that I write you to inform you of his intentions in connection with your lease with The Tax Authority.

It is Mr. Swan's contention that he provided you with The Tax Authority as a prospective tenant and that, but for his introduction, you would not have had The Tax Authority as a prospective tenant. Mr. Swan further contends that he provided The Tax Authority as a prospective tenant on the condition that you not lease your space to The Tax Authority unless and until Preferred Tax and The Tax Authority reach agreement regarding the sale of Preferred Tax to The Tax Authority. Mr. Swan contends that you have breached your agreement with him by entering into a lease with The Tax Authority despite the failure of Preferred Tax and The Tax Authority to enter into a purchase agreement.

If this situation among you, Mr. Swan and The Tax Authority is not resolved before October 24, 2005, Mr. Swan intends to seek a court injunction against the lease and to seek enforcement of the prior loan agreements between you and him.

Sincerely,

E. Calvin Harmon, Jr.

Cc:    Ken Leese, The Tax Authority
       Robert Piane, Jr.

# EXHIBIT "L"



Sent via Fax to: 658-3789 (Mr. Ed Swan, Mr. Calvin Harmon, Jr.)
Sent Via fax to: 856-482-5387 (Mr. Ken Leese)

**Re: Lease of office space**
Date: 10-21-05

Dear Mr. Harmon and Mr. Ed Swan,

I am writing in response to your last letter informing us of Mr. Swan's intentions in connection to the lease to MR. Ken Leese, owner of The Tax Authority.

You state there was some sort of agreement between Mr. Swan and my father, Mr. Robert Piane, SR not to rent to Mr. Leese until the purchase agreement was made between Mr. Swan and Mr. Leese for Mr. Swan's business. This is untrue. There was no agreement like that made or even mentioned before the lease was signed. Perhaps Mr. Swan and Mr. Leese had that as a contingency of their own deal but that is their business which we had no privy to. One would think that if that were such a key point Mr. Swan would have brought Mr. Leese to us personally, or shown us some documentation, or at least told us that was the case. He did none of these things prior to Mr. Leese coming in to negotiate a lease with us. You yourself told me that Mr. Swan was to blame for this since it was his deal and his responsibility to see the lease was made only as a contingency to his closing the deal with Mr. Leese and that this should have been done before we ever had the chance to meet Mr. Leese, not to try and get it talked about after-the-fact. It was a bad business move on his part and he is expecting us to pay for his mistake.

In fact a couple months prior to Mr. Ken Leese coming to see us about renting the space, Mr. Swan had told my father and I, that he was selling his business to another Tax Firm and that that firm would be contacting us about leasing the corner area of our property at 2130 Market Street. At that time Mr. Swan never made it known to us that the deal had not been settled or was even still in negotiations, nor did he ask us not to sign any lease should we be contacted, nor were we made aware of any contingencies prior to signing the lease. We were not in on any of his meetings with Mr. Leese beforehand, we were never asked to be part of any of their negotiations to buy and sell the business of Mr. Swan then, nor any time afterward.

P. 1

Once the lease was signed on August 8th, 2005 we did not find out until Aug 20th that the business deal had not transpired. Since finding this out, we tried to listen to Mr. Swan's ideas on how he wanted us to help him improve his position, and we weren't sure what we could do. Independently, as time went on, both parties began telling us that the negotiations were continuing. We wished them well and at no point did Mr. Swan nor Mr. Leese ever suggest we stop the improvements to the space, which Mr. Leese had requested we try and complete by September.

Just recently we got final word from Mr. Swan that he denied to accept the final business buy -out deal offered to him by Mr. Leese. Just after that we were asked by Mr. Swan to find a way to get Mr. Leese to agree to not move in and for us to allow him out of his lease. Quite a request.

In good faith we attempted to help the situation and obtained an offer that Mr. Leese would be allowed to walk away from the lease if he had the $14,000 returned to him by October 24th. We offered this to Mr. Swan and he was not willing to pay it, he wanted us to pay it. This is not our responsibility. We can't be expected to pay for his business mistakes, and went overboard even extending the courtesy of allowing the opportunity to help Mr. Swan.

We fulfilled our part of the lease and prepared the space for Mr. Leeses' needs as we were required to do by Mr. Leese. We expect the tenant, the Tax Authority of Maple Shade, NJ to continue on with his lease obligations if Mr. Leese and Mr. Swan can't settle their differences by October 24, 2005.

Plus, there are some matters of a few unpaid catering invoices we have not received payment for that Mr. Swan still owes Mr. Piane.

Sincerely,

Mr. Robert Piane, Jr. (on behalf of Mr. Robert Piane, Sr.)

C.C. Mr. Robert Piane, Sr.
     Mr. Edward Swan
     Mr. Ken Leese of the Tax Authority

P.2