IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC.,          :
                                      :   Civil Action No.
                  Plaintiff,          :   1:05-CV-00872-SLR
                                      :
          v.                          :
                                      :
THE TAX AUTHORITY, INC.,              :
et al.,                               :
                                      :
                  Defendants.         :

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S VERIFIED COMPLAINT OF DEFENDANTS,
THE TAX AUTHORITY, INC., AND KENNETH M. LEESE**

---

Erin D. Edwards (No. 4392)
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6552
(302) 576-3471 (Fax)

*Attorney for Defendants
The Tax Authority and
Kenneth M. Leese*

OF COUNSEL:
Howard A. Rosenthal
Patrick J. Doran
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

DATED: December 30, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................iii

NATURE AND STAGE OF PROCEEDINGS...........................1

SUMMARY OF ARGUMENT.......................................2

PTS' FACTUAL ALLEGATIONS..................................4

ARGUMENT.................................................7

    I.    Standard Of Review............................7

    II.   PTS Has Failed To Plead Any Valid RICO
          Claim (Count VII)..............................8

    III. Since The Complaint Fails To Plead A Valid
          RICO Claim, This Entire Action Should Be
          Dismissed For Lack Of Subject Matter
          Jurisdiction..................................15

    IV.   PTS' State Law Claims Fail To State Any Claim
          Upon Which Relief Can Be Granted And Should
          Be Dismissed..................................16

          A.   PTS Has Failed To State A Claim For Breach
              Of Contract Because The Alleged Agreement
              Lacks Consideration And Is Barred
              By The Statute Of Frauds (Count I).........16

          B.   PTS' Tort Claims Relating To The Lease
              Are Barred By The Economic Loss Doctrine
              (Counts II, III, VI, VII and VIII).........18

          C.   PTS Has Failed To State A Claim For
              Tortious Interference With Prospective
              Economic Advantage (Count II)..............19

          D.   PTS Has Failed To State A Claim For
              Tortious Interference With Contract
              Since Tax Authority Cannot Interfere
              With Its Own Contract (Count III)..........20

          E.   PTS' Claims For Unfair Trade Practices
              And Civil Conspiracy Are Barred By
              Delaware's Uniform Trade Secrets Act
              (Counts IV and VI).........................21

          F.   PTS Has Failed To State A Claim For

064756.1001

Misappropriation Of Trade Secrets
(Count V) ..................................22

G.    PTS' Has Failed To State A Claim For
Civil Conspiracy (Count VI) ...............24

H.    PTS Has Failed To State A Claim For Bad
Faith (Count VIII) ........................25

CONCLUSION..............................................26

### TABLE OF AUTHORITIES

#### CASES

Acierno v. Preit-Rubin Inc., 199 F.R.D. 157 (D.Del. 2001)............................................................19

Annulli v. Panikkar, 200 F.3d 189 (3d Cir. 1999)..............13

Banks v. Wolk, 918 F.2d 418 (3d Cir. 1990)....................14

Bonavitacola Electric Contractor, Inc. v. Boro Developers, Inc., 2003 U.S.App.LEXIS 27918 (3d Cir. October 30, 2003), cert. denied, 125 S.Ct. 57, 2004 U.S. LEXIS 5646 (2004)...............................9,11,13

Charal Investment Co., Inc. v. Rockefeller, 131 F.Supp.2d 593 (D.Del. 2001)................................24

Dionisi v. DeCampli, 1995 Del.Ch.LEXIS 88 (Del.Ch. June 28, 1995)..............................................23

Dunlap v. State Farm Fire and Casualty Co., 878 A.2d 434 (Del. 2005)............................................26

Glessner v. Kenny, 952 F.2d 702 (3d Cir. 1991)...............10

H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893 (1989)...................................13

Hindes v. Castle, 937 F.2d 868 (3d Cir. 1991)................14

Hunter v. Diocese of Wilmington, 1987 Del.Ch.LEXIS 468 (Del.Ch. Aug. 4, 1987).......................................16

Huntington Homeowners Association, Inc. v. 706 Investments, 1999 Del.Ch.LEXIS 119 (Del.Ch. May 28, 1999).......................................................17

Huss v. Green Spring Health Services, Inc., 18 F.Supp.2d 400 (D.Del. 1998)................................15

International Fidelity Insurance Co. v. Mattes Electric, Inc., 2002 Del.Super.LEXIS 441 (Del.Super. June 27, 2002)..............................................18

Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983 (Del.Ch. 1987).........................................20

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir.), cert. denied, 501 U.S. 1222 (1991)..............11,14

Kenty v. Bank One, Columbus, N.A., 92 F.3d 384 (6th Cir. 1996) ..................................................12

Kirkwood Kin Corp. v. Dunkin' Donuts, Inc., 1997 Del.Super.LEXIS 30 (Del.Super. Jan. 29, 1997).................26

Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 755 F.Supp. 635 (D.Del. 1991)...........................21

Lightning Lube v. Witco Corp., 4 F.3d 1191 (3d Cir. 1993) ..........................................................15

MacInnis v. Charles F. Hill Construction, Inc., 1981 Del.Super.LEXIS 693 (Del.Super. Dec. 18, 1981)................18

Marshall-Silver Construction Co., Inc. v. Mendel, 894 F.2d 593 (3d Cir. 1990)......................................14

Nicolet, Inc. v. Nutt, 525 A.2d 146 (Del.Super. 1987).........25

Nielsen Electronics Institute v. Student Finance Corp., 2001 U.S.Dist.LEXIS 25556 (D.Del. 2001)..............8,13

Sanirab Corp. v. Sunroc Corp., 2002 Del.Super.LEXIS 350 (Del.Super. April 29, 2002)...............................21

Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS 170 (Del.Super. April 24, 2001), affd, 812 A.2d 894 (Del. 2002).......................................................21,23

Sedima, S.P.R.L. v. Imrex Company, Inc., 473 U.S. 479, 105 S.Ct. 3275 (1985).........................................9

Shearin v. E.F. Hutton Group, 652 A.2d 578 (Del.Ch. 1994) .......................................................20,21

Smith v. Delaware First Federal Credit Union, 395 F.Supp.2d 127 (D.Del. 2005)...................................16

Supra  Medical Corp. v. Baker, 1996 U.S.Dist.LEXIS 14765 (D.Del. 1996)..........................................9

Tansey-Warner, Inc. v. Hooper, 1989  Del.Super.LEXIS 479 (Del.Super. Nov. 15, 1989)...............................25

Tillman v. Pepsi Bottling Group, Inc., 2005 U.S.Dist.LEXIS 18891 (D.Del. 2005)...........................7

William Lloyd, Inc. v. Hrab, 1999 Del.Super.LEXIS 276 (Del.Super. April 7, 1999)..................................16

Williams v. National American Postal Workers Union,
2005 U.S.Dist.LEXIS 7342 (D.Del. 2005)..........................8

Young v. West Coast Industrial Relations Association,
763 F.Supp. 64 (D.Del. 1991), affd, 961 F.2d 1570 (3d
Cir. 1992) ......................................11,12,14,15

## STATUTES AND RULES

18 U.S.C. § 1341...........................................8,11

18 U.S.C. § 1343...........................................8,11

18 U.S.C. §§ 1961-1968 .......................................1

18 U.S.C. § 1962.............................................8

28 U.S.C. § 1331............................................15

28 U.S.C. § 1332............................................15

6 Del.C. §§ 2001, et seq....................................3

6 Del.C. § 2001(4).......................................23,24

6 Del.C. § 2007(a).........................................21

6 Del.C. § 2714(a).........................................17

Rule 9(b), F.R.C.P........................................9,11

Rule 12(b)(6), F.R.C.P...................................2,7,15

Rule 12(h)(3), F.R.C.P......................................15

## REFERENCES

Restatement (Second) Contracts, § 17........................16

## NATURE AND STAGE OF PROCEEDINGS.

In this action, plaintiff, Preferred Tax Service, Inc.
("PTS"), which operates a tax preparation business in
Wilmington, primarily alleges that defendants, The Tax
Authority, Inc. ("Tax Authority") and its principal, Kenneth
M. Leese ("Leese"), breached an oral agreement not to lease
office space from defendants Robert A. Piane and Robert A.
Piane, Jr. (collectively "Piane Defendants") until such time
as the Tax Authority, which competes with PTS, had reached
an agreement to purchase PTS' tax preparation business.  PTS
also claims that Tax Authority misappropriated confidential
information disclosed by PTS in the course of the parties'
negotiations for the sale of PTS.

In its Verified Complaint filed on December 16, 2005
(D.I. No. 1), PTS asserts claims against all defendants for
breach of agreement (Count I), tortious interference with
prospective economic advantage (Count II), "tort,
intentional tort and tortuous interference with contract"
(Count III), unfair trade practices (Count IV),
misappropriation of trade secrets (Count V), civil
conspiracy (Count VI), common law fraud and a violation of
the Racketeer Influenced and Corrupt Organizations Act, 18
U.S.C. §§ 1961-1968 ("RICO")(Count VII), and "bad faith"
(Count VIII).  PTS also filed a Motion for Temporary
Restraining Order (D.I. No. 2), seeking to prevent Tax

064756.1001

Authority not only from leasing the Piane defendants' office space, but also from opening any tax preparation business which would compete with plaintiff in Wilmington.[1]

Tax Authority and Leese file this Motion pursuant to Rule 12(b)(6), F.R.C.P., to dismiss PTS' Verified Complaint in its entirety as it fails to state any claim upon which relief can be granted.

## SUMMARY OF ARGUMENT

Given the allegations in the Verified Complaint, even if accepted as true, there is no basis for this action under state or federal law, nor any basis for federal jurisdiction.

*First*, the single alleged "federal question", purportedly a claim under RICO is insufficient and, given PTS' allegations, cannot possibly be reconstituted to meet the required pleading standards. Since the Verified Complaint fails to plead a valid RICO claim, this entire action should be dismissed for lack of subject matter jurisdiction as plaintiff's allegations confirm that there

---

[1]Despite the filing of the Motion for Temporary Restraining Order, PTS has taken no action to request such relief from the Court. For the reasons set forth in this Memorandum, there is no basis for any such relief, nor for any federal or state claims.

-2-

is no diversity of citizenship.

*Second*, even were the Court inclined to consider the state claims, they are equally defective.  PTS' claim for breach of contract fails because the purported oral agreement lacks consideration and, in any event, violates the applicable statute of frauds.  PTS likewise fails to state claims for tortious interference with prospective economic advantage or tortious interference with contract since Tax Authority cannot interfere with its own contract.  PTS' claims for unfair trade practices and civil conspiracy, arising out of the same operative facts as the claim for a violation of Delaware's Uniform Trade Secrets Act, 6 Del.C. §§ 2001, et seq. ("UTSA"), are preempted by the specific provisions of the statute.  In any event, PTS fails to state a cognizable claim under the UTSA as it has failed to plead the disclosure of any covered confidential information.

*Third*, PTS has failed to state valid claims for civil conspiracy or bad faith as there are no such independent tort claims in Delaware.

- 3 -

## PTS' FACTUAL ALLEGATIONS[2]

On or about June 16, 2005, PTS' principal, Edwin Swan ("Swan") began negotiations with Leese, the principal of Tax Authority, for the purchase of PTS by Tax Authority. [Complaint (D.I. No. 1), & 16.]  At the outset of these negotiations, Swan provided Leese with a list of customer names and fees, but no other information related to PTS' business.  [Id., & 18; see ARGUMENT, Part IV.G., infra.] Swan does not allege (nor could he allege) that he requested any confidentiality agreement or other formal protection. Likewise, Swan did not request any restrictive covenant prohibiting Tax Authority from doing business in Wilmington if the negotiations were not successful.

During the negotiations, Leese commented to Swan that PTS' existing office space in Wilmington might be too small for Tax Authority's purposes.  [Id., & 19.]  Swan then referred Leese to his long-time friend, defendant Robert A. Piane, Jr., to discuss the possibility of leasing additional office space at 2132 North Market Street ("Property") from

_____

[2]PTS' allegations must be accepted solely for purposes of this Motion.  Defendants deny those allegations and reserve the right to file an Answer as necessary.

-4-

the Piane Defendants to accommodate Tax Authority's future
needs.  [Id., & 20.]  According to PTS, Swan placed Leese in
touch with the Piane Defendants based on their oral
"agreement" that the Piane defendants would only lease the
Property to Tax Authority if Tax Authority agreed to
purchase PTS.  [Id., && 22, 23, 26.]

Over the next few weeks, PTS and Tax Authority
continued to negotiate the sale of PTS to Tax Authority.
[Id., Ex. "B"]  At the same time, as suggested by Swan, Tax
Authority and the Piane Defendants negotiated a lease for
the Property, which was executed on August 8, 2005
("Lease").  [Id., Ex. "I" and "J"]  The Lease was not
subject to any conditions relating to the negotiations or
potential sale of PTS' business to Tax Authority.[3]  [Id.]
On the same day the Lease was executed (August 8, 2005),
Leese e-mailed a draft, non-binding letter of intent to
Swan, for the purpose of "open[ing] discussion on some of
the basic terms and conditions of the proposed purchase ...
of the Tax Business owned by you." [Id., Ex. "D"]

On August 10, 2005, Swan was informed by Piane, Jr.,
that the Lease had been consummated.  Swan allegedly told
Piane, Jr. that he found the Lease unacceptable as Tax

---

[3]Pursuant to the Lease, Tax Authority is leasing the
Property for 69 months beginning on September 1, 2005, for a
monthly rental of $1,250.  Tax Authority paid the first year
rental ($14,100) in advance at a reduced monthly rate of

Authority and PTS had not reached any agreement.  [Id., & 35.]  Piane, Jr. allegedly later told Swan that Leese had told him that his "deal was done" with Swan to purchase PTS. [Id., & 36.]  Swan claims that, when PTS complained to Tax Authority, Leese agreed that Tax Authority would not need the Property if it did not consummate the purchase of PTS and allegedly offered to rescind the Lease if the Piane Defendants likewise agreed and returned the advance rent payment.  [Id., & 40.]

PTS and Tax Authority continued to negotiate, and Leese transmitted a revised, non-binding letter of intent to PTS on September 19, 2005.  [Id., Ex. "E"]  However, on September 30, 2005, PTS advised Tax Authority that it was not going to proceed with the sale.  [Id., & 46.]  At the same time, also by letter dated September 30, 2005, Swan informed the Piane Defendants that he had decided not to sell PTS to Tax Authority, and transmitted a release to be used to terminate the Lease.

Despite PTS' subsequent complaints and threats, the Piane Defendants refused to refund Tax Authority's advance payment or cancel the Lease.  [Id., && 47-58.]  According to PTS, Tax Authority is preparing to use the Property to open

---

$1,175.  [Complaint (D.I. No. 1), Ex. "J"]

a competing tax preparation business.  [Id., & 59.]  As of
the filing of the Verified Complaint, work is continuing at
the Property and Tax Authority has installed signs
advertising its business.  [Id.]

### ARGUMENT

### I.   Standard Of Review[4]

The standard of review for a motion to dismiss pursuant
to Rule 12(b)(6), F.R.C.P., is familiar:

> "In analyzing a motion to dismiss
> pursuant to Rule 12(b)(6), the court
> must accept as true all material
> allegations of the complaint and it must
> construe the complaint in favor of the
> plaintiff.  'A complaint should be
> dismissed only if, after accepting as
> true all of the facts alleged in the
> complaint, and drawing all reasonable
> inferences in the plaintiff's favor, no
> relief could be granted under any set of
> facts consistent with the allegations of
> the complaint.'  Claims may be dismissed
> pursuant to a Rule 12(b)(6) motion only
> if the plaintiff cannot demonstrate any
> set of facts that would entitle her to
> relief.  The moving party has the burden
> of persuasion."  Tillman v. Pepsi
> Bottling Group, Inc., 2005
> U.S.Dist.LEXIS 18891, *14-15 (D.Del.
> 2005)(citations omitted).

However, "claims...relying on vague and conclusory

---

[4] Any unreported cases are being filed in an Appendix to
this Brief which is being filed contemporaneously with the
Court.

allegations do[] not provide "fair notice" and will not
survive a motion to dismiss." Williams v. National American
Postal Workers Union, 2005 U.S.Dist.LEXIS 7342 (D.Del.
2005)(citation omitted).  Likewise, "[t]he Court is...not
required to accept legal conclusions either alleged or
inferred from the pleaded facts." Nielsen Electronics
Institute v. Student Finance Corp., 2001 U.S.Dist.LEXIS
25556, *8 (D.Del. 2001)(citation omitted).

Here, even accepting as true all of PTS' allegations,
the Complaint fails to state any valid claims, and should be
dismissed.

## II.  PTS Has Failed To Plead Any Valid RICO Claim (Count VII)

In Count VII of the Verified Complaint, styled as a
claim for "Common Law Fraud, Mail Fraud and Wire Fraud,"
after incorporating the allegations of Paragraphs 1 through
90 of the Verified Complaint, PTS only states:

> "The defendants' actions as described in
> this Complaint constitute common law
> fraud, a violation of 18 U.S.C.A. §
> 1962, the Racketeer Influenced and
> Corrupt Organizations Act (RICO) mail
> fraud (18 U.S.C.A. § 1341)[sic] and wire
> fraud (18 U.S.C.A. § 1343)." [Complaint
> (D.I. No. 1), & 92.]

Based on nothing more than this, PTS purports to brand
defendants as "racketeers" and state a valid RICO claim.[5]

---

[5]This is the only basis for federal question jurisdiction.
Once dismissed, as there is no diversity on the face of the

On its face, this is not adequate pleading, particularly when applying the close scrutiny which RICO and fraud claims demand.  See, e.g., Rule 9(b), F.R.C.P. ("all averments of fraud..., shall be stated with particularity"). For this reason alone, the RICO claim must be dismissed.

Even if the Court were to attempt to sift through the incorporated allegations of the Verified Complaint, PTS still fails to state a RICO claim, as it did not properly allege the required elements of predicate acts of racketeering, a pattern of racketeering activity, a RICO enterprise and related RICO damages. Sedima, S.P.R.L. v. Imrex Company, Inc., 473 U.S. 479, 105 S.Ct. 3275, 3285 (1985); Bonavitacola Electric Contractor, Inc. v. Boro Developers, Inc., 2003 U.S.App.LEXIS 27918, *7 (3d Cir. October 30, 2003), cert. denied, 125 S.Ct. 57, 2004 U.S. LEXIS 5646 (2004); Supra Medical Corp. v. Baker, 1996

---

Verified Complaint (see Complaint (D.I. No. 1), && 1 and 7-9), the Verified Complaint may be dismissed for lack of jurisdiction even if the other Counts stated valid causes of action (which they do not).  See ARGUMENT, Section III, infra.

U.S.Dist.LEXIS 14765 (D.Del. 1996).  Instead, PTS seeks to

extend the reach of RICO to a simple contract dispute

related to the Tax Authority's Lease of the Property to

operate a competing tax preparation business.  As the Third

Circuit held in Glessner v. Kenny, 952 F.2d 702, 714 (3d

Cir. 1991):

> "We are concerned about the alacrity
> with which plaintiffs appear to grasp at
> any theory ... which might withstand
> dismissal.  A RICO complaint is not a
> mix and match game in which plaintiffs
> may artfully invoke magic words to avoid
> dismissal.  Instead, to plead a [RICO]
> claim under Section 1962(c), the
> complaint must be capable of being read
> to satisfy the statutory
> requirement[s]...."

Here, the crux of PTS' claim is merely that defendants

breached a single agreement that Tax Authority would only

lease the Piane Defendants' Property in the event Tax

Authority purchased PTS' business.  Conspicuously absent is

any allegation of a fraudulent scheme which was intended to,

and did in fact, induce PTS to act to its detriment based on

a misrepresentation.  Indeed, the word "fraud" does not

appear in any of PTS' allegations regarding these events,

except for the conclusory allegation in Paragraph 92 of the

Verified Complaint that defendants' actions magically

constituted "common law fraud," "mail fraud" and "wire

fraud."

At most, PTS alleges that defendants did not advise PTS

-10-

in advance of their breach of the purported oral agreement
to condition any Lease of the Property or the completion of
Tax Authority's purchase of PTS. The lack of any fraud is
emphasized by PTS' admission that it chose to terminate the
negotiation with Tax Authority.

PTS' conclusory references to violations of the federal
mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343,
are insufficient to establish the required "pattern of
racketeering activity." As the Court noted in Young v. West
Coast Industrial Relations Association, 763 F.Supp. 64, 71
(D.Del. 1991), aff'd, 961 F.2d 1570 (3d Cir. 1992), "at
least some sort of deception or 'other deceptive practices'
should be alleged in order to warrant the intrusion of the
draconian civil RICO remedies of treble damages, forfeiture
and attorneys fees in what would otherwise be an ordinary
breach of contract claim." In fact, to meet the specificity
requirements of Rule 9(b), F.R.C.P.:

> "[T]"he complaint must 'identify the
> purpose of the mailing [or use of wires]
> within the defendant's fraudulent scheme
> and specify the fraudulent statement,
> the time, place, and speaker and content
> of the alleged misrepresentation.'

Bonavitacola Electric Contractor, Inc. v. Boro Developers,
Inc., supra, 2003 U.S.App.LEXIS 27918 at *9 (citation
omitted). See Kehr Packages, Inc. v. Fidelcor, Inc., 926
F.2d 1406, 1417 (3d Cir.), cert. denied, 501 U.S. 1222
(1991)("Finally, the allegation that Donnelly 'unreasonably

delayed' approving the sale of Kehr, while possibly

amounting to a breach of contract, contains no deception

that would bring it within the purview of the mail fraud

statute.")(citations and footnote omitted); <u>Young v. West

Coast Industrial Relations Association</u>, <u>supra</u>, 763 F.Supp.

at 71 (plaintiffs failed to plead mail or wire fraud where

complaint did not allege "how Plaintiffs were deceived or

even how Defendants intended to deceive them."); <u>Kenty v.

Bank One, Columbus, N.A.</u>, 92 F.3d 384, 390 (6th Cir.

1996)(Court dismissed RICO claim based on alleged mail

fraud; "A claim of fraud does not inevitably follow from

every breach of a contract. Even if the Bank breached the

loan agreements here, the plaintiffs still must point to a

falsehood that would form the basis for fraud").

In addition to failing to plead any fraudulent scheme

by defendants, PTS has not alleged detrimental reliance on

any fraudulent misrepresentation or omission. Clearly,

independent of any discussions for the purchase of PTS'

business, Tax Authority was free to lease office space in

any location and from any willing landlord. PTS does not

allege, nor could it, that Tax Authority could not compete

with PTS merely because it discussed a potential acquisition

of PTS' business. Nor could the mere introduction of Leese

to Piane, Jr. constitute detrimental reliance, as PTS does

not and cannot allege that Tax Authority could not have

-12-

located available office space without Swan's assistance.
Likewise, PTS' allegation that Tax Authority represented to
the Piane Defendants that the purchase of PTS was a "done
deal" cannot form the basis for any fraud upon PTS, as such
a representation did not induce PTS to take any action, much
less action to its detriment.

Even assuming PTS could overcome these flaws, it has
not specifically alleged the details of any use of
interstate mails or wires by defendants "incident to an
essential part of their scheme" to defraud PTS.  See Annulli
v. Panikkar, 200 F.3d 189, 200 (3d Cir. 1999); Nielsen
Electronics Institute v. Student Finance Corp., supra.  This
failure alone is fatal to PTS' purported RICO claim.

Moreover, even assuming any fraud, PTS' allegations
depict a single and finite scheme, pursuant to which Tax
Authority allegedly entered into discussions with PTS in
order to obtain confidential information and lease a
competitive office space.  As a matter of law, this cannot
constitute a "pattern" of racketeering, which requires a
series of criminal predicate acts which are both related and
continuous.  H.J. Inc. v. Northwestern Bell Telephone Co.,
492 U.S. 229, 109 S.Ct. 2893, 2901 (1989).  Courts have
repeatedly dismissed claims based on far more extensive
allegations.  See Bonavitacola Electric Contractor, Inc. v.
Boro Developers, Inc., supra, 2003 U.S.App.LEXIS 27918 at

-13-

*14 (alleged scheme to fraudulently obtain three contracts over a ten-year period did not state a valid pattern); Marshall-Silver Construction Co., Inc. v. Mendel, 894 F.2d 593, 596-7 (3d Cir. 1990)(no pattern based on seven-month scheme to bankrupt business); Banks v. Wolk, 918 F.2d 418 (3d Cir. 1990)(no pattern based on single victim, single injury scheme); Kehr Packages, Inc. v. Fidelcor, Inc., supra, 926 F.2d at 1417-8 (mailings related to a single fraud of even uncertain duration do not create a pattern); Hindes v. Castle, 937 F.2d 868 (3d Cir. 1991)(eight-month scheme involving mass mailings failed to satisfy the "continuity" necessary for a RICO pattern); Young v. West Coast Industrial Relations Association, supra, 763 F.Supp. at 74 (court dismissed RICO claim alleging 11 to 14 month closed-ended period of predicate acts with single objective as insufficient to plead a pattern of racketeering).

Here, assuming there were any alleged predicate acts of mail and wire fraud in furtherance of this scheme (which defendants deny, as stated above), they all necessarily occurred approximately between June 16, 2005 (the date when Tax Authority and PTS began to negotiate) and early October, 2005 (when PTS was advised of the Lease and Tax Authority's prepayment of the first year of rent). [See Complaint (D.I. No. 1), && 16-47.] If the "pattern" requirement is to have any meaning, it absolutely prevents application of RICO to

-14-

this sort of simple commercial dispute.  Finally, putting
aside any other flaws, PTS does not allege any RICO
enterprise, much less how any defendant invested in,
acquired an interest in, or participated in the affairs of
that enterprise, which must be distinct from the defendant
itself.  See Lightning Lube v. Witco Corp., 4 F.3d 1191 (3d
Cir. 1993).

For any one of these reasons, the Complaint does not
state a valid RICO claim.

## III. Since The Complaint Fails To Plead A Valid RICO Claim, This Entire Action Should Be Dismissed For Lack Of Subject Matter Jurisdiction.

PTS attempts to invoke the Court's "federal question"
subject matter jurisdiction pursuant to 28 U.S.C. § 1331
based solely on its RICO claim.  If that RICO claim is
dismissed under Rule 12(b)(6), F.R.C.P., PTS' state law
claims should be dismissed in the absence of some other
basis for federal subject matter jurisdiction.  See Rule
12(h)(3), F.R.C.P. (dismissal appropriate "[w]henever it
appears by suggestion of the parties or otherwise" that
subject matter jurisdiction is lacking); Young v. West Coast
Industrial Relations Association, supra, 763 F.Supp. at 78.

The only other basis for subject matter jurisdiction is
PTS' allegation of "diversity" jurisdiction based on 28
U.S.C. § 1332, pursuant to which "all defendants must be
diverse from all plaintiffs."  Huss v. Green Spring Health

-15-

Services, Inc., 18 F.Supp.2d 400, 402 (D.Del. 1998)(emphasis
added). This is plainly not the case here, as PTS and the
Piane Defendants are all citizens of Delaware, and thus not
citizens of different states. [See Complaint (D.I. No. 1),
&& 1 (PTS), 7-9 (Piane Defendants).] Accordingly, the
Verified Complaint on its face should be dismissed for lack
of subject matter jurisdiction pursuant to Rule 12(b)(1),
F.R.C.P. See Smith v. Delaware First Federal Credit Union,
395 F.Supp.2d 127 (D.Del. 2005).

## IV. PTS' State Law Claims Fail To State Any Claim Upon Which Relief Can Be Granted And Should Be Dismissed.

Even assuming jurisdiction were proper, PTS has not
stated any valid state law claims for the following reasons:

### A. PTS Has Failed To State A Claim For Breach Of Contract Because The Alleged Agreement Lacks Consideration And Is Barred By The Statute Of Frauds (Count I).

"It is, of course, fundamental that the formation of a
contract requires 'a bargain in which there is a
manifestation of mutual assent to the exchange and a
consideration.'" William Lloyd, Inc. v. Hrab, 1999
Del.Super.LEXIS 276, *10 (Del.Super. April 7, 1999)(citing
Restatement (Second) Contracts, § 17).

In Hunter v. Diocese of Wilmington, 1987 Del.Ch.LEXIS
468 (Del.Ch. Aug. 4, 1987), the Chancery Court rejected
claims for injunctive relief brought by parents of students
who sought to enforce an alleged agreement by the Diocese of

-16-

Wilmington to continue to operate a high school based on statements by a school administrator. The Court determined that plaintiffs were not likely to prevail, as there was no consideration in the Diocese's gratuitous "promise" to keep the school open, which "was not offered in exchange for anything; it did not purport to seek acceptance by seeking any performance by anyone. It was gratuitous." 1987 Del.Ch.LEXIS 468 at *15.

Here, any alleged "agreement" by defendants to forebear from leasing the Property from the Piane Defendants unless Tax Authority and PTS consummated a sale of PTS' business was similarly gratuitous, and not supported by any consideration. PTS gave up nothing for this purported promise and Tax Authority received nothing, as PTS acknowledges that the parties were not bound to proceed with any transaction. PTS' claim for breach of contract fails.

Further, even if the purported agreement were otherwise valid, it is also barred by the Statute of Frauds, as it implicates an interest in real estate. See 6 Del.C. § 2714(a)("No action shall be brought to charge any person ... upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them... unless the contract is reduced to writing..."); Huntington Homeowners Association, Inc. v. 706 Investments, 1999 Del.Ch.LEXIS 119, *13 (Del.Ch. May 28, 1999)(oral

-17-

representations made by a developer agreeing not to lease
space in a shopping center to any business that sells
alcoholic beverages was barred by the Statute of Frauds).

**B.    PTS' Tort Claims Relating To The Lease Are Barred
By The Economic Loss Doctrine (Counts II, III, VI,
VII and VIII).**

As the gist of PTS' claims focus on the alleged breach
of the parties' agreement, and its alleged injuries are
purely economic in nature, PTS may not assert any related
tort claims pursuant to the "economic loss" doctrine.
Accordingly, Counts II, III, VI, VII and VIII, all of which
seek to impose tort liability on defendants based on a
contractual breach, must be dismissed. See International
Fidelity Insurance Co. v. Mattes Electric, Inc., 2002
Del.Super.LEXIS 441, *3 (Del.Super. June 27, 2002)(court
dismissed bond company's negligence claim based on
defendant's alleged failure to perform contractual contract
management duties, as the economic loss doctrine applies "to
nearly any kind of dispute arising from a commercial
transaction where the alleged damages do no harm to a person
or to property other than the bargained for item"); MacInnis
v. Charles F. Hill Construction, Inc., 1981 Del.Super.LEXIS
693, *3 (Del.Super. Dec. 18, 1981)(tort claims are
inappropriate and should be dismissed where "the action is
not maintainable without pleading and proving the contract,
where the gist of the action is the breach of the

contract").

### C. PTS Has Failed To State A Claim For Tortious Interference With Prospective Economic Advantage (Count II).

For PTS to state a claim for tortious interference with prospective economic advantage, it must plead "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted." Acierno v. Preit-Rubin Inc., 199 F.R.D. 157, 164-165 (D.Del. 2001). "All of these factors must be considered 'in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.'" 199 F.R.D. at 165 (emphasis added).

Here, PTS alleges that "[d]efendants were aware that [PTS'] ability to negotiate with The Tax Authority would be unfairly and seriously impaired by signing the Lease in contravention to their agreement to wait until the sale of [PTS] to The Tax Authority was complete." [Complaint (D.I. No. 1), & 66]. PTS fails to suggest how the execution of the Lease impaired PTS' ability to negotiate a sale of PTS' business to Tax Authority, especially when (a) it was PTS which suggested that Tax Authority discuss the Property

-19-

directly with the Piane Defendants and, more important, (b)
it was PTS which decided not to proceed with the proposed
sale.  [Id., Ex. "F"]   Tax Authority had no obligation to
ensure PTS' negotiating strength.  In light of Tax
Authority's privilege to compete and protect its own
business interests both during and beyond its negotiations
with PTS, including its right to operate a competing
business, the suggestion of any such obligation on the part
of Tax Authority has no legal basis, and Count II should be
dismissed.

> D.   **PTS Has Failed To State A Claim For Tortious
> Interference With Contract Since Tax Authority
> Cannot Interfere With Its Own Contract (Count
> III).**

To plead a tortious interference with contract,
"[t]here must be (1) a contract, (2) about which defendant
knew and (3) an intentional act that is a significant factor
in causing the breach of such contract (4) without
justification (5) which causes injury."   Irwin & Leighton,
Inc. v. W.M. Anderson Co., 532 A.2d 983, 992 (Del.Ch. 1987).
However, parties to a contract cannot interfere with their
own contract: "[i]t is rudimentary that a party to a
contract cannot be liable both for breach of that contract
and for inducing that breach."   Shearin v. E.F. Hutton
Group, 652 A.2d 578, 590 (Del.Ch. 1994).

Here, PTS essentially alleges that Tax Authority and
the Piane Defendants agreed with PTS not to enter into the

-20-

Lease if the sale of PTS was not completed, but "interfered"
with their agreement by completing that Lease.  This
circular reasoning -- even assuming any contract -- cannot
avoid the simple requirements of the law.  Tax Authority
cannot breach the alleged agreement with PTS while, at the
same time, inducing a breach of that same agreement.
Shearin v. E.F. Hutton Group, supra at 590.  Count III is
fatally flawed and should be dismissed.

> **E.    PTS' Claims For Unfair Trade Practices And Civil
> Conspiracy Are Barred By Delaware's Uniform Trade
> Secrets Act (Counts IV and VI).**

PTS' claims in Counts IV and VI for unfair trade
practices and civil conspiracy are predicated on Tax
Authority's alleged misappropriation of PTS' "Confidential,
proprietary and trade secret information to unfairly compete
with [PTS]."  [Complaint && 78.]  These common law claims
are barred by Section 2007 of the Delaware UTSA, which
"displaces conflicting tort, restitutionary and other law of
this State providing civil remedies for misappropriation of
a trade secret."  6 Del.C. § 2007(a); see Sanirab Corp. v.
Sunroc Corp., 2002 Del.Super.LEXIS 350, *6 (Del.Super. April
29, 2002); Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS
170, *14 (Del.Super. April 24, 2001), aff'd, 812 A.2d 894
(Del. 2002)(Court dismissed plaintiff's common law claims of
unfair competition and civil conspiracy based on the UTSA);
Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 755

F.Supp. 635 (D.Del. 1991)(Section 2007 of UTSA "intended to
preserve a single tort cause of action under state law for
misappropriation ... and thus to eliminate other tort causes
of action founded on trade secret misappropriation.").

PTS' claims in Counts IV and VI likewise must be
dismissed.

**F.    PTS Has Failed To State A Claim For
        Misappropriation Of Trade Secrets (Count V).**

In Count V, PTS alleges that "[d]efendants have ...
willfully, maliciously and deliberately misappropriat[ed]
[PTS'] confidential, proprietary and trade secret
information...."  [Complaint (D.I. No. 1), & 83.]  PTS
generally identifies this information as PTS' "customer
list, pricing strategy, marketing methods, operational
systems and other information about [PTS]...".  [Id., & 18.]
As such information is not entitled to trade secret
protection and PTS has failed to allege that Tax Authority
has even opened a competing business which could make any
use of the information, PTS has failed to state a claim for
misappropriation of trade secrets.

The UTSA defines a "trade secret" as:

> information, including a formula,
> pattern, compilation, program, device,
> method, technique or process, that:
>
> a. Derives independent economic value,
> actual or potential, from not being
> generally known to, and not being
> readily ascertainable by proper means
> by, other persons who can obtain

> economic value from its disclosure or
> use; and
>
> b. Is the subject of efforts that are
> reasonable under the circumstances to
> maintain its secrecy.

6 Del.C. § 2001(4).

Delaware courts have enunciated the relevant inquiry
when determining whether a plaintiff has set forth a prima
facie misappropriation of trade secrets claim as follows:

> (1) Does a trade secret exist, i.e.,
> have the statutory elements - commercial
> utility arising from secrecy and
> reasonable steps to maintain secrecy
> been shown; (2) Has the secret been
> communicated by plaintiff to the
> defendant; (3) Was such communication
> pursuant to an express or implied
> understanding that the secrecy of the
> matter would be respected; and (4) Has
> the secret information been improperly
> (e.g. in breach of the understanding)
> used or disclosed by the defendant to
> the injury of the plaintiff?

Savor, Inc. v. FMR Corp., supra, 2001 Del.Super.LEXIS 170 at
*9-10; see also Dionisi v. DeCampli, 1995 Del.Ch.LEXIS 88
(Del.Ch. June 28, 1995).

The information PTS references, but notably does not
attach to its Verified Complaint, consists solely of a list
of names of customers for which PTS had provided tax
preparation services during the prior year with the amounts
charged for PTS' services.[6]   PTS has not alleged, nor can

---

[6]A copy of this document is attached as Exhibit "1".  This
is properly considered in the context of this Motion to
Dismiss, as the Court may "examine a document integral to or
explicitly relied upon in the complaint without converting
the motion to dismiss to a motion for summary judgment."

-23-

it, that these customers have exclusive agreements with PTS
for tax services or that PTS has any reasonable expectation
that any of these customers will return to PTS to prepare
their taxes.  The list itself, which was provided by PTS
during its negotiations with Tax Authority without being
marked "confidential" or the execution of any
confidentiality agreement, included no contact information
nor anything which could be deemed confidential.  There is
no basis for any claim that such information was protected,
or Tax Authority "misappropriated" this information when it
was provided by PTS during the purchase negotiations,
without any suggestion of or effort to maintain its secrecy,
and where PTS terminated the negotiations.  See 6 Del.C. §
2001(4).  Indeed, despite its conclusory allegations of a
misappropriation, PTS has not even alleged that Tax
Authority has opened a competing tax business and,
therefore, has not alleged any circumstances under which Tax
Authority could make any improper use of the list.  As such,
PTS has failed to state a claim for misappropriation of
trade secrets, and Count V should be dismissed.

### G.    PTS' Has Failed To State A Claim For Civil Conspiracy (Count VI).

In addition to the foregoing reasons for dismissal of
this Complaint, PTS also complains that defendants "may

---

Charal Investment Co., Inc. v. Rockefeller, 131 F.Supp.2d
593, 604 (D.Del. 2001).

solicit and do business with Preferred Tax's customers"
[Complaint (D.I. No. 1), & 89 (emphasis added)], and seeks
an order "enjoining Defendants from engaging in any further
solicitation of and from doing business with [PTS']
customers." [Id., & 90.] However, "[i]n order to prove a
civil conspiracy, the plaintiff will have to show: (1) A
confederation or combination of two or more persons; (2) An
unlawful act done in furtherance of the conspiracy; and (3)
actual damage." Tansey-Warner, Inc. v. Hooper, 1989
Del.Super.LEXIS 479, *13 (Del.Super. Nov. 15, 1989)(citing
Nicolet, Inc. v. Nutt, 525 A.2d 146, 149-50 (Del.Super.
1987)). Most important, "[t]here must be an independent
tort to support conspiracy liability," as "[c]ivil
conspiracy is not an independent cause of action." Id.

Here, PTS has failed to state a claim for any breach of
contract, independent tort or statutory violation. Without
an independent tort claim to support conspiracy liability,
Count VI must be dismissed.

**H.    PTS Has Failed To State A Claim For Bad Faith
(Count VIII).**

In Count VIII, PTS baldly asserts that "[d]efendants'
actions, taken as a whole, constitute bad faith."
[Complaint (D.I. No. 1), & 94.] However, there is no
independent cause of action recognized by Delaware law for
"bad faith" in these circumstances, as the covenant of good
faith and fair dealing which is implied in every contract

-25-

does not add or subtract terms, but merely imposes liability
on conduct which defeats the purpose of the contract.  See
Dunlap v. State Farm Fire and Casualty Co., 878 A.2d 434,
441 (Del. 2005)("implied good faith cannot be used to
circumvent the parties' bargain, or to create a 'free-
floating duty ... unattached to the underlying legal
[contract]'")(footnotes omitted); Kirkwood Kin Corp. v.
Dunkin' Donuts, Inc., 1997 Del.Super.LEXIS 30, *47
(Del.Super. Jan. 29, 1997)("where the subject at issue is
expressly covered by the contract ... the implied duty does
not come into play).  Here, PTS fails to allege any basis
for liability other than an alleged breach of the purported
agreement regarding the Lease.  As such, no independent
claim for bad faith may lie, and Count VIII should be
dismissed.

## CONCLUSION

For the reasons set forth above, defendants, the Tax Authority, Inc., and Kenneth M. Leese, request that this Court dismiss the Verified Complaint in its entirety, with prejudice.

Erin D. Edwards (No. 4392)
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE   19899-0391
(302) 571-6552
(302) 576-3471 (Fax)

*Attorney for Defendants*
*The Tax Authority and*
*Kenneth M. Leese*

**OF COUNSEL:**
Howard A. Rosenthal
Patrick J. Doran
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

DATED: December 30, 2005

- 27 -