2002 Del. Super. LEXIS 350, *

LEXSEE 2002 DEL.SUPER.LEXIS 350

**SANIRAB CORPORATION, A Delaware Corporation, Plaintiff, v. SUNROC CORPORATION, A Foreign Corporation, Defendant.**

**C.A. No. OOC-02-191-SCD**

**SUPERIOR COURT OF DELAWARE, NEW CASTLE**

*2002 Del. Super. LEXIS 350*

**April 1, 2002, Submitted
April 29, 2002, Decided**

**DISPOSITION:** [*1] Sunroc's motion for summary judgment regarding Sanirab's conversion claim GRANTED. Sunroc's motion for summary judgment regarding all of Sanirab's other claims DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, the owner of a machinery washing device, sued defendant, a manufacturer of the device, alleging misappropriation of trade secrets, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, conversion, quantum meruit, and promissory estoppel. The manufacturer sought summary judgment as to all issues.

**OVERVIEW:** The owner claimed that the manufacturer began making its own version of the device which was based on confidential and proprietary design and technical information supplied by the owner. The court found that there was a significant factual issue as to whether the information derived from the owner was a trade secret. There were questions as to whether the device and the associated technical information provided by the owner had independent economic value from not being generally known or readily ascertainable by persons who could have obtained economic value from its use. The evidence here was sufficient to create a factual issue as to the nature and value of the additional information provided by the owner in the course of communications with the manufacturer. However, *Del. Code Ann. tit. 6, § 2007* (1999) served to preserve a single tort cause of action for misappropriation and to eliminate other tort causes of action founded on allegations of trade secret misappropriation. A claim of theft of proprietary information was displaced by a claim of misappropriation of a trade secret, and the conversion claim was dismissed as a matter of law.

**OUTCOME:** The motion for summary judgment regarding the conversion claim was granted. The motion for summary judgment regarding all of the other claims was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] A grant of summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A court must consider all facts in the light most favorable to the non-moving party.

*Torts > Business & Employment Torts > Unfair Business Practices*
[HN2] The Delaware Uniform Trade Secrets Act, Del. Code Ann. tit. 6, ch. 20, creates a right of action for misappropriation of trade secrets. Under that statute a claimant can seek injunctive relief and damages, both compensatory and exemplary.

*Torts > Business & Employment Torts > Unfair Business Practices*
[HN3] The Delaware Uniform Trade Secrets Act, Del. Code Ann. tit. 6, ch. 20, specifies that it displaces conflicting tort, restitutionary and other law of Delaware providing civil remedies for misappropriation of a trade secret. *Del. Code Ann. tit. 6, § 2007(a)* (1999). It further provides that it does not affect contractual remedies, whether or not based on misappropriation of a trade secret or other civil remedies not based on misappropriation of a trade secret. *Del. Code Ann. tit. 6,*

2002 Del. Super. LEXIS 350, *

§ 2007(b) (1999).

**Trade Secrets Law > Factors > Definitions**
**Torts > Business & Employment Torts > Unfair Business Practices**
[HN4] A trade secret is defined as: information, including a formula, pattern, compilation, program, device, method, technique or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Del. Code Ann. tit. 6, § 2001(4) (1999).*

**Torts > Business & Employment Torts > Unfair Business Practices**
[HN5] Misappropriation is defined as: (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means, or (b) disclosure or use of a trade secret of another without express or implied consent by a person who at the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was acquired under circumstances giving rise to a duty to maintain secrecy or limit its use. *Del. Code Ann. tit. 6, § 2001(2) (1999).*

**Torts > Business & Employment Torts > Unfair Business Practices**
[HN6] A plaintiff alleging misappropriation of a trade secret has the burden of proving the existence of a trade secret. The relevant inquiry to determine if a prima facie misappropriation of a trade secret claim exists is: (1) have the statutory elements, commercial utility arising from secrecy and reasonable steps to maintain secrecy, been shown; (2) has the secret been communicated from plaintiff to defendant; (3) was such communication pursuant to an express or implied understanding that the secrecy of the matter would be respected; and (4) has the secret information been improperly used or disclosed by the defendant to the injury of the plaintiff?

**Torts > Business & Employment Torts > Unfair Business Practices**
[HN7] Trade secrets should be given an expansive meaning and interpretation.

**Torts > Business & Employment Torts > Unfair Business Practices**
[HN8] The mere fact that aspects of a trade secret process can be found in publications does not mean that the process is not a trade secret.

**Torts > Business & Employment Torts > Unfair Business Practices**
[HN9] A product built from entirely generally known elements is protectable as a trade secret.

**Torts > Business & Employment Torts > Unfair Business Practices**
**Trade Secrets Law > Protected Information > Know-How**
[HN10] The value of a trade secret would be lost if a defendant could obtain the information, learn thereby the important choices made by the trade secret owner at various points in development, use the information gained for its benefit, and avoid liability by then saying that the particular information used is published. While a defendant's product can be different, the use of trade secret know-how provides a guide, charting the way through the many problems and decisions and a springboard to the solution of the problems. Courts are skeptical of an independent derivation defense where, after being exposed to the trade secret, the defendant has a purportedly epiphanic episode.

**Torts > Business & Employment Torts > Unfair Business Practices**
[HN11] Whether trade secrets were generally known or readily ascertainable and whether a plaintiff took reasonable precautions to protect their secrecy is a question of fact.

**Torts > Business & Employment Torts > Unfair Business Practices**
**Trade Secrets Law > Factors > Definitions**
[HN12] The determination of whether information is a trade secret depends on applying the facts and circumstances of the exchange between the parties to the definition of a trade secret.

**Torts > Business & Employment Torts > Unfair Business Practices**
[HN13] Under Delaware law, conversion is the wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it. Following the

A 99

modern trend, Delaware courts have expanded the doctrine at times to encompass some intangible goods where the intangible property relations are merged into a document. A plaintiff has property interests in its proprietary information, which includes among others plans, technology, designs, and specifications, and has a right to possession of such information. A claim for conversion does not apply when the Trade Secrets Chapter of the Delaware Code, Del. Code Ann. tit. 6, ch. 20, can be invoked.

*Torts > Business & Employment Torts > Unfair Business Practices*
[HN14] See *Del. Code Ann. tit. 6, § 2007 (1999)*.

*Torts > Business & Employment Torts > Unfair Business Practices*
[HN15] *Del. Code Ann. tit. 6, § 2007 (1999)* serves to preserve a single tort cause of action under state law for misappropriation as defined in *Del. Code Ann. tit. 6, § 2001(2) (1999)* and to eliminate other tort causes of action founded on allegations of trade secret misappropriation. A plaintiff's claim of theft of proprietary information is displaced by a claim of misappropriation of a trade secret.

JUDGES: Judge Susan C. Del Pesco.

OPINIONBY: Susan C. Del Pesco

OPINION:

This claim arises from the development and production of a machine used to clean and sanitize bottled water machinery, a "cooler cleaner." Sanirab Corporation ("Sanirab") has sued Sunroc Corporation ("Sunroc") claiming that information provided by Sanirab to Sunroc pursuant to a Confidentiality Agreement and a Licensing Agreement was used in the development of the product that Sunroc is now selling without compensation to Sanirab.

*Statement of the Case*

Sanirab has asserted multiple alternate causes of action: misappropriation of trade secrets, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, conversion, quantum meruit and promissory estoppel. Sunroc seeks summary judgment as to all issues. Because I find there are questions of fact, summary judgment is denied as to all claims except conversion.

The facts can be briefly summarized. Sanirab is

owned and operated by Joseph P. Barinas ("Barinas"). In the early [*2] 1990's Barinas began the design and development of a machine that utilized ozonated water to clean and sanitize bottled water machinery and equipment (the "unit"). The essential process utilized by the unit was described in a patent that Barinas obtained through his company, Sanirab. An article about the unit was published in 1994, and another in 1995. Prior to the development of the unit, the method for cleaning bottled water coolers depended on a chlorine flushing process that was cumbersome and performed infrequently.

In early 1996 a representative of Sunroc contacted Barinas regarding the unit. That inquiry was followed by one from Adam Levinson, The International Sales Manager of Sunroc and also by a call from Ronald Greenwald the Director of Engineering at Sunroc. A meeting occurred on February 22, 1996. Sunroc's representatives had a great interest in a portable product in order to meet the requirements of the bottled water industry in Europe. Barinas took the unit to a meeting with Sunroc at which time there was discussion of Sunroc's desire to manufacture a product. Sunroc's representatives requested that Barinas give them the unit. That request resulted in the execution [*3] of a Confidentiality/Non-Disclosure Agreement.

The Agreement included the following:

Whereas, Sunroc contemplates entering into a business relationship in which Sunroc will redesign and/or manufacture an ozone generating water cooler cleaning system; and whereas, in conjunction with said business relationship, Sanirab will allow Sunroc and representatives of Sunroc access to certain confidential designs and other proprietary information; and whereas, it is the intent of the parties hereto that the exchange of information, designs and ideas remain confidential; . . . the parties do hereby agree as follows: . . . Sunroc and its duly authorized representatives, employees and agents do hereby expressly agree, promise and convent at no time to divulge to others or use for its own personal benefit any confidential or proprietary information or designs obtained from Sanirab or its duly authorized representative or employees during the course of this business relationship without first obtaining the written consent of Sanirab. Sunroc will undertake all measures to prevent

2002 Del. Super. LEXIS 350, *

disclosure of designs and other proprietary information to others. n1

n1 Appendix to Sunroc's Opening Brief at Exhibit D.

[*4]

Barinas left the unit with Sunroc. Shortly after the February 22 meeting, Dave Minnach of Sunroc contacted Barinas and requested that he provide Sunroc with a list of the parts in the unit and an explanation of how it worked. Barinas agreed to comply with the request only after a Licensing Agreement was executed. Levinson then contacted Barinas and promised that a contract setting up a royalty arrangement would be provided if Barinas provided the information requested by Minnach. Barinas then provided a list of parts and a detailed explanation about how the unit worked. On March 14, 1996, Levinson sent a letter to Barinas setting forth a proposed payment schedule. The proposal was modified and accepted by both Barinas and Levinson. n2

n2 Appendix to Sanirab's Response at Exhibit 6.

Sunroc analyzed and tested the unit. There were multiple additional communications between Sunroc and Barinas. In May of 1996 Barinas became concerned about a diminution in contact from Levinson, and requested the return of the unit. [*5] Levinson responded that they were still working on the project. Thereafter, Sunroc requested and Barinas provided some additional information regarding proper operation and testing of the unit. Throughout 1996, Sunroc analyzed and tested the Sanirab unit with a view to developing a cooler cleaner.

By early 1997, Barinas again contacted Sunroc regarding the development of the Sunroc cooler cleaner, and Levinson again provided Barinas with assurances that development was still ongoing. But in 1998 Sunroc told Barinas that the project was over. Barinas requested the return of the unit, which was done in October 1998.

Sunroc has commenced production and sale of a cooler cleaner. Sanirab contends that the Sunroc unit is based on Sanirab's confidential and proprietary design and the technical information supplied by Barinas. Barinas, testifying as an expert for Sanirab, has identified multiple similarities in the design and operating system of his unit and the Sunroc product. As of May 2001

Sunroc had produced between 500 and 600 cooler cleaners. Sanirab has not been paid any royalties.

### Standard of Review

[HN1] A grant of summary judgment is appropriate when there is no genuine issue [*6] of material fact and the movant is entitled to judgment as a matter of law. n3 This Court must consider all facts in the light most favorable to the non-moving party. n4

n3 Emmons v. Hartford Underwriters Ins. Co., 697 A.2d 742, 744-45 (Del. 1997).

n4 National Union Fire Ins. Co. v. Fisher, 692 A.2d 892, 895 (Del. 1997).

### Discussion

I. *Misappropriation of Trade Secrets*

[HN2] The Delaware Uniform Trade Secrets Act, Title 6 of the Delaware Code, Chapter 20, creates a right of action for misappropriation of trade secrets. Under that statute a claimant can seek injunctive relief and damages, both compensatory and exemplary. [HN3] The statute specifies that it "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." n5 It further provides that it does not affect contractual remedies, whether or not based on misappropriation of a trade secret or other civil remedies not based on misappropriation [*7] of a trade secret. n6

n5 Del. Code Ann. tit. 6, § 2007(a) (1999).

n6 Del. Code Ann. tit. 6, § 2007(b) (1999).

[HN4] A trade secret is defined as:

(4) . . . information, including a formula, pattern, compilation, program, device, method, technique or process, that:
a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy n7

2002 Del. Super. LEXIS 350, *

n7 *Del. Code Ann. tit. 6, § 2001(4) (1999). See also Smithkline Beecham Pharmaceuticals Co. v. Merck & Co., Inc., 766 A.2d 442, 448 (Del. 2000); Merck & Co., Inc. v. Smithkline Beecham Pharmaceuticals Co., 1999 WL 669354, at *15 (Del. Ch. Aug. 5, 1999); Miles, Inc. v. Cookson America, Inc., 1994 WL 676761, at *8-*13 (Del. Ch. Nov. 15, 1994).*

[*8]

[HN5] Misappropriation is defined as:

a. Acquisition of a trade secret of another by a person who know or has reason to know that the trade secret was acquired by improper means; or
b. Disclosure or use of a trade secret of another without express or implied consent by a person who:

* * *

2. At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was:

* * *

B. Acquired under circumstances giving rise to a duty to maintain secrecy or limit its use; or . . . . n8

n8 *Del. Code Ann. tit. 6, § 2001(2) (1999).*

[HN6] "A plaintiff alleging misappropriation of a trade secret has the burden of proving the existence of a trade secret." n9 The relevant inquiry to determine if a *prima facie* misappropriation of a trade secret claim exists is: (1) have the statutory elements, commercial utility arising from secrecy and reasonable steps to maintain secrecy, been shown; (2) has the secret been communicated from plaintiff to defendant; [*9] (3) was such communication pursuant to an express or implied understanding that the secrecy of the matter would be respected; and (4) has the secret information been

improperly used or disclosed by the defendant to the injury of the plaintiff? n10

n9 *ID Biomedical Corp. v. TM Technologies, Inc., 1995 WL 130743, at *14 (Del. Ch. Mar. 16, 1995).*

n10 *Savor, Inc. v. FMR Corp., 2001 WL 541484, at *3 (Del. Super. Ct. Apr. 24, 2001).*

[HN7] *Trade secrets* should be given an expansive meaning and interpretation. n11 [HN8] "The mere fact that aspects of a trade secret process can be found in publications does not mean that the process is not a trade secret." n12

n11 *American Totalisator Co., Inc. v. Autotote, Ltd., 1983 WL 21374, at *4 (Del. Ch. Aug. 18, 1983)* (strategic planning and bidding studies were considered trade secrets).

n12 *Merck, 1999 WL 669354,* at *16.

[*10]

[HN9] A product built from entirely generally known elements is protectable as a trade secret. [HN10] The value of a trade secret would be lost if a defendant could obtain the information, learn thereby the important choices made by the trade secret owner at various points in development, use the information gained for its benefit, and avoid liability by then saying that the particular information used is published. n13 While a defendant's product can be different, the use of trade secret know-how provides a guide, charting the way through the many problems and decisions and a springboard to the solution of the problems. n14 Courts are skeptical of an independent derivation defense where, after being exposed to the trade secret, the defendant has a purportedly epiphanic episode. n15 [HN11] Whether trade secrets were generally known or readily ascertainable and whether a plaintiff took reasonable precautions to protect their secrecy is a question of fact. n16

n13 *Id.* at 17.

n14 *Id.* at 21.

n15 *Id.*

n16 *Smithkline Beecham Pharmaceuticals Co., 766 A.2d at 448.*

2002 Del. Super. LEXIS 350, *

[*11]

There is a significant factual issue here as to whether the information derived from Sanirab was a trade secret. [HN12] That determination depends on applying the facts and circumstances of the exchange between the parties to the definition of a trade secret as provided by the statute. There are questions as to whether the device and the associated technical information provided by Sanirab has independent economic value from not being generally known or readily ascertainable by persons who can obtain economic value from its use. There are a myriad of factors which must be examined to make that determination. Likewise, there is evidence that prior to its contact with Sunroc, Sanirab made its product available to consumers who could have reverse engineered the device to see how it operated. If Sunroc had received the device only, and had not secured additional intelligence from Sanirab, there may have been a basis to secure summary judgment as Sunroc would have been in the same position as other consumers of the Sanirab product. However, the evidence here is sufficient to create a factual issue as to the nature and value of the additional information provided by Barinas in the course of his [*12] communications with Sunroc.

Viewing the evidence in a light most favorable to Sanirab, the motion for summary judgment as to Sanirab's claim for misappropriation of trade secrets must be denied. All the other causes of action likewise depend on the plaintiff's ability to prove its claims, all of which are supported by the affidavit of Barinas. The only exception to that is the cause of action for conversion.

II. *Conversion*

[HN13] "Under Delaware law, conversion is the 'wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it.'" n17 Following the modern trend, Delaware courts have expanded the doctrine at times to encompass some intangible goods where the intangible property relations are merged into a document. n18 A "plaintiff has property interests in its proprietary information, which includes among others plans, technology, designs, and specifications, and has a right to possession of such information." n19 A claim for conversion does not apply when the Trade Secrets Chapter of the Delaware code can be invoked.

n17 *Resource Ventures, Inc. v. Resources Management International, Inc., 42 F. Supp.2d 423, 438 (D. Del. 1999) (quoting Carlton Investments v. TLC Beatrice International*

*Holdings, Inc. et. al., 1995 WL 694397,* at *16 (Del. Ch. Nov. 21, 1995)).

[*13]

n18 *Id.* at 438-39.

n19 *Id.*

*Title 6, Section 2007 of the Delaware Code* states:

[HN14] (a) Except as provided in subsection (b) of this section, this chapter displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret.
(b) This chapter does not effect:

(1) Contractual remedies, whether or not based upon misappropriation of a trade secret;
(2) Other civil remedies that are not based upon misappropriation of a trade secret; or
(3) Criminal remedies, whether or not based upon misappropriation of a trade secret. n20

n20 *Del. Code Ann. tit. 6, § 2007* (1999).

[HN15] Title 6, Section 2007 serves to preserve a single tort cause of action under state law for misappropriation as defined in Title 6, Section 2001(2) n21 and to eliminate other tort causes of action founded on allegations [*14] of trade secret misappropriation. n22 A plaintiff's claim of theft of proprietary information is displaced by a claim of misappropriation of a trade secret. n23 The conversion claim is dismissed as a matter of law.

n21 *Del. Code Ann. tit. 6, § 2001(2)* (1999).

n22 *Leucadia, Inc. v. Applied Extrusion Techs., Inc., 755 F. Supp. 635, 637 (D. Del. 1991).*

A 103

2002 Del. Super. LEXIS 350, *

n23 *Total Care Physicians v. O'Hara, 2001 WL 541488*, at *11 (Del. Super. Ct. Mar. 23, 2001).

*Conclusion*

For the above reasons, Sunroc's motion for summary

judgment regarding Sanirab's conversion claim is GRANTED. Sunroc's motion for summary judgment regarding all of Sanirab's other claims is DENIED.

IT IS SO ORDERED.

Judge Susan C. Del Pesco

2001 Del. Super. LEXIS 170, *

LEXSEE 2001 DEL.SUPER.LEXIS 170

**SAVOR, INC., Plaintiff, v. FMR CORP., a Delaware corp., FMR CORP., a Massachusetts corp., and UPROMISE, Inc., Defendants.**

**C.A. No. 00C-10-249-JRS**

**SUPERIOR COURT OF DELAWARE, NEW CASTLE**

*2001 Del. Super. LEXIS 170*

**March 13, 2001, Submitted**
**April 24, 2001, Decided**

**DISPOSITION:** [*1] Defendants' Motion to Dismiss GRANTED. Plaintiffs Motion to Amend Complaint GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an action arising from the alleged misappropriation of a trade secret, defendants filed motions to dismiss plaintiff's second amended complaint for failure to state a claim upon which relief could be granted. Plaintiff moved for leave to file a third amended complaint.

**OVERVIEW:** Plaintiff brought an action alleging that defendant company shared information it received from plaintiff and that defendant program, in turn, developed plaintiff's idea with the information supplied by defendant company. According to plaintiff, the conduct constituted a misappropriation of trade secrets (count I), unfair competition (count II), and civil conspiracy (count III). Defendants moved to dismiss, pointing to various factual pleading deficiencies with respect to each of plaintiff's three claims for relief, and arguing that count II and count III were subsumed within count I as a matter of law. The court concluded plaintiff had not pled a viable claim under count I, and that counts II and III failed as a matter of law because plaintiff elected to seek relief under Delaware's trade secrets statute, *Del. Code Ann. tit. 6, § 2007(a)*, which displaced conflicting remedies for misappropriation of a trade secret. However, the court allowed a final amendment to plaintiff's complaint because it was concerned that plaintiff's counsel did not appreciate the procedural devices available to plaintiff to protect sensitive information filed with the court.

**OUTCOME:** The court granted defendants' motions to dismiss and granted plaintiff's motion for leave to file a third amended complaint as to count I only.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN1] See Del. Super. Ct. R. Civ. P. 15(a).

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN2] On a motion to dismiss under Del. Super. Ct. R. Civ. P. 12(b)(6), the court accepts as true all well-pleaded allegations in the complaint, and must view all inferences drawn from the facts pleaded in the light most favorable to the plaintiff. A complaint will not be dismissed unless the court determines that the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. And such determinations may be made as a matter of law or fact as alleged in the complaint.

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
[HN3] A complaint is "well pleaded" if it puts the opposing party on notice of the claim being brought against it. Complaints generally are short plain statements of the claim, each averment therein being simple, concise, and direct with technical forms of pleading being unnecessary. Thus, it is generally understood with notice pleading that the task of narrowing or clarifying the basic issues and ascertaining the relevant facts will be left to the deposition and discovery process. But the rules of the court, even in the context of notice pleading, will not countenance a complaint which rests its claims for relief solely upon conclusory allegations of fact; such

2001 Del. Super. LEXIS 170, *

allegations will not be accepted as true.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN4] On a motion to dismiss, a court ignores conclusory allegations that lack specific supporting factual allegations. Conclusory allegations alone cannot be the platform for launching an extensive, litigious fishing expedition for facts through discovery in the hope of finding something to support them.

*Torts > Business & Employment Torts > Unfair Business Practices*
[HN5] The Delaware General Assembly has created a private right of action for persons or entities who allege that they have fallen victim to a misappropriation of trade secrets. *Del. Code Ann. tit. 6, § 2001* et seq.

*Governments > Legislation > Interpretation*
*Torts > Business & Employment Torts > Unfair Business Practices*
[HN6] See *Del. Code Ann. tit. 6, § 2001(4)*.

*Governments > Legislation > Interpretation*
*Torts > Business & Employment Torts > Unfair Business Practices*
[HN7] See *Del. Code Ann. tit. 6, § 2001(2)*.

*Torts > Business & Employment Torts > Unfair Business Practices*
[HN8] The relevant inquiry when determining whether a plaintiff has set forth a prima facie misappropriation of trade secrets claim includes the following: (1) does a trade secret exist, that is, have the statutory elements-commercial utility arising from secrecy and reasonable steps to maintain secrecy-been shown; (2) has the secret been communicated by the plaintiff to the defendant; (3) was such communication pursuant to an express or implied understanding that the secrecy of the matter would be respected; and (4) has the secret information been improperly, for example, in breach of the understanding, used or disclosed by the defendant to the injury of the plaintiff?

*Torts > Business & Employment Torts > Unfair Business Practices*
[HN9] Delaware's trade secrets statute displaces conflicting tort, restitutionary, and other law of the State

of Delaware providing civil remedies for misappropriation of a trade secret. *Del. Code Ann. tit. 6, § 2007(a)*.

COUNSEL: Jeffrey K. Martin, Esquire, Wilmington, DE, Attorney for Plaintiff.

Kevin G. Abrams, Esquire, RICHARDS, LAYTON & FINGER, Wilmington, DE, Attorney for Defendants, FMR Corp. of Delaware and FMR Corp. of Massachusetts.

Anthony W. Clark, Esquire, SKADDEN, ARPS, MEAGHER & FLOM, LLP, Wilmington, DE, Attorney for Defendant, UPromise, Inc.

JUDGES: Judge Joseph R. Slights, III.

OPINIONBY: Joseph R. Slights, III

OPINION:

MEMORANDUM OPINION

SLIGHTS, J.

I. INTRODUCTION

Plaintiff, Savor, Inc. ("Savor"), filed its initial complaint against defendants, Fidelity Investment Corporation ("Fidelity") and UPromise, Inc. ("UPromise"), on October 27, 2000. (D.I. 1) Savor alleged that the defendants had misappropriated trade secrets and engaged in unfair competition by misappropriating the idea for a rebate program pursuant to which consumers of certain products or services would receive rebate funds for investment in designated State Qualified Tuition Plans. Savor filed its Amended Complaint as of right on November 13, 2000. (D.I. 4) n1 Although the Amended Complaint is not marked to show changes [*2] as required by the Court's rules n2, it appears that the only amendment to the initial complaint was the substitution of FMR Corp. ("FMR") for Fidelity as a party defendant. It is alleged that "Fidelity Investments" is a registered trademark of FMR. (*Id.* at P3). Savor filed its Second Amended Complaint on January 17, 2001. (D.I. 7) This time, Savor violated two rules of the Court: Savor again neglected to designate its changes from the First Amended Complaint n3; and it failed to seek leave of Court to file the amended pleading. n4 Savor's Second Amended Complaint named a new defendant, FMR Corp. of Massachusetts ("FMR Mass"), and added a claim for Civil Conspiracy. (*Id.* at PP3, 27-29)

2001 Del. Super. LEXIS 170, *

n1 No responsive pleading had been filed by the defendants. *See* Del. Super. Ct. Civ. R. 15(a).

n2 *But see* Del. Super. Ct. Civ. R. 15(aa).

n3 *Id.*

n4 *But see* [HN1] Del. Super. Ct. Civ. R. 15(a)("A party may amend the party's pleading once as a matter of course before a responsive pleading is served... Otherwise, a party may amend the party's pleading only by leave of court...")(emphasis supplied).

[*3]

The defendants have each moved to dismiss the Second Amended Complaint for failure to state a claim upon which relief may be granted. n5 They point to various factual pleading deficiencies with respect to each of Savor's three claims for relief, and also argue that the Unfair Competition and Civil Conspiracy claims are subsumed within the Misappropriation of Trade Secrets claim as a matter of law.

n5 *See* Del. Super. Ct. Civ. R. 12(b)(6). The motions assume that the Second Amended Complaint is the operative pleading notwithstanding Savor's failure to seek leave of court or stipulation of the parties before it filed the document. The Court will read the defendants' submissions as a waiver of any objection to the improper filing of the pleading under Rule 15 and will accept the Second Amended Complaint as the operative pleading.

For the reasons that follow, the defendants' motions to dismiss are GRANTED. Savor's motion for leave to file a third amended complaint, made orally during the presentation of the motions [*4] to dismiss, is also GRANTED.

## II. FACTS

Savor alleges that it developed a unique program whereby vendors could offer their customers cash rebates for investment in State Qualified Tuition Plans in exchange for the purchase of products or services. (D.I. 7 at P7) n6 In September, 1998, Savor supplied information about its rebate program to a representative of Fidelity, Abram Claude ("Claude"), in the hopes that Fidelity would serve as a fund manager for the investments contemplated by the program. (D.I. 7 at PP8-12) n7 Fidelity ultimately declined to participate. (D.I. 7 at P10)

n6 The Court will assume, as it must, that all well-pleaded allegations in the Second Amended Complaint are true. *See Nix v. Sawyer, Del. Supr., 466 A.2d 407, 410 (1983).*

n7 The Second Amended Complaint does not describe the nature of the relationship Savor sought to pursue with Fidelity. The Court has assumed that Savor sought Fidelity's assistance as a fund manager based on the allegations that Fidelity has served in this capacity in connection with other State Qualified Tuition Plans. (D.I. 7 at PP15-17)

[*5]

UPromise was formed in February, 2000. (D.I. 7 at P14) In July, 2000, published news reports described a rebate program initiated by UPromise which was identical to Savor's rebate program. (D.I. 7 at P16) The financial press reported that Fidelity was to be the manager for some of the funds created by the UPromise program. (*Id.*) A later newspaper article quoted Claude as he endorsed the UPromise program. (*Id.* at P17)

Savor alleges that Fidelity shared the information it received from Savor with UPromise knowing that Savor intended that the information be kept confidential. Savor further alleges that UPromise, in turn, developed Savor's rebate idea with the information supplied by and with the assistance of Fidelity. (*Id.* at PP19-29) According to Savor, this conduct constitutes a misappropriation of trade secrets, unfair competition, and civil conspiracy to commit these torts. (*Id.*)

## III. DISCUSSION

### A. Standard of Review

[HN2] On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint, and must view all inferences drawn from the facts plead in the light most favorable to the plaintiff. n8 A complaint [*6] will not be dismissed unless the Court determines that the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. n9 And such determinations may be made as a matter of law or fact as alleged in the complaint. n10

n8 *In re Tri-Star Pictures, Inc. Litig., Del. Supr., 634 A.2d 319, 326 (1993).*

n9 *Nix, 466 A.2d at 410* (citation omitted).

2001 Del. Super. LEXIS 170, *

n10 *Ferguson v. Wesley College, Inc., 2000 Del. Super. LEXIS 146, *9,* Del. Super., C.A. No. 99C-07-109 WTQ, Quillen, J. (March 23, 2000)(citation omitted).

[HN3] A complaint is "well pleaded" if it puts the opposing party on notice of the claim being brought against it. n11 "Complaints generally are short plain statements of the claim, each averment therein being simple, concise and direct with technical forms of pleading being unnecessary." n12 Thus, it is generally understood with notice pleading that "the task of narrowing or clarifying the basic issues and ascertaining the relevant facts [*7] [will be] left to the deposition and discovery process." n13 But the rules of this Court, even in the context of notice pleading, will not countenance a complaint which rests its claims for relief solely upon conclusory allegations of fact; such allegations will not be accepted as true. n14

n11 *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc., Del. Supr., 654 A.2d 403, 406 (1995).*

n12 *Ferguson, 2000 Del. Super. LEXIS 146, *5* (citation omitted).

n13 *Id.* (citation omitted).

n14 At oral argument, Savor suggested that the standard of review on a motion to dismiss is less rigorous in this Court than in the Court of Chancery. The distinction appreciated by Savor is not grounded in the jurisprudence of this or any other constitutional court of this State. *See Ramunno v. Cawley, Del. Supr., 705 A.2d 1029, 1034 (1998)*("[HN4] [on a motion to dismiss] we ignore conclusory allegations that lack specific supporting factual allegations"); *Nebenzahl v. Miller, 1996 Del. Ch. LEXIS 113, *9,* Del. Ch., C.A. No. 13206, Steele, V.C. (Aug. 26, 1996 corrected Aug. 29, 1996)("Conclusory allegations alone cannot be the platform for launching an extensive, litigious fishing expedition for facts through discovery in the hope of finding something to support them"); *Fahey-Hosey v. Capano, 1999 Del. Super. LEXIS 351, *4,* Del. Super., C.A. No. 98C-06-299 SCD, Del Pesco, J. (Aug. 31, 1999)("Conclusory allegations will not be accepted as true").

[*8]

**B. Count I, Misappropriation of Trade Secrets**

[HN5] The General Assembly has created a private right of action for persons or entities who allege that they have fallen victim to a "misappropriation" of "trade secrets." n15 A "trade secret" is:

> [HN6]
> Information, including a formula, pattern, compilation, program, device, method, technique or process, that:

> a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. n16

"Misappropriation" is defined as:

> [HN7]
> a. Acquisition of a trade secret of another by a person who knows or has reason to know that the secret was acquired by improper means; or

> b. Disclosure or use of a trade secret of another without express or implied consent by a person who:

>> 1. Used improper means to acquire knowledge of the trade secret; or

>> 2. At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was:

>> A. [*9] Derived from or through a person who had utilized improper means to acquire it;

B.    Acquired    under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

C. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use ... n17

n15 *6 Del. C. § 2001 et. Seq.*

n16 *6 Del. C. § 2001(4).*

n17 *6 Del. C. § 2001(2).*

Chancellor Allen has succinctly enumerated [HN8] the relevant inquiry when determining whether a plaintiff has set forth a *prima facie* misappropriation of trade secrets claim:

(1) Does a trade secret exist, i.e., have the statutory elements - commercial utility arising from secrecy and reasonable steps to maintain secrecy been shown; (2) Has the secret been communicated by plaintiff to the defendant; (3) Was such communication pursuant to an express or implied understanding that the secrecy of the matter [*10] would be respected; and (4) Has the secret information been improperly (e.g. in breach of the understanding) used or disclosed by the defendant to the injury of the plaintiff? n18

These criteria guide the Court's analysis here.

n18 *Wilmington Trust Co. v. Consistent Asset Mgt. Co., 1987 Del. Ch. LEXIS 409,* *8-9, Del. Ch., C.A. No. 8867, Allen C., (Mar. 25, 1987).*

After a careful review of the Second Amended Complaint, reading its allegations in the light most favorable to Savor, it is clear that the Court need go no further than the fist element to conclude that Savor has not pled a viable claim for misappropriation of a trade secret. The Second Amended Complaint describes Savor's rebate program simply as a program by which

"individuals who purchase products and services ... would receive rebates and rewards that would be paid in cash for the account of a designated beneficiary under a State Qualified Tuition Program." (D.I. 7 at P7) Savor acknowledged at oral argument, however, that the idea of a rebate program, [*11] even Savor's program, is not in and of itself a "trade secret" under the statutory definition or any other notion of the word. The idea is not at all novel; it has been around since long before Savor came into existence. (D.I. 7 at P23, Oct. 15, 2000 New York Times article referenced therein)

The processes by which the rebate program might be implemented, on the other hand, may qualify for trade secret protection. Unfortunately, the Second Amended Complaint is devoid of any reference to the means by which Savor intended that its rebate program should be implemented or any other details of the program itself. This pleading deficiency is fatal to Savor's claim on Count I. n19

n19 Counsel for Savor explained at oral argument that the failure to plead sufficient facts to describe the trade secret(s) at issue derived from its concern that such pleading would publicize the same information for which it seeks trade secret protection. The explanation is unfounded. This Court has promulgated rules of procedure to address this very concern. *See* Del. Super. Ct. Civ. R. 5(g)(allowing for documents containing confidential or sensitive information to be filed under seal).

[*12]

The Second Amended Complaint also fails to plead facts sufficient to satisfy the third element of its claim for Misappropriation of Trade Secrets, namely, that Savor communicated its trade secrets to Fidelity "pursuant to an express or implied understanding that the secrecy of the matter would be respected." n20 It is alleged only that "upon information and belief, FMR Corp. defendants [sic] knew or had reason to know that the information received concerning the Savor program was a trade secret acquired under a duty of confidence owed to the plaintiff." (D.I. 7 P19) This conclusory allegation fails to give notice to FMR of the bases for the so-called "duty of confidence" it allegedly owed to Savor. n21 Moreover, the Second Amended Complaint does not even allege that UPromise was aware of the trade secret status of the information, much less how it would have acquired such knowledge.

2001 Del. Super. LEXIS 170, *

n20 *Wilmington Trust Co., 1987 Del. Ch. LEXIS 409, *8-9.*

n21 *See Ramunno, 705 A.2d at 1034; Fitzgerald v. Cantor, 1999 Del. Ch. LEXIS 17, *5, Del. Ch., C.A. No. 16297-NC, Steele, V.C. (Jan. 14, 1999)(dismissing complaint where trade secret allegations were "merely conclusory").*

[*13]

Finally, the Second Amended Complaint fails to allege facts sufficient to support its conclusion that Fidelity used or disclosed the information it received from Savor. The references in newspaper articles to investment plans purportedly managed by Fidelity which appear to be similar in name to UPromise, e.g., Unique and Uloan, are not adequate to support the conclusory allegation that Fidelity communicated the alleged trade secrets to UPromise. Nor is reference to the article quoting Claude's description of UPromise's program an adequate factual predicate for a claim of Misappropriation of Trade Secrets. Something more is required to survive a Rule 12(b)(6) motion.

The motions to dismiss Count One of the Second Amended Complaint are GRANTED. n22

n22 In view of the Court's conclusion that Count I should be dismissed for inadequate factual pleading, the Court need not address the defendants' arguments that Savor's public disclosure of its alleged trade secrets to the State of Delaware and others disables the Misappropriation of Trade Secrets claim as a matter of law. The Court recognizes, however, that its decision on plaintiff's motion to amend may prompt the need to visit this issue on another day.

[*14]

**C. Counts II (Unfair Competition) and III (Civil Conspiracy)**

Counts II (Unfair Competition) and III (Civil Conspiracy) fail as a matter of law. Savor elected to seek relief under [HN9] Delaware's trade secrets statute. This statutory scheme "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secrets." n23 The "displacement" contemplated by Section 2007 extends to Savor's unfair competition and civil conspiracy claims, both of which are grounded in the same facts which

purportedly support the Misappropriation of Trade Secrets claim. n24 The motions to dismiss these claims, therefore, are GRANTED.

n23 *6 Del. C. § 2007(a)*("Section 2007").

N24 *Leucadia, Inc. v. Applied Extrusion Techs., Inc., D. Del., 755 F. Supp. 635, 637 (1991)*("[Section] 2007 was intended to preserve a single tort cause of action under state law for misappropriation ... and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation"); *Total Care Physicians, P.A. v. O'Hara, 2001 Del. Super. LEXIS 171, *12-13, Del. Super., C.A. No. 99C-11-201-JRS, Slights, J. (March 23, 2001)(holding that Section 2007 preempts claim for unfair competition or civil conspiracy).*

[*15]

**D. Plaintiff's Motion for Leave to Amend its Complaint**

Plaintiff has sought leave of Court to file a third amended complaint. Because the Court is concerned that plaintiffs' counsel did not appreciate the procedural devices available to his client to protect sensitive information filed with the Court, the Court will allow a final amendment to the complaint. Accordingly, plaintiff's motion for leave to file a third amended complaint is GRANTED, but only as to Count I. Counts II and III have been dismissed as a matter of law with prejudice. The third amended complaint shall be filed within thirty (30) days of this Opinion and Order. If no further amended complaint is filed within thirty (30) days, the dismissal of this action shall be final. n25

n25 *e.g. In re Freeport-McMoran Sulphur, Inc. Shareholders Litig., 2001 Del. Ch. LEXIS 5, *19-20, Del. Ch., C.A. 16729, Jacobs, V.C. (Jan. 11, 2001).*

**V. CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss are GRANTED. Plaintiff's motion for leave [*16] to file a third amended complaint is also GRANTED as to Count I only.

**IT IS SO ORDERED.**

Judge Joseph R. Slights, III

A 110

1996 U.S. Dist. LEXIS 14765, *

LEXSEE 1996 U.S.DIST.LEXIS 14765

**SUPRA MEDICAL CORP., Plaintiff, v. MYRON A. BAKER, MARVIN BURSTEIN, TERRY L. COLLIER, DENNIS D. COLE, RUSSELL A. HILL, PHILLIP E. LOORI, RICHARD J. REINHART, THOMAS H. SCOTT, GUY ZANI, JR., DAVID HILL, JOHN HILL, and WHITE STAR MANAGEMENT, INC., Defendants.**

**Civil Action No. 95-556-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1996 U.S. Dist. LEXIS 14765*

**September 26, 1996, Decided**

**NOTICE:** [*1]  FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Plaintiff failed to state a claim against defendant Loori upon which relief granted. Complaint against defendant Loori dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation filed an action pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1964 et seq.*, against defendant individuals and a competitor. An individual defendant filed a motion to dismiss the complaint against him under *Fed. R. Civ. P. 12(b)(6)*.

**OVERVIEW:** The corporation wanted to stop a competitor from using its proprietary technology and to return the technology. In its RICO action, the corporation sought treble damages for RICO violations and conspiracy to violate RICO and injunctive relief. The court found that the individual defendant only committed a single predicate act of mail or wire fraud, which was not enough to bring a pattern of racketeering claim under RICO. The court found that the individual's participation in the proxy solicitation was not enough to make him and aider/abettor or a member of a conspiracy. In dismissing the complaint against the individual defendant, the court found that the corporation's conclusory allegations that the individual formulated a plan to solicit proxies from shareholders was insufficient upon which to infer that the individual, in fact, knew of the plan. The court held that the complaint failed to state a cause of action under a conspiracy theory because no allegations stated that the individual knew about or participated in a conspiracy.

**OUTCOME:** The court dismissed the complaint against the individual defendant for failure to state a cause of action upon which relief could be granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] In ruling on a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss, the factual allegations of the complaint must be accepted as true.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN2] Under a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss, the court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the complaint.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN3] Under a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss, the court must resolve any ambiguities concerning the sufficiency of the claims in favor of the plaintiff.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

1996 U.S. Dist. LEXIS 14765, *

[HN4] Under a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss, the court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations*
[HN5] Under the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1964* et seq., it shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate, or foreign commerce. *18 U.S.C.S. § 1962*(b).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations*
[HN6] Under the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1964* et seq., it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of *18 U.S.C.S. § 1962. 18 U.S.C.S. § 1962*(d).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
[HN7] Under the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1964* et seq., the essential elements of a civil claim are (1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering activity; (3) a nexus between the defendant, the pattern of racketeering activity, or the RICO enterprise; and (4) resulting injury to plaintiff, in his business or property.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
*Securities Law > Bases for Liability > Racketeer Influenced & Corrupt Organizations*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations*
[HN8] To establish a pattern of racketeering activity under the Racketeer Influenced and Corrupt

Organizations Act (RICO), *18 U.S.C.S. § 1964* et seq., plaintiff must allege defendant's participation in at least two predicate acts of racketeering activity. *18 U.S.C.S. § 1961*(5).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
*Securities Law > Bases for Liability > Racketeer Influenced & Corrupt Organizations*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations*
[HN9] Under the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1964* et seq., *18 U.S.C.S. § 1961*(1) provides a list of offenses defined as racketeering activities, including mail and wire fraud and fraud in the sale of securities.

*Civil Procedure > Preclusion & Effect of Judgments > Res Judicata*
[HN10] Res judicata, or claim preclusion, bars subsequent suits based on the same cause of action and between the same parties as a previous suit.

*Civil Procedure > Preclusion & Effect of Judgments > Res Judicata*
[HN11] Claim preclusion applies only where (1) a final judgment was had on the merits in a previous litigation; (2) the previous suit involved the same parties or their privities; and (3) the subsequent suit is based on the same cause of action.

*Civil Procedure > Preclusion & Effect of Judgments > Collateral Estoppel*
[HN12] Collateral estoppel, or issue preclusion, bars relitigation of an identical issue where (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

*Securities Law > Bases for Liability > Racketeer Influenced & Corrupt Organizations*
*Criminal Law & Procedure > Accessories > Aiding & Abetting*
[HN13] Under the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1964* et seq., a

1996 U.S. Dist. LEXIS 14765, *

defendant who has not himself committed any predicate acts may be held liable for RICO violations if he has aided and abetted at least two predicate acts by others.

*Evidence > Procedural Considerations > Inferences & Presumptions*
*Criminal Law & Procedure > Accessories > Aiding & Abetting*
[HN14] To find a defendant liable as an aider and abettor, a plaintiff must prove that (1) the predicate acts have been committed, and (2) defendant knew of the commission of the acts and acted with intent to facilitate them. The existence of intent may be inferred from circumstantial evidence.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
*Securities Law > Bases for Liability > Racketeer Influenced & Corrupt Organizations*
*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy*
[HN15] To plead conspiracy in under the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1964* et seq., a complaint must set forth factual allegations that indicate (1) the period of the conspiracy, (2) its intended purpose, (3) the specific actions taken by the conspirators in furtherance of the conspiracy, (4) agreement to commit predicate acts, and (5) knowledge that the acts agreed upon formed part of a pattern of racketeering activity.

*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy*
*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
[HN16] When a plaintiff pleads conspiracy, it is not enough to state in the complaint that the elements exist. A mere general allegation of conspiracy is insufficient. A general averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient.

**COUNSEL:** Neal J. Levitsky, Esquire, of Agostini, Levitsky & Isaacs, Wilmington, Delaware, attorney for plaintiff. Of counsel: Jonathan L. Rosner, Esquire, of Rosner Bresler Goodman & Bucholz, New York, New York.

William O. LaMotte, III, Esquire, and Karen L. Pascale, Esquire, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, attorneys for defendant Phillip E.

Loori. Of counsel: Richard F. Horowitz, Esquire, and Joel C. Haims, Esquire, of Heller, Horowitz & Feit, P.A., New York, New York. Myron A. Baker, pro se. Marvin Burstein, pro se. Of counsel: Robert S. Lewis, Esquire, Nyack, New York. Terry L. Collier, pro se. Dennis D. Cole, pro se. Russell E. Hill, pro se. Richard J. Reinhart, pro se. Thomas H. Scott, pro se. Guy Zani, Jr., pro se. David Hill, pro se. John Hill, pro se.

**JUDGES:** Sue L. Robinson, District Judge

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Dated: September 26, 1996

Wilmington, Delaware

**Sue L. Robinson,** District Judge

## I. INTRODUCTION

Plaintiff Supra Medical [*2] Corporation ("Supra") filed this suit on September 13, 1995 pursuant to *18 U.S.C. § 1964* et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In its amended complaint ("complaint"), plaintiff seeks treble damages for violations of RICO and conspiracy to violate RICO, injunctive relief prohibiting defendants from transferring or otherwise utilizing plaintiff's proprietary biomedical technology, and the return of said technology. (D.I. 32) Defendant Phillip E. Loori has moved to dismiss the complaint, contending that plaintiff has failed to state a claim against him upon which relief can be granted. (D.I. 36) This motion has been fully briefed, and oral argument was held on September 9, 1996. For the reasons set forth below, defendant Loori's motion will be granted.

## II. BACKGROUND

The allegations plaintiff has set forth in its complaint are as follows:

Plaintiff Supra was incorporated in 1985. Defendants Loori and Thomas H. Scott had control over the corporation between 1987 and 1992, during which years the company met with little financial success. (D.I. 32 at PP 18-21) At some point during their control of the company, plaintiff contends, defendants [*3] Loori and Scott caused Supra to obtain certain biomedical and health care technology for the purpose of artificially inflating the price of Supra's common stock. (D.I. 32 at

1996 U.S. Dist. LEXIS 14765, *

PP 22-23) In 1992, defendant Loori sold his shares in Supra and resigned from its board, leaving the company, plaintiff contends, without sufficient capital to utilize the technology it had acquired. (D.I. 32 at PP 30-31) Plaintiff does not allege that any of defendant Loori's actions before 1992 constitute predicate acts or parts of the RICO "scheme" referred to later in the complaint.

According to plaintiff, in March or April of 1994 defendant Richard J. Reinhart devised a scheme to misappropriate Supra's biomedical and health care technology by taking over control of the corporation. (D.I. 32 at P 35) Plaintiff alleges that Reinhart's first attempt to execute this scheme consisted of a merger agreement with Medhealth Imaging, Inc., whose assets were artificially inflated via a sham agreement between Medhealth Imaging and another company controlled by defendant Terry L. Collier. (D.I. 32 at PP 39-41) This agreement, made without the consent of Supra's board of directors, would have placed "a group represented [*4] by defendant Myron A. Baker" in control of Supra. (D.I. 32 at P 38) Supra's board later learned of and disavowed the merger agreement. (D.I. 32 at P 42)

Plaintiff contends that after the board rejected the merger, defendant Reinhart

> had circuit boards, source codes, control drawings, form drawings, working drawings, instructions, blueprints, mock-ups and other documents containing proprietary details and information essential to its biomedical and health care technology surreptitiously removed from [plaintiff's] facilities and placed in his possession or under his custody and control.

(D.I. 32 at P 43) Reinhart then resigned his positions with Supra. Meanwhile, defendants Baker, Cole, and Guy Zani, Jr. submitted to Supra's board another proposal for a merger with Medhealth Imaging, which the board approved. (D.I. 32 at PP 46-48) Plaintiff contends, however, that the board's approval of the merger was based on statements which defendants Baker, Cole, and Zani knew were untrue when made. In addition, plaintiff alleges that since the agreement was made, defendants Baker, Collier, Cole, and Zani

> have transmitted and caused the transmission of communications by [*5] mail and wire in interstate and foreign

commerce to plaintiff . . . and others to give the appearance of fulfilling the agreement to provide plaintiff . . . with necessary additional capital and administrative and financial planning which in fact never was provided, while misappropriating [plaintiff's] proprietary biomedical and health care technology and name and reputation.

(D.I. 32 at P 50) In this manner, plaintiff contends, defendants Baker, Cole, Zani, and Collier took control of Supra and held themselves out as its authorized representatives. (D.I. 32 at PP 52-84)

By early 1995, relations between Supra's board and defendants Baker, Cole, Zani, and Collier had soured. The board sent defendant Baker a memorandum terminating the merger agreement, citing specifically Medhealth Imaging's failure to secure the promised capital and "referring to eight months of documented deceit, misrepresentations, dishonored checks, exaggerations and broken promises . . . ." (D.I. 32 at P 82) Plaintiff contends that defendants Baker and Cole continued to held themselves out, fraudulently, as President/Chief Executive Officer and Vice President/General Counsel of Supra for the purpose of [*6] soliciting investments, which they then misappropriated. (D.I. 32 at PP 88-91, 96) In connection with these investments, plaintiff contends that defendants Baker and Cole, along with defendant Zani and Medhealth Imaging, issued a document purporting to represent shares of preferred stock in Supra. This action was allegedly taken without the required authorization of the board. (D.I. 32 at PP 93-94) Plaintiff also contends that on the instruction of defendants Baker and Zani, one of Supra's Supra Ultra Sound Scanner systems was removed from its authorized location and placed under the control of Medhealth Imaging.

Plaintiff alleges no involvement by defendant Loori in any of these events until March 1995 when, according to plaintiff, defendants Baker, Collier, Cole, Russell Hill, Reinhart, Scott, Zani, and Loori "formulated a plan to solicit proxies from [Supra] shareholders and elect new Directors of [Supra] to misappropriate [Supra's] proprietary biomedical and health care technology and equipment for their benefit and conceal the misappropriation from [plaintiff's] duly elected Directors and shareholders." (D.I. 32 at 101) In furtherance of this plan, plaintiff alleges, [*7] defendants, including defendant Loori, solicited proxies from Supra's shareholders to replace the existing board members with defendants Russell Hill, Reinhart, Baker, Zani, and Cole.

A 114

1996 U.S. Dist. LEXIS 14765, *

(D.I. 32 at PP 103-04) The forms mailed in this solicitation, plaintiff contends, were false and misleading in numerous respects. (D.I. 32 at P 106) n1

> n1 This mailing was the subject of a separate suit filed by Supra to enjoin the solicitation. John W. Cantwell, Evelyna Dyson-Cantwell, Niels Lauerson, George J. Stasen and John F. Brooks, Individually and on behalf of Supra Medical Corp. v. Russell A. Hill, Thomas H. Scott, Nancy Loori-Niesgard, Phillip E. Loori and Diane E. Simmons, No. 95-390-SLR (D. Del. 1995). The parties to that action reached a settlement and the case was dismissed with prejudice on August 17, 1995. As a result of the settlement, the consent forms were nullified and no further solicitation took place. (D.I. 32 at P 118) As noted, the instant suit was filed on September 13, 1995.

The last remaining allegation [*8] in which defendant Loori is mentioned concerns the transmission of an announcement in August 1995 to the effect that a corporation called Joe Franklin Productions, Inc. had agreed to take over the assets and technology of Medhealth Imaging, Inc. (D.I. 32 at P 119) According to plaintiff, at the time of the announcement Medhealth Imaging, Inc. was in possession of assets and technology belonging to Supra. These assets were transferred to Joe Franklin Productions when Medhealth Imaging was sold. (D.I. 32 at PP 120-22) Plaintiff does not allege that defendant Loori played any role in the actual sale or announcement thereof, but only that defendant Baker

> on behalf of himself and defendants Terry L. Collier, Dennis D. Cole, Russell A. Hill, Phillip E. Loori, Thomas H. Scott, [and] Guy Zani, Jr., caused a statement to be transmitted by wire in interstate commerce from Clearwater, Florida, to various print media in the financial community throughout the United States announcing that Medhealth Imaging, Inc. agreed to sell one hundred percent of its assets and proprietary technology to a publicly-held corporation known as Joe Franklin Productions, Inc. . . .

(D.I. 32 at P [*9] 119)

## III. DISCUSSION

### A. Standard for Dismissal Under Rule 12(b)(6)

Defendant Loori has moved to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* for failure to state a claim upon which relief can be granted. [HN1] In ruling on a Rule 12(b)(6) motion, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto, 405 U.S. 319, 322, 31 L. Ed. 2d 263, 92 S. Ct. 1079 (1972)* (per curiam). [HN2] The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the complaint. *Retail Clerks International Association v. Schermerhorn, 373 U.S. 746, 10 L. Ed. 2d 678, 83 S. Ct. 1461 (1963).* Additionally, [HN3] the court must resolve any ambiguities concerning the sufficiency of the claims in favor of the plaintiff. *Hughes v. Rowe, 449 U.S. 5, 10, 66 L. Ed. 2d 163, 101 S. Ct. 173 (1980)*(per curiam). [HN4] The "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).*

### B. Standard for Liability under RICO

The applicable sections of RICO provide: [HN5] [*10]

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> . . . .[HN6]
>
> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

*18 U.S.C. § 1962*(b), (d). [HN7] The essential elements of a civil RICO claim are "(1) the existence of a RICO 'enterprise'; (2) the existence of 'a pattern of racketeering activity'; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO 'enterprise'; and (4) resulting injury to plaintiff, in his business or property." *Klapper v. Commonwealth Realty Trust, 657 F. Supp. 948, 953 (D. Del. 1987).* [HN8] To establish a pattern of racketeering activity, plaintiff must allege defendant's participation in at least two predicate acts of racketeering

1996 U.S. Dist. LEXIS 14765, *

activity. *18 U.S.C. § 1961(5)*. [HN9] Section 1961(1) provides a list of offenses defined as racketeering activities, including mail and wire fraud and fraud in the sale of [*11] securities.

### C. Parties' Contentions

Loori raises several grounds for dismissal. He contends that: 1) plaintiff has failed to plead his involvement in the requisite predicate acts of racketeering activity, thus failing to establish the required nexus; 2) the complaint does not allege that Loori obtained or maintained control of an enterprise through a pattern of racketeering activity; 3) plaintiff does not allege any injury resulting from Loori's actions; 4) plaintiff does not allege that Loori knowingly and willingly participated in the alleged scheme to misappropriate Supra's biomedical technology; 5) the complaint does not meet the specificity requirements of *Fed. R. Civ. P. 9(b)*; and 6) plaintiff is not entitled to injunctive relief because it failed to plead that Loori is in possession or control of the technology in question. Plaintiff answers Loori's first three arguments with an assertion that Loori, as an aider and abettor and a member of a conspiracy, is liable for the predicate acts, the pattern of activity, the control of the RICO enterprise, and the damages caused by his co-conspirators, including those that occurred before he joined the conspiracy. Plaintiff also [*12] claims that the complaint clearly states that Loori knowingly and intentionally joined the scheme to defraud plaintiff, and that the complaint fully meets the specificity requirements of Rule 9(b). Plaintiff has not responded in its brief to defendant Loori's contentions that plaintiff's claims for injunctive relief must be dismissed for failure to allege that the technology is in his possession or control. n2

> n2  Plaintiff alluded briefly to this issue during oral argument, stating that if Loori is not in possession of the technology, he should be willing to stipulate to that fact.

### D. Co-Conspirator/Aider and Abettor Liability

According to the complaint, the predicate acts in which all defendants took part are mail and wire fraud. (D.I. 32 at P 127) However, plaintiff alleges actual participation on defendant Loori's part in only one of the activities alleged during the period when the "scheme" was operative -- the mailing of the proxy solicitation in March 1995.

Defendant Loori contends that because [*13] the proxy solicitation was the subject of a previous lawsuit,

consideration of the mailing as a predicate act is barred by res judicata and collateral estoppel. [HN10] Res judicata, or claim preclusion, bars subsequent suits based on the same cause of action and between the same parties as a previous suit. *Labelle Processing Co. v. Swarrow, 72 F.3d 308, 313 (3d Cir. 1995)*. [HN11] Claim preclusion applies only where 1) a final judgment was had on the merits in a previous litigation; 2) the previous suit involved the same parties or their privities; and 3) the subsequent suit is based on the same cause of action. *Board of Trustees v. Centra, 983 F.2d 495, 504 (3d Cir. 1992)*. [HN12] Collateral estoppel, or issue preclusion, bars relitigation of an identical issue where "1) the identical issue was decided in a prior adjudication; 2) there was a final judgment on the merits; 3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and 4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Id. at 505*.

Although there is overlap between the parties in the present suit and those [*14] involved in the prior litigation, the parties are not the same. Moreover, the prior suit was based on alleged violations of federal securities regulations and Delaware corporate law. The suits were not based on the same cause of action, and the issues therein cannot be characterized as identical. Therefore, neither issue preclusion nor claim preclusion operates in this case.

Loori also argues that a deficient proxy solicitation of the sort alleged in the complaint cannot by law constitute a predicate act under RICO. In support of this argument, defendant relies on *First Pacific Bancorp, Inc. v. Bro, 847 F.2d 542 (9th Cir. 1988)*, in which a proxy solicitation, albeit one which failed to comply with relevant securities regulations, was held not to constitute a sale of securities. Because no sale had taken place, the solicitation could not be "fraud in the sale of securities," a predicate act listed in § 1961(1). *Id. at 546*. In addition, the solicitation did not constitute mail or wire fraud because it was not done "for obtaining money or property by means of false or fraudulent pretenses," as such fraud is defined in *18 U.S.C. § 1341*. In reaching this conclusion, the court [*15] relied on the reasoning of the Second Circuit in *United States v. Dixon, 536 F.2d 1388, 1399 (2d Cir. 1976)*:

> Our research has discovered [no case] which has sustained a conviction for mail fraud on the basis of nothing more than the failure to mail a correct proxy solicitation where this was not in

1996 U.S. Dist. LEXIS 14765, *

furtherance of some larger scheme contemplating pecuniary loss to someone or direct pecuniary gain to those who designed it.

In contrast to Dixon and First Pacific Bancorp, the complaint in this case alleges that, while the proxy solicitation itself did not solicit money or pertain to the sale of shares, it was undertaken with the purpose of obtaining control over the company so that defendants could misappropriate Supra's technology. It was, therefore, "in furtherance of some larger scheme," and, if proven, constitutes a predicate act under RICO.

Loori's participation in this mailing, however, at most constitutes a single predicate act. n3 Plaintiff argues that, regardless of whether Loori's participation in the proxy solicitation is itself considered a predicate act, he is responsible for the predicate acts of the other defendants as an aider/abettor and [*16] as a member of a conspiracy. [HN13] A defendant who has not himself committed any predicate acts may be held liable for RICO violations if he has aided and abetted at least two predicate acts by others. *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc., 46 F.3d 258, 270 (3d Cir. 1995).* [HN14] To find a defendant liable as an aider and abettor, a plaintiff must prove that 1) the predicate acts have been committed, and 2) defendant "knew of the commission of the act[s] and acted with intent to facilitate [them]." *Id.* The existence of intent may be inferred from circumstantial evidence. *Id.*

N3 Plaintiff states in its brief that defendant Loori participated in "more than two dozen mailings in furtherance of the scheme . . . ." (D.I. 47 at 13) The complaint, however, describes a single communication mailed to approximately twenty-nine individuals. If plaintiff meant by its description to argue that each individual piece of mail counts as one predicate act, the court rejects this contention.

Plaintiff contends [*17] that intent on the part of Loori may be inferred from the following alleged scenario: Loori acquired, in the first instance, the proprietary technology at issue merely to enhance the value of his stock. Although in control of Supra and in possession of the technology at that point, Loori chose instead to sell "a substantial amount" of his stock and resign his position as an officer and director. To infer from these facts an intent, years later, to facilitate a scheme to gain control of Supra in order to

misappropriate its technology has no basis in logic, let alone fact. The only allegation concerning Loori after the RICO scheme is alleged to have begun is the conclusory assertion that Loori, along with other defendants, "formulated a plan to solicit proxies from [Supra] shareholders and elect new Directors of [Supra] to misappropriate [Supra's] proprietary biomedical and health care technology and equipment for their benefit and conceal the misappropriation from [plaintiff's] duly elected Directors and shareholders." (D.I. 32 at 101) The court finds that plaintiff's conclusion that a plan was formulated is an insufficient basis upon which to infer that defendant Loori knew [*18] of the plan.

Likewise, plaintiff has failed to adequately plead conspiracy. [HN15] To plead conspiracy in a RICO case, a complaint must set forth factual allegations that indicate 1) the period of the conspiracy, 2) its intended purpose, 3) the specific actions taken by the conspirators in furtherance of the conspiracy, 4) agreement to commit predicate acts, and 5) knowledge that the acts agreed upon formed part of a pattern of racketeering activity. *Glessner v. Kenry, 952 F.2d 702, 714 (3d Cir. 1991),* citing *Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).* [HN16] It is not enough to state in the complaint that these elements exist. "It is a longstanding rule in the Third Circuit that a mere general allegation of conspiracy is insufficient. A general averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient." *Kalmanovitz v. G. Heileman Brewing Co., Inc., 595 F. Supp. 1385, 1400 (D. Del. 1984),* aff'd, *769 F.2d 152 (3d Cir. 1985),* citing *Black & Yates, Inc. v. Mahogany Assoc., 129 F.2d 227 (3d Cir. 1941),* cert. denied, *317 U.S. 672, 87 L. Ed. 539, 63 S. Ct.* [*19] *76 (1942).*

According to plaintiff, the conspiracy was initiated in 1994 when defendant Reinhart devised a scheme to misappropriate plaintiff's proprietary technology. Plaintiff's only alleged involvement in the conspiracy n4 was his participation in the failed proxy solicitation one year later. Even if the court must draw the inference from defendant Loori's participation that he had knowledge of his co-defendants' attempt to gain control of Supra from its existing board, there are no facts alleged from which the court can infer that defendant Loori had knowledge of or himself had a bad purpose for such control.

n4 Although plaintiff alleges as well that the August 1995 announcement regarding the transfer of Medhealth Imaging's assets was undertaken on behalf of defendant Loori, inter alia, there are absolutely no facts alleged to support the

1996 U.S. Dist. LEXIS 14765, *

assertion and, therefore, the court cannot infer knowledge and intent on the part of Loori from such an event, unrelated as it is to the proxy solicitation.

[*20]

In the absence of factual allegations sufficient to sustain a finding of conspiracy or aider and abettor liability, plaintiff's claims against defendant Loori cannot stand. Plaintiff has alleged, at most, Loori's direct involvement in a single predicate act, which by itself cannot establish a pattern of racketeering activity. Plaintiff has failed to make any allegations that Loori himself controlled the enterprise during the relevant time period or that his single alleged predicate act caused harm to Supra. Accordingly, plaintiff's first and second claims for relief against defendant Loori will be dismissed. n5

n5 Because the court concludes that the complaint has not alleged predicate acts sufficient to sustain its RICO claim against defendant Loori, it is not necessary to address Loori's arguments concerning the sufficiency of pleading under *Fed. R. Civ. P. 9(b)*.

**E. Claims for Injunctive Relief**

Plaintiff has not addressed defendant Loori's contention that injunctive relief cannot be awarded in the absence [*21] of an allegation that he possesses or controls plaintiff's property. Having reviewed the pleadings, the court concludes that the complaint fails to allege that defendant Loori has had any access to or control over plaintiff's proprietary biomedical or health care technology since terminating his relationship with the company in 1992. The complaint, therefore, fails to provide an adequate factual basis for the relief requested. Plaintiff's claims for injunctive relief against defendant Loori will be dismissed.

**IV. CONCLUSION**

For the reasons stated above, the court concludes that plaintiff has failed to state a claim against defendant Loori upon which relief can be granted. Accordingly, the complaint against defendant Loori will be dismissed.