## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC.,          :
                                      :   Civil Action No.
                                      :   1:05-CV-00872-SLR
                                      :
                                      :
                                      :
THE TAX AUTHORITY, INC.,              :
et al.,                               :
                                      :
             Defendants.              :

---

**AMENDED BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT OF DEFENDANTS, THE TAX AUTHORITY, INC., AND KENNETH M. LEESE**

---

Erin D. Edwards (No. 4392)
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6552
(302) 576-3471 (Fax)

*Attorney for Defendants*
*The Tax Authority and*
*Kenneth M. Leese*

**OF COUNSEL:**

Howard A. Rosenthal
Patrick J. Doran
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

DATED: January 3, 2006

064756.1001

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ......................................... iii

NATURE AND STAGE OF PROCEEDINGS ............................... 1

SUMMARY OF ARGUMENT ........................................... 2

PTS' FACTUAL ALLEGATIONS ...................................... 3

ARGUMENT ...................................................... 6

    I.    Standard Of Review. ................................ 6

    II.   PTS Has Failed To Plead Any Valid RICO Claim (Count
         VII). .............................................. 7

    III. Since The Complaint Fails To Plead A Valid RICO Claim,
         This Entire Action Should Be Dismissed For Lack Of
         Subject Matter Jurisdiction. ...................... 14

    IV.  PTS' State Law Claims Fail To State Any Claim Upon
         Which Relief Can Be Granted And Should Be Dismissed. 15

        A.   PTS Has Failed To State A Claim For Breach Of
            Contract Because
            The Alleged Agreement Lacks Consideration And Is
            Barred By
            The Statute Of Frauds (Count I). ............... 15

        B.   PTS' Tort Claims Relating To The Lease Are Barred
            By The
            Economic Loss Doctrine (Counts II, III, VI, VII
            and VIII). ..................................... 16

        C.   PTS Has Failed To State A Claim For Tortious
            Interference With Prospective Economic Advantage
            (Count II). .................................... 17

        D.   PTS Has Failed To State A Claim For Tortious
            Interference
            With Contract Since Tax Authority Cannot
            Interfere With Its
            Own Contract (Count III). ..................... 19

        E.   PTS' Claims For Unfair Trade Practices And Civil

i

Conspiracy Are
Barred By Delaware's Uniform Trade Secrets Act
(Counts IV and VI) ............................. 20

F.   PTS Has Failed To State A Claim For
     Misappropriation Of
     Trade Secrets (Count V) ....................... 20

G.   PTS' Has Failed To State A Claim For Civil
     Conspiracy (Count VI) ......................... 23

H.   PTS Has Failed To State A Claim For Bad Faith
     (Count VIII) .................................. 24

DB02:5137772.2                                              064756.1001

## TABLE OF AUTHORITIES

**Page No.**

**Cases**

Acierno v. Preit-Rubin Inc.,
  199 F.R.D. 157 (D.Del. 2001) ............................... 18

Annulli v. Panikkar,
  200 F.3d 189 (3d Cir. 1999) ............................... 12

Banks v. Wolk,
  918 F.2d 418 (3d Cir. 1990) ............................... 13

Bonavitacola Electric Contractor, Inc. v. Boro Developers, Inc.,
  2003 U.S.App.LEXIS 27918 (3d Cir. October 30, 2003),
  cert. denied, 125 S.Ct. 57,
  2004 U.S. LEXIS 5646 (2004) ........................ 9, 10, 13

Charal Investment Co., Inc. v. Rockefeller,
  131 F.Supp.2d 593(D.Del. 2001) ........................... 22

Dionisi v. DeCampli,
  1995 Del.Ch.LEXIS 88 (Del.Ch. June 28, 1995). .............. 22

Dunlap v. State Farm Fire and Casualty Co.,
  878 A.2d 434 (Del. 2005) ................................. 24

Glessner v. Kenny,
  952 F.2d 702 (3d Cir. 1991) ................................ 9

H.J. Inc. v. Northwestern Bell Telephone Co.,
  492 U.S. 229, 109 S.Ct. 2893, 2901 (1989) ................. 12

Hindes v. Castle,
  937 F.2d 868 (3d Cir. 1991) ............................... 13

Hunter v. Diocese of Wilmington,
  1987 Del.Ch.LEXIS 468 (Del.Ch. Aug. 4, 1987) ........... 15, 16

Huntington Homeowners Association, Inc. v. 706 Investments,
  1999 Del.Ch.LEXIS 119 (Del.Ch. May 28, 1999) .............. 16

Huss v. Green Spring Health Services, Inc.,
  18 F.Supp.2d 400 (D.Del. 1998) ........................... 15

International Fidelity Insurance Co. v. Mattes Electric, Inc.,
  2002 Del.Super.LEXIS 441 (Del.Super. June 27, 2002) ........ 17

iii

Irwin & Leighton, Inc. v. W.M. Anderson Co.,
  532 A.2d 983 (Del.Ch. 1987) .................................. 19

Kehr Packages, Inc. v. Fidelcor, Inc.,
  926 F.2d 1406 (3d Cir.),
  cert. denied, 501 U.S. 1222 (1991) ...................... 10, 13

Kenty v. Bank One,
  Columbus, N.A., 92 F.3d 384 (6th Cir. 1996) ................ 11

Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.,
  1997 Del.Super.LEXIS 30 (Del.Super. Jan. 29, 1997) ......... 25

Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,
  755 F.Supp. 635 (D.Del. 1991) ............................. 20

Lightning Lube v. Witco Corp.,
  4 F.3d 1191 (3d Cir. 1993) ................................ 14

MacInnis v. Charles F. Hill Construction, Inc.,
  1981 Del.Super.LEXIS 693 (Del.Super. Dec. 18, 1981) ........ 17

Marshall-Silver Construction Co., Inc. v. Mendel,
  894 F.2d 593 (3d Cir. 1990) ............................... 13

Nicolet, Inc. v. Nutt,
  525 A.2d 146 (Del.Super. 1987) ............................ 24

Nielsen Electronics Institute v. Student Finance Corp.,
  2001 U.S.Dist.LEXIS 25556 (D.Del. 2001) ................. 7, 12

Sanirab Corp. v. Sunroc Corp.,
  2002 Del.Super.LEXIS 350 (Del.Super. April 29, 2002) ....... 20

Savor, Inc. v. FMR Corp.,
  2001 Del.Super.LEXIS 170 (Del.Super. April 24, 2001),
  aff'd, 812 A.2d 894 (Del. 2002) ....................... 20, 22

Sedima, S.P.R.L. v. Imrex Company, Inc.,
  473 U.S. 479, 105 S.Ct. 3275 (1985) ....................... 8

Shearin v. E.F. Hutton Group,
  652 A.2d 578 (Del.Ch. 1994). .......................... 19, 20

Smith v. Delaware First Federal Credit Union,
  395 F.Supp.2d 127 (D.Del. 2005) ........................... 15

Supra Medical Corp. v. Baker,
  1996 U.S.Dist.LEXIS 14765 (D.Del. 1996) .................... 9

iv

Tansey-Warner, Inc. v. Hooper,
  1989 Del.Super.LEXIS 479(Del.Super. Nov. 15, 1989) .......... 24

Tillman v. Pepsi Bottling Group, Inc.,
  2005 U.S.Dist.LEXIS 18891 (D.Del. 2005) ...................... 7

William Lloyd, Inc. v. Hrab,
  1999 Del.Super.LEXIS 276 (Del.Super. April 7, 1999) ......... 15

Williams v. National American Postal Workers Union,
  2005 U.S.Dist.LEXIS 7342 (D.Del. 2005) ...................... 7

Young v. West Coast Industrial Relations Association,
  763 F.Supp. 64 (D.Del. 1991),
  aff'd, 961 F.2d 1570 (3d Cir. 1992) ............ 10, 11, 13, 14

**Statutes**

18 U.S.C. §§ 1961-1968 ......................................... 1

18 U.S.C.A. § 1341 ........................................ 8, 10

18 U.S.C.A. § 1343 ........................................ 8, 10

18 U.S.C.A. § 1962 ........................................... 8

28 U.S.C. § 1331 ............................................ 14

28 U.S.C. § 1332 ............................................ 14

6 Del.C. § 2001(4) ...................................... 21, 23

6 Del.C. § 2007(a) .......................................... 20

6 Del.C. § 2714(a) .......................................... 16

6 Del.C. §§ 2001, et seq. .................................... 3

**Rules**

Rule 12(b)(1), F.R.C.P. ...................................... 15

Rule 12(b)(6), F.R.C.P. .......................... 2, 6, 7, 14

Rule 12(h)(3), F.R.C.P. ...................................... 14

Rule 9(b), F.R.C.P. ....................................... 8, 10

**References**

Restatement (Second) Contracts, § 17 ........................ 15

## NATURE AND STAGE OF PROCEEDINGS

In this action, plaintiff, Preferred Tax Service, Inc. ("PTS"), which operates a tax preparation business in Wilmington, primarily alleges that defendants, The Tax Authority, Inc. ("Tax Authority") and its principal, Kenneth M. Leese ("Leese"), breached an oral agreement not to lease office space from defendants Robert A. Piane and Robert A. Piane, Jr. (collectively "Piane Defendants") until such time as the Tax Authority, which competes with PTS, had reached an agreement to purchase PTS' tax preparation business.  PTS also claims that Tax Authority misappropriated confidential information disclosed by PTS in the course of the parties' negotiations for the sale of PTS.

In its Verified Complaint filed on December 16, 2005 (D.I. No. 1), PTS asserts claims against all defendants for breach of agreement (Count I), tortious interference with prospective economic advantage (Count II), "tort, intentional tort and tortuous interference with contract" (Count III), unfair trade practices (Count IV), misappropriation of trade secrets (Count V), civil conspiracy (Count VI), common law fraud and a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO")(Count VII), and "bad faith" (Count VIII).  PTS also filed a Motion for Temporary Restraining

1

Order (D.I. No. 2), seeking to prevent Tax Authority not only from leasing the Piane Defendants' office space, but also from opening any tax preparation business which would compete with plaintiff in Wilmington.[1]

Tax Authority and Leese file this Motion pursuant to Rule 12(b)(6), F.R.C.P., to dismiss PTS' Verified Complaint in its entirety as it fails to state any claim upon which relief can be granted.

### SUMMARY OF ARGUMENT

Given the allegations in the Verified Complaint, even if accepted as true, there is no basis for this action under state or federal law, nor any basis for federal jurisdiction.

*First*, the single alleged "federal question," purportedly a claim under RICO is insufficient and, given PTS' allegations, cannot possibly be reconstituted to meet the required pleading standards. Since the Verified Complaint fails to plead a valid RICO claim, this entire action should be dismissed for lack of subject matter jurisdiction as plaintiff's allegations confirm that there is no diversity of citizenship.

*Second*, even were the Court inclined to consider the state claims, they are equally defective. PTS' claim for breach of

---

[1]    Despite the filing of the Motion for Temporary Restraining Order, PTS has taken no action to request such relief from the Court. For the reasons set forth in this Memorandum, there is no basis for any such relief, nor for any federal or state claims.

2

contract fails because the purported oral agreement lacks
consideration and, in any event, violates the applicable statute
of frauds.  PTS likewise fails to state claims for tortious
interference with prospective economic advantage or tortious
interference with contract since Tax Authority cannot interfere
with its own contract. PTS' claims for unfair trade practices
and civil conspiracy, arising out of the same operative facts as
the claim for a violation of Delaware's Uniform Trade Secrets
Act, 6 Del.C. §§ 2001, et seq. ("UTSA"), are preempted by the
specific provisions of the statute.  In any event, PTS fails to
state a cognizable claim under the UTSA as it has failed to
plead the disclosure of any covered confidential information.

    *Third*, PTS has failed to state valid claims for civil
conspiracy or bad faith as there are no such independent tort
claims in Delaware.

**PTS' FACTUAL ALLEGATIONS**[2]

    On or about June 16, 2005, PTS' principal, Edwin Swan
("Swan") began negotiations with Leese, the principal of Tax
Authority, for the purchase of PTS by Tax Authority.  [Complaint
(D.I. No. 1), ¶ 16.]  At the outset of these negotiations, Swan
provided Leese with a list of customer names and fees, but no
other information related to PTS' business. [Id., ¶ 18; see

---

[2]    PTS' allegations must be accepted solely for purposes of
this Motion.  Defendants deny those allegations and reserve the
right to file an Answer as necessary.

3

ARGUMENT, Part IV.G., _infra_.]  Swan does not allege (nor could he allege) that he requested any confidentiality agreement or other formal protection.  Likewise, Swan did not request any restrictive covenant prohibiting Tax Authority from doing business in Wilmington if the negotiations were not successful.

During the negotiations, Leese commented to Swan that PTS' existing office space in Wilmington might be too small for Tax Authority's purposes.  [_Id._, ¶ 19.]  Swan then referred Leese to his long-time friend, defendant Robert A. Piane, Jr., to discuss the possibility of leasing additional office space at 2132 North Market Street ("Property") from the Piane Defendants to accommodate Tax Authority's future needs.  [_Id._, ¶ 20.] According to PTS, Swan placed Leese in touch with the Piane Defendants based on their _oral_ "agreement" that the Piane defendants would _only_ lease the Property to Tax Authority if Tax Authority agreed to purchase PTS.  [_Id._, ¶¶ 22, 23, 26.]

Over the next few weeks, PTS and Tax Authority continued to negotiate the sale of PTS to Tax Authority.  [_Id._, Ex. "B."]  At the same time, as suggested by Swan, Tax Authority and the Piane Defendants negotiated a lease for the Property, which was executed on August 8, 2005 ("Lease").  [_Id._, Ex. "I" and "J."] The Lease was not subject to any conditions relating to the negotiations or potential sale of PTS' business to Tax

4

Authority.[3]  [Id.]  On the same day the Lease was executed

(August 8, 2005), Leese e-mailed a draft, non-binding letter of

intent to Swan, for the purpose of "open[ing] discussion on some

of the basic terms and conditions of the proposed purchase ...

of the Tax Business owned by you." [Id., Ex. "D."]

On August 10, 2005, Swan was informed by Piane, Jr., that

the Lease had been consummated.  Swan allegedly told Piane, Jr.

that he found the Lease unacceptable as Tax Authority and PTS

had not reached any agreement.  [Id., ¶ 35.]  Piane, Jr.

allegedly later told Swan that Leese had told him that his "deal

was done" with Swan to purchase PTS. [Id., ¶ 36.]  Swan claims

that, when PTS complained to Tax Authority, Leese agreed that

Tax Authority would not need the Property if it did not

consummate the purchase of PTS and allegedly offered to rescind

the Lease if the Piane Defendants likewise agreed and returned

the advance rent payment.  [Id., ¶ 40.]

PTS and Tax Authority continued to negotiate, and Leese

transmitted a revised, non-binding letter of intent to PTS on

September 19, 2005.  [Id., Ex. "E."]  However, on September 30,

2005, PTS advised Tax Authority that it was not going to proceed

with the sale.  [Id., ¶ 46.]  At the same time, also by letter

---

[3]     Pursuant to the Lease, Tax Authority is leasing the
Property for 69 months beginning on September 1, 2005, for a
monthly rental of $1,250.  Tax Authority paid the first year
rental ($14,100) in advance at a reduced monthly rate of $1,175.
[Complaint (D.I. No. 1), Ex. "J."]

5

dated September 30, 2005, Swan informed the Piane Defendants

that he had decided not to sell PTS to Tax Authority, and

transmitted a release to be used to terminate the Lease.

Despite PTS' subsequent complaints and threats, the Piane

defendants refused to refund Tax Authority's advance payment or

cancel the Lease.  [Id., ¶¶ 47-58.]  According to PTS, Tax

Authority is preparing to use the Property to open a competing

tax preparation business.  [Id., ¶ 59.]  As of the filing of the

Verified Complaint, work is continuing at the Property and Tax

Authority has installed signs advertising its business.  [Id.]

**ARGUMENT**

## I.    Standard Of Review.[4]

The standard of review for a motion to dismiss pursuant to

Rule 12(b)(6), F.R.C.P., is familiar:

> "In analyzing a motion to dismiss pursuant
> to Rule 12(b)(6), the court must accept as
> true all material allegations of the
> complaint and it must construe the complaint
> in favor of the plaintiff.  'A complaint
> should be dismissed only if, after accepting
> as true all of the facts alleged in the
> complaint, and drawing all reasonable
> inferences in the plaintiff's favor, no
> relief could be granted under any set of
> facts consistent with the allegations of the
> claims.'  Claims may be dismissed
> pursuant to a Rule 12(b)(6) motion only if
> the plaintiff cannot demonstrate any set of
> facts that would entitle her to relief.  The

---

[4]    Any unreported cases are being filed in an Appendix to this
Brief which is being filed contemporaneously with the Court.

> moving party has the burden of persuasion."
> Tillman v. Pepsi Bottling Group, Inc., 2005
> U.S.Dist.LEXIS 18891, *14-15 (D.Del.
> 2005)(citations omitted).

However, "claims 'relying on vague and conclusory allegations

do[] not provide "fair notice" and will not survive a motion to

dismiss.'" Williams v. National American Postal Workers Union,

2005 U.S.Dist.LEXIS 7342 (D.Del. 2005)(citation omitted).

Likewise, "[t]he Court is 'not required to accept legal

conclusions either alleged or inferred from the pleaded facts.'"

Nielsen Electronics Institute v. Student Finance Corp., 2001

U.S.Dist.LEXIS 25556, *8 (D.Del. 2001)(citation omitted).

Here, even accepting as true all of PTS' allegations, the

Complaint fails to state any valid claims, and should be

dismissed.

## II.  PTS Has Failed To Plead Any Valid RICO Claim (Count VII).

In Count VII of the Verified Complaint, styled as a claim

for "Common Law Fraud, Mail Fraud and Wire Fraud," after

incorporating the allegations of Paragraphs 1 through 90 of the

Verified Complaint, PTS only states:

> "The defendants' actions as described in
> this Complaint constitute common law fraud,
> a violation of 18 U.S.C.A. § 1962, the
> Racketeer Influenced and Corrupt
> Organizations Act (RICO) mail fraud (18
> U.S.C.A. § 1341)[sic] and wire fraud (18
> U.S.C.A. § 1343)." [Complaint (D.I. No. 1),
> ¶ 92.]

Based on nothing more than this, PTS purports to brand

7

DB02:5137772.2                                                    064756.1001

defendants as "racketeers" and state a valid RICO claim.[5]

On its face, this is not adequate pleading, particularly when applying the close scrutiny which RICO and fraud claims demand. See, e.g., Rule 9(b), F.R.C.P. ("all averments of fraud..., shall be stated with particularity"). For this reason alone, the RICO claim must be dismissed.

Even if the Court were to attempt to sift through the incorporated allegations of the Verified Complaint, PTS still fails to state a RICO claim, as it did not properly allege the required elements of predicate acts of racketeering, a pattern of racketeering activity, a RICO enterprise and related RICO damages. Sedima, S.P.R.L. v. Imrex Company, Inc., 473 U.S. 479, 105 S.Ct. 3275, 3285 (1985); Bonavitacola Electric Contractor, Inc. v. Boro Developers, Inc., 2003 U.S.App.LEXIS 27918, *7 (3d Cir. October 30, 2003), cert. denied, 125 S.Ct. 57, 2004 U.S. LEXIS 5646 (2004); Supra Medical Corp. v. Baker, 1996 U.S.Dist.LEXIS 14765 (D.Del. 1996). Instead, PTS seeks to extend the reach of RICO to a simple contract dispute related to the Tax Authority's Lease of the Property to operate a competing tax preparation business. As the Third Circuit held in Glessner v. Kenny, 952 F.2d 702, 714 (3d Cir. 1991):

---

[5]    This is the only basis for federal question jurisdiction. Once dismissed, as there is no diversity on the face of the Verified Complaint (see Complaint (D.I. No. 1), ¶¶ 1 and 7-9), the Verified Complaint may be dismissed for lack of jurisdiction even if the other Counts stated valid causes of action (which they do not). See ARGUMENT, Section III, infra.

8

064756.1001

> "We are concerned about the alacrity with
> which plaintiffs appear to grasp at any
> theory ... which might withstand dismissal.
> A RICO complaint is not a mix and match game
> in which plaintiffs may artfully invoke
> magic words to avoid dismissal.  Instead, to
> plead a [RICO] claim under Section 1962(c),
> the complaint must be capable of being read
> to satisfy the statutory requirement[s]...."

Here, the crux of PTS' claim is merely that defendants breached a single agreement that Tax Authority would only lease the Piane Defendants' Property in the event Tax Authority purchased PTS' business.  Conspicuously absent is any allegation of a fraudulent scheme which was intended to, and did in fact, induce PTS to act to its detriment based on a misrepresentation. Indeed, the word "fraud" does not appear in any of PTS' allegations regarding these events, except for the conclusory allegation in Paragraph 92 of the Verified Complaint that defendants' actions magically constituted "common law fraud," "mail fraud" and "wire fraud."

At most, PTS alleges that defendants did not advise PTS in advance of their breach of the purported oral agreement to condition any Lease of the Property or the completion of Tax Authority's purchase of PTS.  The lack of any fraud is emphasized by PTS' admission that it chose to terminate the negotiation with Tax Authority.

PTS' conclusory references to violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, are

9

insufficient to establish the required "pattern of racketeering activity." As the Court noted in Young v. West Coast Industrial Relations Association, 763 F.Supp. 64, 71 (D.Del. 1991), aff'd, 961 F.2d 1570 (3d Cir. 1992), "at least some sort of deception or 'other deceptive practices' should be alleged in order to warrant the intrusion of the draconian civil RICO remedies of treble damages, forfeiture and attorneys fees in what would otherwise be an ordinary breach of contract claim." In fact, to meet the specificity requirements of Rule 9(b), F.R.C.P.:

> "[T]he complaint must 'identify the purpose
> of the mailing [or use of wires] within the
> defendant's fraudulent scheme and specify
> the fraudulent statement, the time, place,
> and speaker and content of the alleged
> misrepresentation.'" Bonavitacola Electric
> Contractor, Inc. v. Boro Developers, Inc.,
> supra, 2003 U.S.App.LEXIS 27918 at *9
> (citation omitted).

See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1417 (3d Cir.), cert. denied, 501 U.S. 1222 (1991)("Finally, the allegation that Donnelly 'unreasonably delayed' approving the sale of Kehr, while possibly amounting to a breach of contract, contains no deception that would bring it within the purview of the mail fraud statute.")(citations and footnote omitted); Young v. West Coast Industrial Relations Association, supra, 763 F.Supp. at 71 (plaintiffs failed to plead mail or wire fraud where complaint did not allege "how Plaintiffs were deceived or even how Defendants intended to deceive them."); Kenty v. Bank

10

One, Columbus, N.A., 92 F.3d 384, 390 (6th Cir. 1996)(Court dismissed RICO claim based on alleged mail fraud; "A claim of fraud does not inevitably follow from every breach of a contract.  Even if the Bank breached the loan agreements here, the plaintiffs still must point to a falsehood that would form the basis for fraud").

In addition to failing to plead any fraudulent scheme by defendants, PTS has not alleged detrimental reliance on any fraudulent misrepresentation or omission.  Clearly, independent of any discussions for the purchase of PTS' business, Tax Authority was free to lease office space in any location and from any willing landlord.  PTS does not allege, nor could it, that Tax Authority could not compete with PTS merely because it discussed a potential acquisition of PTS' business.  Nor could the mere introduction of Leese to Piane, Jr. constitute detrimental reliance, as PTS does not and cannot allege that Tax Authority could not have located available office space without Swan's assistance.  Likewise, PTS' allegation that Tax Authority represented to the Piane defendants that the purchase of PTS was a "done deal" cannot form the basis for any fraud upon PTS, as such a representation did not induce PTS to take any action, much less action to its detriment.

Even assuming PTS could overcome these flaws, it has not specifically alleged the details of any use of interstate mails

11

or wires by defendants "incident to an essential part of their
scheme" to defraud PTS.  See Annulli v. Panikkar, 200 F.3d 189,
200 (3d Cir. 1999); Nielsen Electronics Institute v. Student
Finance Corp., supra.  This failure alone is fatal to PTS'
purported RICO claim.

Moreover, even assuming any fraud, PTS' allegations depict
a single and finite scheme, pursuant to which Tax Authority
allegedly entered into discussions with PTS in order to obtain
confidential information and lease a competitive office space.
As a matter of law, this cannot constitute a "pattern" of
racketeering, which requires a series of criminal predicate acts
which are both related and continuous.  H.J. Inc. v.
Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893,
2901 (1989).  Courts have repeatedly dismissed claims based on
far more extensive allegations.  See Bonavitacola Electric
Contractor, Inc. v. Boro Developers, Inc., supra, 2003
U.S.App.LEXIS 27918 at *14 (alleged scheme to fraudulently
obtain three contracts over a ten-year period did not state a
valid pattern); Marshall-Silver Construction Co., Inc. v.
Mendel, 894 F.2d 593, 596-7 (3d Cir. 1990)(no pattern based on
seven-month scheme to bankrupt business); Banks v. Wolk, 918
F.2d 418 (3d Cir. 1990)(no pattern based on single victim,
single injury scheme); Kehr Packages, Inc. v. Fidelcor, Inc.,
supra, 926 F.2d at 1417-8 (mailings related to a single fraud of

12

even uncertain duration do not create a pattern); <u>Hindes v.</u>
<u>Castle</u>, 937 F.2d 868 (3d Cir. 1991)(eight-month scheme involving
mass mailings failed to satisfy the "continuity" necessary for a
RICO pattern); <u>Young v. West Coast Industrial Relations</u>
<u>Association</u>, <u>supra</u>, 763 F.Supp. at 74 (court dismissed RICO
claim alleging 11 to 14 month closed-ended period of predicate
acts with single objective as insufficient to plead a pattern of
racketeering).

Here, assuming there were any alleged predicate acts of
mail and wire fraud in furtherance of this scheme (which
defendants deny, as stated above), they all necessarily occurred
approximately between June 16, 2005 (the date when Tax Authority
and PTS began to negotiate) and early October, 2005 (when PTS
was advised of the Lease and Tax Authority's prepayment of the
first year of rent).  [<u>See</u> Complaint (D.I. No. 1), ¶¶ 16-47.]
If the "pattern" requirement is to have any meaning, it
absolutely prevents application of RICO to this sort of simple
commercial dispute.  Finally, putting aside any other flaws, PTS
does not allege any RICO enterprise, much less how any defendant
invested in, acquired an interest in, or participated in the
affairs of that enterprise, which must be distinct from the
defendant itself.  <u>See</u> <u>Lightning Lube v. Witco Corp.</u>, 4 F.3d
1191 (3d Cir. 1993).

For any one of these reasons, the Complaint does not state

13

a valid RICO claim.

**III. Since The Complaint Fails To Plead A Valid RICO Claim, This Entire Action Should Be Dismissed For Lack Of Subject Matter Jurisdiction.**

PTS attempts to invoke the Court's "federal question" subject matter jurisdiction pursuant to 28 U.S.C. § 1331 based solely on its RICO claim. If that RICO claim is dismissed under Rule 12(b)(6), F.R.C.P., PTS' state law claims should be dismissed in the absence of some other basis for federal subject matter jurisdiction. See Rule 12(h)(3), F.R.C.P. (dismissal appropriate "[w]henever it appears by suggestion of the parties or otherwise" that subject matter jurisdiction is lacking); Young v. West Coast Industrial Relations Association, supra, 763 F.Supp. at 78.

The only other basis for subject matter jurisdiction is PTS' allegation of "diversity" jurisdiction based on 28 U.S.C. § 1332, pursuant to which "all defendants must be diverse from all plaintiffs." Huss v. Green Spring Health Services, Inc., 18 F.Supp.2d 400, 402 (D.Del. 1998)(emphasis added). This is plainly not the case here, as PTS and the Piane Defendants are all citizens of Delaware, and thus not citizens of different states. [See Complaint (D.I. No. 1), ¶¶ 1 (PTS), 7-9 (Piane Defendants).] Accordingly, the Verified Complaint on its face should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), F.R.C.P. See Smith v. Delaware First

14

Federal Credit Union, 395 F.Supp.2d 127 (D.Del. 2005).

IV.  **PTS' State Law Claims Fail To State Any Claim Upon Which Relief Can Be Granted And Should Be Dismissed.**

Even assuming jurisdiction were proper, PTS has not stated any valid state law claims for the following reasons:

A.  **PTS Has Failed To State A Claim For Breach Of Contract Because The Alleged Agreement Lacks Consideration And Is Barred By The Statute Of Frauds (Count I).**

"It is, of course, fundamental that the formation of a contract requires 'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.'" William Lloyd, Inc. v. Hrab, 1999 Del.Super.LEXIS 276, *10 (Del.Super. April 7, 1999)(citing Restatement (Second) Contracts, § 17).

In Hunter v. Diocese of Wilmington, 1987 Del.Ch.LEXIS 468 (Del.Ch. Aug. 4, 1987), the Chancery Court rejected claims for injunctive relief brought by parents of students who sought to enforce an alleged agreement by the Diocese of Wilmington to continue to operate a high school based on statements by a school administrator.  The Court determined that plaintiffs were not likely to prevail, as there was no consideration in the Diocese's gratuitous "promise" to keep the school open, which "was not offered in exchange for anything; it did not purport to seek acceptance by seeking any performance by anyone.  It was gratuitous."  1987 Del.Ch.LEXIS 468 at *15.

Here, any alleged "agreement" by defendants to forebear from leasing the Property from the Piane Defendants unless Tax

15

Authority and PTS consummated a sale of PTS' business was similarly gratuitous, and not supported by <u>any</u> consideration. PTS gave up nothing for this purported promise and Tax Authority received nothing, as PTS acknowledges that the parties were not bound to proceed with any transaction. PTS' claim for breach of contract fails.

Further, even if the purported agreement were otherwise valid, it is also barred by the Statute of Frauds, as it implicates an interest in real estate. <u>See</u> 6 Del.C. § 2714(a)("No action shall be brought to charge any person ... upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them ... unless the contract is reduced to writing...."); <u>Huntington Homeowners Association, Inc. v. 706 Investments</u>, 1999 Del.Ch.LEXIS 119, *13 (Del.Ch. May 28, 1999)(oral representations made by a developer agreeing not to lease space in a shopping center to any business that sells alcoholic beverages was barred by the Statute of Frauds).

**B.    PTS' Tort Claims Relating To The Lease Are Barred By The Economic Loss Doctrine (Counts II, III, VI, VII and VIII).**

As the gist of PTS' claims focus on the alleged breach of the parties' <u>agreement</u>, and its alleged injuries are purely <u>economic</u> in nature, PTS may not assert any related tort claims pursuant to the "economic loss" doctrine. Accordingly, Counts II, III, VI, VII and VIII, all of which seek to impose tort

16

064756.1001

liability on defendants based on a contractual breach, must be dismissed. See International Fidelity Insurance Co. v. Mattes Electric, Inc., 2002 Del.Super.LEXIS 441, *3 (Del.Super. June 27, 2002)(court dismissed bond company's negligence claim based on defendant's alleged failure to perform contractual contract management duties, as the economic loss doctrine applies "to nearly any kind of dispute arising from a commercial transaction where the alleged damages do no harm to a person or to property other than the bargained for item"); MacInnis v. Charles F. Hill Construction, Inc., 1981 Del.Super.LEXIS 693, *3 (Del.Super. Dec. 18, 1981)(tort claims are inappropriate and should be dismissed where "the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract").

C.   **PTS Has Failed To State A Claim For Tortious Interference With Prospective Economic Advantage (Count II).**

For PTS to state a claim for tortious interference with prospective economic advantage, it must plead "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting

17

damages to the party whose relationship or expectancy has been disrupted." <u>Acierno v. Preit-Rubin Inc.</u>, 199 F.R.D. 157, 164-165 (D.Del. 2001). "All of these factors must be considered 'in light of a defendant's <u>privilege</u> <u>to</u> <u>compete</u> or protect his business interests in a fair and lawful manner.'" 199 F.R.D. at 165 (emphasis added).

Here, PTS alleges that "[d]efendants were aware that [PTS'] ability to negotiate with The Tax Authority would be unfairly and seriously impaired by signing the Lease in contravention to their agreement to wait until the sale of [PTS] to The Tax Authority was complete." [Complaint (D.I. No. 1), ¶ 66]. PTS fails to suggest how the execution of the Lease impaired PTS' ability to negotiate a sale of PTS' business to Tax Authority, especially when (a) it was PTS which suggested that Tax Authority discuss the Property directly with the Piane Defendants and, more important, (b) it was <u>PTS</u> which decided not to proceed with the proposed sale. [<u>Id.</u>, Ex. "F."] Tax Authority had no obligation to ensure PTS' negotiating strength. In light of Tax Authority's privilege to compete and protect its own business interests both during and beyond its negotiations with PTS, including its right to operate a competing business, the suggestion of any such obligation on the part of Tax Authority has no legal basis, and Count II should be dismissed.

18

D.  **PTS Has Failed To State A Claim For Tortious Interference With Contract Since Tax Authority Cannot Interfere With Its Own Contract (Count III).**

To plead a tortious interference with contract, "[t]here must be (1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983, 992 (Del.Ch. 1987). However, parties to a contract cannot interfere with their own contract: "[i]t is rudimentary that a party to a contract cannot be liable both for breach of that contract and for inducing that breach." Shearin v. E.F. Hutton Group, 652 A.2d 578, 590 (Del.Ch. 1994).

Here, PTS essentially alleges that Tax Authority and the Piane Defendants agreed with PTS not to enter into the Lease if the sale of PTS was not completed, but "interfered" with their agreement by completing that Lease. This circular reasoning -- even assuming any contract -- cannot avoid the simple requirements of the law. Tax Authority cannot breach the alleged agreement with PTS while, at the same time, inducing a breach of that same agreement. Shearin v. E.F. Hutton Group, supra at 590. Count III is fatally flawed and should be dismissed.

064756.1001

**E.    PTS' Claims For Unfair Trade Practices And Civil Conspiracy Are Barred By Delaware's Uniform Trade Secrets Act (Counts IV and VI).**

PTS' claims in Counts IV and VI for unfair trade practices and civil conspiracy are predicated on Tax Authority's alleged misappropriation of PTS' "Confidential, proprietary and trade secret information to unfairly compete with [PTS]." [Complaint ¶¶ 78.] These common law claims are barred by Section 2007 of the Delaware UTSA, which "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." 6 Del.C. § 2007(a); see Sanirab Corp. v. Sunroc Corp., 2002 Del.Super.LEXIS 350, *6 (Del.Super. April 29, 2002); Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS 170, *14 (Del.Super. April 24, 2001), aff'd, 812 A.2d 894 (Del. 2002)(Court dismissed plaintiff's common law claims of unfair competition and civil conspiracy based on the UTSA); Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 755 F.Supp. 635 (D.Del. 1991)(Section 2007 of UTSA "intended to preserve a single tort cause of action under state law for misappropriation ... and thus to eliminate other tort causes of action founded on trade secret misappropriation.").

PTS' claims in Counts IV and VI likewise must be dismissed.

**F.    PTS Has Failed To State A Claim For Misappropriation Of Trade Secrets (Count V).**

In Count V, PTS alleges that "[d]efendants have ...

20

willfully, maliciously and deliberately misappropriat[ed] [PTS']

confidential, proprietary and trade secret information...."

[Complaint (D.I. No. 1), ¶ 83.]  PTS generally identifies this

information as PTS' "customer list, pricing strategy, marketing

methods, operational systems and other information about

[PTS]...".  [Id., ¶ 18.]  As such information is not entitled to

trade secret protection and PTS has failed to allege that Tax

Authority has even opened a competing business which could make

any use of the information, PTS has failed to state a claim for

misappropriation of trade secrets.

The UTSA defines a "trade secret" as:

> "information, including a formula, pattern,
> compilation, program, device, method,
> technique or process, that:

> Aa. Derives independent economic value,
> actual or potential, from not being
> generally known to, and not being readily
> ascertainable by proper means by, other
> persons who can obtain economic value from
> its disclosure or use; and

> Ab. Is the subject of efforts that are
> reasonable under the circumstances to
> maintain its secrecy."  6 Del.C. § 2001(4).

Delaware courts have enunciated the relevant inquiry when

determining whether a plaintiff has set forth a prima facie

misappropriation of trade secrets claim as follows:

> "(1) Does a trade secret exist, i.e., have
> the statutory elements - commercial utility
> arising from secrecy and reasonable steps to
> maintain secrecy been shown; (2) Has the

21

secret been communicated by plaintiff to the
defendant; (3) Was such communication
pursuant to an express or implied
understanding that the secrecy of the matter
would be respected; and (4) Has the secret
information been improperly (e.g. in breach
of the understanding) used or disclosed by
the defendant to the injury of the
plaintiff?" Savor, Inc. v. FMR Corp.,
supra, 2001 Del.Super.LEXIS 170 at *9-10;
see also Dionisi v. DeCampli, 1995
Del.Ch.LEXIS 88 (Del.Ch. June 28, 1995).

The information PTS references, but notably does not attach

to its Verified Complaint, consists solely of a list of names of

customers for which PTS had provided tax preparation services

during the prior year with the amounts charged for PTS'

services.[6]  PTS has not alleged, nor can it, that these customers

have exclusive agreements with PTS for tax services or that PTS

has any reasonable expectation that any of these customers will

return to PTS to prepare their taxes.  The list itself, which

was provided by PTS during its negotiations with Tax Authority

without being marked "confidential" or the execution of any

confidentiality agreement, included no contact information nor

anything which could be deemed confidential.  There is no basis

for any claim that such information was protected, or Tax

Authority "misappropriated" this information when it was

---

[6]    A copy of this document is attached as Exhibit "1."  This
is properly considered in the context of this Motion to Dismiss,
as the Court may "examine a document integral to or explicitly
relied upon in the complaint without converting the motion to
dismiss to a motion for summary judgment." Charal Investment
Co., Inc. v. Rockefeller, 131 F.Supp.2d 593, 604 (D.Del. 2001).

22

provided by PTS during the purchase negotiations, without any suggestion of or effort to maintain its secrecy, and where PTS terminated the negotiations. See 6 Del.C. § 2001(4). Indeed, despite its conclusory allegations of a misappropriation, PTS has not even alleged that Tax Authority has opened a competing tax business and, therefore, has not alleged any circumstances under which Tax Authority could make any improper use of the list. As such, PTS has failed to state a claim for misappropriation of trade secrets, and Count V should be dismissed.

### G.    PTS' Has Failed To State A Claim For Civil Conspiracy (Count VI).

In addition to the foregoing reasons for dismissal of this Complaint, PTS also complains that defendants "may solicit and do business with Preferred Tax's customers" [Complaint (D.I. No. 1), ¶ 89 (emphasis added)], and seeks an order "enjoining Defendants from engaging in any further solicitation of and from doing business with [PTS'] customers." [Id., ¶ 90.] However, "[i]n order to prove a civil conspiracy, the plaintiff will have to show: (1) A confederation or combination of two or more persons; (2) An unlawful act done in furtherance of the conspiracy; and (3) actual damage." Tansey-Warner, Inc. v. Hooper, 1989 Del.Super.LEXIS 479, *13 (Del.Super. Nov. 15, 1989)(citing Nicolet, Inc. v. Nutt, 525 A.2d 146, 149-50 (Del.Super. 1987)). Most important, "[t]here must be an

23

independent tort to support conspiracy liability," as "[c]ivil
conspiracy is not an independent cause of action."  Id.

Here, PTS has failed to state a claim for any breach of
contract, independent tort or statutory violation.  Without an
independent tort claim to support conspiracy liability, Count VI
must be dismissed.

### H.    PTS Has Failed To State A Claim For Bad Faith (Count VIII).

In Count VIII, PTS baldly asserts that "[d]efendants'
actions, taken as a whole, constitute bad faith."  [Complaint
(D.I. No. 1), ¶ 94.]  However, there is no independent cause of
action recognized by Delaware law for "bad faith" in these
circumstances, as the covenant of good faith and fair dealing
which is implied in every contract does not add or subtract
terms, but merely imposes liability on conduct which defeats the
purpose of the contract.  See Dunlap v. State Farm Fire and
Casualty Co., 878 A.2d 434, 441 (Del. 2005)("implied good faith
cannot be used to circumvent the parties' bargain, or to create
a 'free-floating duty ... unattached to the underlying legal
[contract]")(footnotes omitted); Kirkwood Kin Corp. v. Dunkin'
Donuts, Inc., 1997 Del.Super.LEXIS 30, *47 (Del.Super. Jan. 29,
1997)(Awhere the subject at issue is expressly covered by the
contract ... the implied duty does not come into play).  Here,
PTS fails to allege any basis for liability other than an
alleged breach of the purported agreement regarding the Lease.

24

As such, no independent claim for bad faith may lie, and Count VIII should be dismissed.

## CONCLUSION

For the reasons set forth above, defendants, the Tax Authority, Inc., and Kenneth M. Leese, request that this Court dismiss the Verified Complaint in its entirety, with prejudice.

Erin D. Edwards (No. 4392)
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE   19899-0391
(302) 571-6552
(302) 576-3471 (Fax)

*Attorney for Defendants*
*The Tax Authority and*
*Kenneth M. Leese*

**OF COUNSEL**:
Howard A. Rosenthal
Patrick J. Doran
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

DATED: January 3, 2006

25