IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC., :
:
: Civil Action No.
Plaintiff, : 1:05-CV-00872-SLR
:
v. :
:
THE TAX AUTHORITY, INC., et al.,:
:
:
Defendants. :

---

**APPENDIX TO BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER OF DEFENDANTS, THE
TAX AUTHORITY, INC., AND KENNETH M. LEESE**

---

|  |  |
|---|---|
|  | Erin D. Edwards<br>  Delaware Bar I.D. 4392<br>Young Conaway Stargatt &<br>Taylor, LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE  19899-0391 |
| **OF COUNSEL**:<br>Howard A. Rosenthal<br>Patrick J. Doran<br>Kevin C. Rakowski<br>Pelino & Lentz, P.C.<br>One Liberty Place<br>1650 Market Street<br>Thirty-Second Floor<br>Philadelphia, PA 19103-7393<br>(215) 665-1540<br>(215) 665-1536 (Fax) | (302) 571-6552<br>(302) 576-3471 (Fax)<br>  Attorney for Defendants<br>  The Tax Authority and<br>  Kenneth M. Leese |

DATE FILED: January 5, 2006

## TABLE OF CONTENTS

Affidavit of Kenneth M. Leese . . . . . . . . . . . . . . . . . App 1

Lease dated August 8, 2005 . . . . . . . . . . . . . . . . . . App 6

List of Revenues . . . . . . . . . . . . . . . . . . . . . . . App 10

Lewis v. Edinger, 2005 U.S.Dist.LEXIS 15694 (D.Del.
2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . App 27

Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS 170 (Del.
Super. April 24, 2001) . . . . . . . . . . . . . . . . . . . . App 31

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| PREFERRED TAX SERVICE, INC., | : |
| | : Civil Action No. |
| Plaintiff, | : 1:05-CV-00872-SLR |
| | : |
| v. | : |
| | : |
| THE TAX AUTHORITY, INC., et al., | : |
| | : |
| Defendants. | : |

**AFFIDAVIT OF KENNETH M. LEESE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER.**

Kenneth M. Leese, being duly sworn according to law, deposes and states as follows:

1. I am a defendant in this action and the President of defendant, The Tax Authority, Inc. ("Tax Authority"). I am authorized to make this Affidavit in opposition to the Motion for Temporary Restraining Order filed by plaintiff, Preferred Tax Service, Inc. ("PTS").

2. Tax Authority operates tax preparation businesses under the name "Jackson Hewitt" in various locations in Pennsylvania, New Jersey, Delaware and Florida.

3. PTS operates a tax preparation business in Wilmington, Delaware.

4. In 2003, Tax Authority purchased a Jackson Hewitt franchise in Wilmington, Delaware.

5. Some time in 2004, I desired to further expand Tax Authority's business by adding another location in Wilmington.

6. I initially met with PTS' principal, Edwin Swan ("Swan"), concerning Tax Authority's potential acquisition of PTS.

7. At that time, Swan indicated that he was not interested, but stated that he would contact me if he reconsidered.

8. In or about June, 2005, Swan contacted me and indicated that he was interested in selling PTS.

9. I subsequently met with Swan at PTS' offices in Wilmington to discuss a possible transaction.

10. At that meeting, I told Swan that the purchase price would be based upon PTS' gross revenues and that, if Tax Authority determined the business desirable, we generally were willing to pay up to 100% of gross revenues.

11. Also at that meeting, solely in order to document PTS' gross revenues, Swan gave me a list which identified the names of PTS' customers and PTS' charges to those individuals, without any contact information or any description of the specific tax services provided.

12. Other than reviewing PTS' purported total gross revenues, Tax Authority never reviewed or used this document for any purpose, nor does it intend to do so.

13. At no time did Swan or his associate Calvin Harmon, an attorney, suggest that the document was confidential or request any form of confidentiality agreement.

14. Nor did PTS request that Tax Authority agree to any restrictive covenant prohibiting Tax Authority from doing business in Wilmington if the negotiations were not successful.

App 2

15. At that meeting, Swan and I also discussed my judgment that PTS' office lacked sufficient space for Tax Authority's intended operation at that location in Wilmington.

16. Swan later contacted me by e-mail and put me in touch with defendant, Robert Piane, who owned a building with available space.

17. Swan told me that I should contact Piane directly to look at the space and negotiate a lease if the space was appropriate.

18. At no time did Swan suggest that the referral to Piane was conditioned on Tax Authority's agreement that it would only proceed with a lease if it completed the acquisition of PTS.

19. In fact, Tax Authority *never* agreed to any restriction on its right to lease space or compete with PTS in Wilmington as a condition of the negotiations.

20. After the referral by Swan, I contacted Piane, and Tax Authority ultimately entered into a Lease with Piane dated August 8, 2005 ("Lease") for property located at 2132 North Market Street ("Property"). A true and correct copy of the Lease is attached to PTS' Complaint as Exhibit "J."

21. The Lease was not subject to any conditions or contingencies relating to the potential acquisition of PTS, as Tax Authority had determined to add a location in the Wilmington market whether or not it acquired PTS.

22. Pursuant to the Lease, Tax Authority agreed to lease the Property for a 69 month term beginning on September 1, 2005, for a monthly rental of $1,250. Tax Authority also agreed to pay the first year rental in advance at a reduced monthly rate of $1,175 (for a total first-year payment of $14,100), particularly in light of renovation costs to be borne by Piane.

23. On the same day that Tax Authority entered into the Lease (August 8, 2005), I e-mailed a draft, non-binding letter of intent to Swan, for the purpose of "open[ing] discussion on some of the basic terms and conditions of the proposed purchase ... of the Tax Business owned by you."

24. I later transmitted a revised proposal to PTS on September 19, 2005, and believed that the parties were close to an agreement, as we had proposed to purchase PTS for 120% of its gross revenues on the condition that Swan and Harmon execute restrictive covenants.

25. On September 30, 2005, Swan advised me, without any rationale, that he was not going to sell PTS to Tax Authority.

26. Tax Authority went forward with plans to open a tax business at the Property without acquiring PTS.

27. Tax Authority has not used <u>any</u> information disclosed by Swan during the parties' negotiations, and does not intend to do so.

-4-

I have reviewed the foregoing Affidavit consisting of twenty-seven (27) paragraphs and swear that these averments are true and correct under penalty of perjury.

KENNETH M. LEESE

-5-

App 6

## LEASE

THIS LEASE, made this 5th day of AUG,
A.D., 2005, between ROBERT A. PIANE, hereinafter called
the Landlord, and TAX AUTHORITY, hereinafter called
the Tenant; OF MAPLE SHADE, NJ.   1000 HAMWOOD DR.
                                  SUITE 110
WITNESSETH:                       MAPLE SHADE, NJ
                                  08052
                                  PH: 856-482-5261

That the landlord leases to the Tenant and the Tenant
leases from the Landlord for a term of 69 months, beginning on the
1st day of SEPTEMBER, 2005, and terminating on the 30 day
of APRIL, 2011, part of the premises known as
2132 N. Market Street, 1ST FLOOR CORNER STORE, city of Wilmington,
County of New Castle, State of Delaware. A monthly rental of ONE -
THOUSAND, TWO HUNDRED FIFTY Dollars ($ 1,250°°) per month, payable
in advance each month at such place as the Landlord might from time
to time designate. The first's month rent shall be due and payable
on the first day of the lease term and subsequent payments on the
same day of each month thereafter. The Landlord shall reserve the
right to increase the rental fee at the end of the term of this lease.
* 1ST YEAR PAID IN ADVANCE REDUCES RATE TO $1,175 FOR FIRST
12 MONTHS (TOTAL $14,100)
The parties further agree:

1. All utility charges are to be paid by the Tenant
including heat, electricity and telephone.

2. Prior to the execution of this lease, the premises
were inspected by the Landlord and Tenant and found to be in good
repair.

3. During the lease term and any extension thereof, Land-
lord shall keep the leased premises fully insured against fire and
shall obtain and keep insurance against damage or injury to person
or property (owned by Landlord) upon the leased premises. Tenant
shall be responsible for obtaining and keeping insurance against
fire and theft of all contents owned by Tenant upon the leased
premises.

4. The Tenant shall not assign or sublet the premises
during the term without the written consent of the Landlord.

5. In case of default in any of the convenants, the
Landlord may resume possession of the premises by giving the Tenant
ten (10) days notice in writing of same default, and relet the
same for the remainder of term, at the best rent that can be obtained
for account of the Tenant, who shall make good any deficiency.

That the landlord leases to the tenant and the tenant leases from the Landlord for a term of ___ months, beginning on the 1ST day of SEPTEMBER ____, and terminating on the ___ day of APRIL ____. Rent of the premises known as 2132 N. Market Street, _____, City of Wilmington, County of New Castle, State of Delaware. A monthly rental of ___ Thousand Two Hundred Fifty Dollars ($1,250) per month payable in advance each month at such place as the Landlord might from time to time designate. The first's month rent shall be due and payable on the first day of the lease term and subsequent payments on the same day of each month thereafter. The Landlord shall reserve the right to increase the rental fee at the end of the tenant's lease.

*1ST YEAR PAID IN _____ REDUCED RATE _____ FIRST 12 MONTHS (SOME _____)*

The parties further agree:

1. All utility charges are to be paid by the Tenant including heat, electricity and telephone.

2. Prior to the execution of this lease, the premises were inspected by the Landlord and Tenant and found to be in good repair.

3. During the lease term, any extensions thereof, Landlord shall keep the leased premises _____, _____ shall obtain and keep insurance against damage _____ or property (owned by Landlord) upon the leased _____ shall be responsible for obtaining and keeping _____ fire and theft of all contents owned by Tenant upon the leased premises.

4. The Tenant shall not assign or sublet the premises during the term without the written consent of _____.

5. In cases of default in any of the _____ Landlord may resume possession of the premises _____ ten (10) days notice in writing of such default _____ same for the remainder of term, at the best rent that may be obtained for account of the Tenant, who shall make good any deficiency.

MAIL RENT TO:

R. A. HANE
2130 N. MARKET ST.
WILMINGTON, DE
19802
PH: 302-658-4353

6. At the expiration of the said term or upon breach by the Tenant of any of the covenants herein mentioned, the Tenant shall yield and surrender quiet and peaceable possession of said premises in the same order and condition as the same now are, reasonable wear and tear thereof, accident happening by fire or other casualties excepted.

7. The lease will terminate if the premises becomes uninhabitable because of delapidation, condemnation, fire, or other casualty for a period in excess of thirty days. Rent shall abate for any period that the premises are uninhabitable.

8. The Tenant shall take good care of the within demised premises and its fixtures; and shall at his own cost or expense make and do all repairs required to walls, ceilings, paper, plumbing work, pipes and fixtures belonging thereto, whenever damage or injury to the same shall have resulted from the misuse or neglect; and shall repair and make good any damage occurring to the building or any tenant thereof, by reason of any neglect, carelessness or injury to the gas or water pipes, draining systems, water meter, faucets, property glass, or heating equipment; and connections by the Tenant himself; or upon premises leased to said tenant, and not to call on the Landlord for any disbursement therefor.

9. The Tenant has no authority to make any alterations to the premises or to incur any debt or make any charge against the Landlord or create any lien upon the leased property for any work done or materials furnished without the express consent of the Landlord in writing.

10. Tenant will allow Landlord or any agent of the Landlord duly authorized in writing to enter upon the premises for purposes of inspection, repair, alteration, or improvement at reasonable times during daylight hours.

11.

App 8

12.

13. The Tenant is leasing the part of the premises known as follows: 2132 N. MARKET ST, 1ST FLOOR CORNER STORE

IN WITNESS WHEREOF, the parties have set their hands and seals to duplicate copies of this lease, each of which will rank as an original.

abate for any period that the premises are uninhabitable.

   8. The Tenant shall take good care of the within demised premises and its fixtures, and shall at his own cost or expense make and do all repairs required to walls, ceilings, floors, plumbing work, pipes and fixtures belonging thereto, whenever damage or injury to the same shall have resulted from their use or neglect; and shall repair the same and any damage occurring to the building or any tenant thereof by reason of any default carelessness or injury to the gas or water pipes, drainage systems, water meter, faucets, property drains, or heating equipment and connections by the Tenant himself, or upon premises leased to said tenant, and not to call on the landlord for any disbursement therefor.

   9. The Tenant has no authority to make any alterations to the premises or to incur any debt or make any charge against the Landlord or create any lien upon the leased property for any work done or materials furnished without the express consent of the Landlord in writing.

   10. Tenant will allow Landlord or any agent of the Landlord duly authorized in writing to enter upon the premises for purposes of inspection, repair, alteration, or improvement at reasonable times during daylight hours.

   11.

   12.

   13. The Tenant is leasing the part of the premises known as follows: 2132 N. MARKET ST, 1ST FLOOR CORNER STORE

   IN WITNESS WHEREOF, the parties have set their hands and seals to duplicate copies of this lease, each of which shall act as an original.

SIGNED, SEALED AND DELIVERED
in the presence of:

Landlord
Robert A. Piane, Sr.

Tenant
Pres
The Tek Authority, Inc

App 9