

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC.,          :
                                      :  Civil Action No.
              Plaintiff,              :  1:05-CV-00872-SLR
                                      :
        v.                            :
                                      :
THE TAX AUTHORITY, INC., et al.,      :
                                      :
              Defendants.             :

RECEIVED

JAN - 5 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER OF DEFENDANTS, THE TAX AUTHORITY, INC., AND KENNETH M. LEESE.**

**OF COUNSEL:**
Howard A. Rosenthal
Patrick J. Doran
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

Erin D. Edwards (No. 4392)
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6552
(302) 576-3471 (Fax)
  *Attorney for Defendants
  The Tax Authority and
  Kenneth M. Leese*

Dated: January 5, 2006

Date Filed __1/5/06__

Docket No.__14__

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . 2

RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . 3

A R G U M E N T . . . . . . . . . . . . . . . . . . . . . 6

    A.   Standard For Grant Of Preliminary
        Injunction . . . . . . . . . . . . . . . . . . 6

    B.   PTS Is Not Reasonably Likely To Succeed On
        The Merits . . . . . . . . . . . . . . . . . . 7

    C.   Even Assuming It Prevailed On The Merits, PTS
        Has Not Alleged And Cannot Demonstrate That
        It Will Suffer Any Irreparable Harm . . . . . . 8

    D.   The Issuance Of An Injunction Would Harm
        Defendants More Than A Denial Would Harm
        PTS . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 13

## **TABLE OF AUTHORITIES**

**CASES**

Ecri v. McGraw-Hill, Inc., 809 F.2d 223 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Glasco v. Hills, 558 F.2d 179 (3d Cir. 1977) . . . 9

Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797 (3d Cir. 1989) . . . . . . . 8,9,11

Lewis v. Edinger, 2005 U.S.Dist.LEXIS 15694 (D.Del. Aug. 3, 2005) . . . . . . . . . . . . . . 9,12

Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987) . . . 10

Opticians Association of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 12

Planned Parenthood of Delaware v. Brady, 250 F.Supp. 2d 405 (D.Del. 2003) . . . . . . . . . . 6

Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS 170 (Del.Super. April 24, 2001), aff'd, 812 A.2d 894 (Del. 2002) . . . . . . . . . . . . . . . . . . . . 11

**STATUTES**

18 U.S.C. 1961-1968 . . . . . . . . . . . . . . . . 1

6 Del.C. 2001, §§ et seq . . . . . . . . . . . . . 11

## NATURE AND STAGE OF PROCEEDINGS.

In this action, plaintiff, Preferred Tax Service, Inc. ("PTS"), which operates a tax preparation business in Wilmington, primarily alleges that defendants, The Tax Authority, Inc. ("Tax Authority") and its principal, Kenneth M. Leese ("Leese"), breached an oral agreement not to lease office space from defendants Robert A. Piane and Robert A. Piane, Jr. (collectively "Piane Defendants") until such time as the Tax Authority, which competes with PTS, had reached an agreement to purchase PTS' tax preparation business. PTS also claims that Tax Authority misappropriated confidential information disclosed by PTS in the course of the parties' negotiations for the sale of PTS.

In its Verified Complaint filed on December 16, 2005 [D.I. No. 1], PTS purports to state eight claims against all defendants:  breach of agreement (Count I), tortious interference with prospective economic advantage (Count II), "tort, intentional tort and tortuous interference with contract" (Count III), unfair trade practices (Count IV), misappropriation of trade secrets (Count V), civil conspiracy (Count VI), common law fraud and a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO")(Count VII), and "bad faith" (Count VIII).

Tax Authority and Leese filed a Motion to Dismiss on December 30, 2005 [D.I. Nos. 9 and 10], principally because PTS failed to state any valid RICO claim, having not alleged any of the required statutory elements. In the absence of

1

that claim, as there is no diversity between PTS and all defendants (the Piane Defendants, like PTS, are citizens of Delaware), there is no subject matter jurisdiction for this entire action. Moreover, each of PTS' purported state law claims is equally defective.

Contemporaneous with its Complaint, PTS filed a Motion for Temporary Restraining Order [D.I. No. 2], seeking to prevent Tax Authority not only from leasing the Piane Defendants' office space, but also from opening any tax preparation business which would compete with plaintiff in Wilmington. PTS has not filed any affidavit or other evidentiary justification for a preliminary injunction.

Tax Authority and Leese now file this Brief in opposition to PTS' Motion, supported by the Affidavit of Kenneth M. Leese in Opposition to Plaintiff's Motion for Temporary Restraining Order ("Leese Aff."), a copy of which is included in the Appendix to this Brief.

## SUMMARY OF ARGUMENT.

PTS is not entitled to the extraordinary relief of a preliminary injunction.

First, PTS is not likely to succeed on the merits, as its claims lack legal or factual basis. As set forth in defendants' Motion to Dismiss, as amended [D.I. Nos. 9, 10 and 13], this Court lacks subject matter jurisdiction given the inadequacy of PTS' RICO claim. PTS' state law claims are fatally flawed in any event. The alleged agreement which is the fulcrum of this entire dispute -- defendants' purported agreement not to proceed with a lease with the

2

Piane Defendants unless Tax Authority purchased PTS -- is unenforceable for lack of consideration and barred by the Statute of Frauds. Even were that not the case, as made clear in Leese's Affidavit and described below, no such agreement ever existed. Nor has Tax Authority misappropriated any confidential information or engaged in any unlawful competition.

Secoond, PTS is not threatened by any irreparable harm. This is nothing more than a straightforward contract dispute, and any injury allegedly suffered by PTS could be remedied by money damages. Indeed, belying the lack of any irreparable harm, PTS has not taken any action subsequent to the filing of the Motion on December 16, 2005, to obtain such relief from the Court. In stark contrast, the entry of the injunction sought by PTS would restrict Tax Authority's lawful right to compete at any location in the 19082 zip code area, and would restrict the Piane Defendants' rightful ownership of the Property.

### RELEVANT FACTUAL BACKGROUND.

Tax Authority operates tax preparation businesses under the name "Jackson Hewitt" in various locations in Pennsylvania, New Jersey, Delaware and Florida. [Leese Aff., ¶ 2.] In 2003, Tax Authority purchased a Jackson Hewitt franchise in Wilmington, Delaware. [Id., ¶ 4.] Some time in 2004, desiring to further expand its business in Wilmington, Leese, Tax Authority's principal, initially met with PTS' principal, Edwin Swan ("Swan"), concerning Tax Authority's potential acquisition of PTS. [Id., ¶¶ 5, 6.]

3

Swan indicated that he was not interested at that time, but that he would contact Leese if he reconsidered. [Id., ¶ 7.]

In or about June, 2005, Swan contacted Leese and indicated that he was interested in selling PTS. [Id., ¶ 8.] Leese subsequently met with Swan at PTS' offices in Wilmington to discuss a possible transaction. [Id., ¶ 9.] Leese told Swan that, if Tax Authority determined the business desirable, the purchase price would be based upon PTS' gross revenues and that Tax Authority generally was willing to pay up to 100% of gross revenues. [Id., ¶ 10.] At that meeting, solely in order to document PTS' revenues, Swan provided Leese with a document which merely listed PTS' purported customers and PTS' charges to those individuals, without any contact information or any description of the specific tax services provided. [Id., ¶ 11; PTS Revenue List (App 10-26).] Other than reviewing PTS' purported total gross revenues, Tax Authority never reviewed or used this document for any purpose, nor does it intend to do so. [Leese Aff., ¶ 12.] At no time did Swan or his associate Calvin Harmon, an attorney, suggest the document was confidential or request any form of confidentiality agreement. [Id., ¶ 13.] Nor did PTS request that Tax Authority agree to any restrictive covenant prohibiting Tax Authority from doing business in Wilmington if the negotiations were not successful. [Id., ¶ 14.]

Leese and Swan also discussed the lack of sufficient space at PTS' office for Tax Authority's intended operation at that location in Wilmington. [Id., ¶ 15.] Swan later

4

contacted Leese by e-mail and put him in touch with
defendant Robert Piane, who owned a building with available
space.  [Id., ¶ 16.]  Swan told Leese that he should contact
Piane directly and make a deal.  [Id., ¶ 17.]  At no time
did Swan suggest that the referral to Piane was conditioned
on Tax Authority's agreement that it would only proceed with
a lease if it completed the acquisition of PTS.  [Id., ¶
18.]  Contrary to PTS' allegations, Tax Authority never
agreed to any restriction on its right to lease space or
compete with PTS in Wilmington as a condition of the
negotiations.  [Id., ¶ 19.]

    Leese did contact Piane, and Tax Authority ultimately
entered into a Lease with Piane dated August 8, 2005
("Lease") for property located at 2132 North Market Street
("Property").  [Id., ¶¶ 20-22; Lease (App. 6-9).]  The Lease
was not subject to any conditions or contingencies relating
to the potential acquisition of PTS, as Tax Authority had
determined to add another location in the Wilmington market
whether or not it acquired PTS.  [Id.]  Pursuant to the
Lease, Tax Authority agreed to lease the Property for a 69
month term beginning on September 1, 2005, for a monthly
rental of $1,250.  [Id.]  Tax Authority also agreed to pay
the first year rental in advance at a reduced monthly rate
of $1,175 (for a total first-year payment of $14,100), in
light of renovation costs to be borne by Piane.  [Id.]

    At the same time, Tax Authority continued to negotiate
in good faith with PTS.  [See Leese Aff., ¶¶ 23-25.]  On the
same day Tax Authority entered into the Lease (August 8,

                                5

2005), Leese e-mailed a draft, non-binding letter of intent
to Swan, for the purpose of "open[ing] discussion on some of
the basic terms and conditions of the proposed purchase ...
of the Tax Business owned by you."  [Id., ¶ 23.]  Leese
later transmitted a revised proposal to PTS on September 19,
2005, and believed that the parties were close to an
agreement, as he had proposed to purchase PTS for 120% of
its gross revenues on the condition that Swan and Harmon
execute restrictive covenants.  [Id., ¶ 24.]  However, on
September 30, 2005, without any expressed rationale, Swan
advised Leese that he was not going to sell PTS to Tax
Authority.  [Id., ¶ 25.]

    Tax Authority then went forward with plans to open a
tax business at the Property without acquiring PTS.  [Id., ¶
26.]  Again, Tax Authority has not used any information
disclosed by Swan during the parties' negotiations, and does
not intend to do so.  [Id., ¶¶ 12, 27.]  Swan complained
about the Lease and Tax Authority's decision to compete in
Wilmington without any proper basis, and ultimately filed
this lawsuit.

**ARGUMENT.**

**A.    Standard For Grant Of Preliminary Injunction.**

    In Planned Parenthood of Delaware v. Brady, 250
F.Supp.2d 405, 407 (D.Del. 2003), the Court reviewed the
strict scrutiny applicable to a motion for injunctive
relief:

> "'[T]he grant of injunctive
> relief is an "extraordinary
> remedy, which should be

6

> granted only in limited
> circumstances."' In ruling on
> a preliminary injunction, this
> court must consider: 1) the
> likelihood of success on the
> merits; 2) the extent to which
> the plaintiff is being
> irreparably harmed by the
> conduct complained of; 3) the
> extent to which the defendant
> will suffer irreparable harm
> if the requested relief is
> granted; and 4) the public
> interest. An injunction
> should only issue if all four
> factors favor injunctive
> relief." (Citations omitted).

Here, PTS cannot demonstrate any of these factors.
Indeed, considering the extreme nature of the injunctive
relief sought by PTS -- which would restrict Tax Authority's
right to conduct business and compete and the Piane
Defendants' right to control their property -- the grant of
an injunction would stand this criteria on its head.

**B.    PTS Is Not Reasonably Likely To Succeed On The
Merits.**

For the reasons set forth in defendants' Brief in
Support of Motion to Dismiss, as amended [D.I. Nos. 10 and
13], which is incorporated by reference, PTS is not
reasonably likely to succeed on the merits of any of its
claims. The dismissal of PTS' scant RICO claim -- which
does not include any allegation of any deceptive conduct,
any predicate act of racketeering, any pattern of continuous
and related racketeering activity, or any RICO enterprise --
will require the dismissal of this entire action, as there
is no other basis for the Court to exercise subject matter
jurisdiction. If the Court were inclined to review PTS'

7

state law claims, they too are flawed.  As the purported
oral agreement is itself unenforceable as lacking
consideration and barred by the Statute of Frauds, none of
those claims can succeed as a matter of law.

In addition to the legal infirmities of PTS' Verified
Complaint, Tax Authority and Leese deny that there ever was
any agreement conditioning the Lease on the completion of
its acquisition of PTS.  Such an agreement, or any purported
conspiracy between Tax Authority and the Piane Defendants,
is belied by Swan's admission that PTS, and not Tax
Authority, terminated the negotiations for the sale of the
business.  Likewise, any information disclosed by PTS to Tax
Authority was disclosed voluntarily, without any
confidentiality agreement, restrictive covenant or other
condition, and not otherwise subject to legal protection as
a trade secret.  On this record, PTS cannot possibly prevail
on any of its claims.

## C. Even Assuming It Prevailed On The Merits, PTS Has Not Alleged And Cannot Demonstrate That It Will Suffer Any Irreparable Harm.

The Third Circuit has defined "irreparable harm" as
that "which cannot be redressed by a legal or an equitable
remedy following a trial" and from which the plaintiff can
only be protected by a preliminary injunction.  Instant Air
Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d
Cir. 1989).  Thus, even where a plaintiff can demonstrate a
likelihood of success on the merits, its burden is heavy:

> "Establishing a risk of
> irreparable harm is not

8

> enough. A plaintiff has the
> burden of making a 'clear
> showing of immediate
> irreparable injury.' The
> 'requisite feared injury or
> harm must be irreparable – not
> merely serious or
> substantial.'" Lewis v.
> Edinger, 2005 U.S.Dist.LEXIS
> 15694, *7 (D.Del. Aug. 3,
> 2005)(citations omitted).

Moreover, the harm "must be of a peculiar nature, so that
compensation in money cannot atone for it." Glasco v.
Hills, 558 F.2d 179, 181 (3d Cir. 1977). As the Third
Circuit has noted, "[w]e have never upheld an injunction
where the claimed injury constituted a loss of money, a loss
capable of recoupment in a proper action at law." Ecri v.
McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987)(emphasis
added).

These principles bear particular importance in cases
such as this where plaintiff's claim is for breach of
contract. In Instant Air Freight Co. v. C.F. Air Freight,
Inc., supra, plaintiff ("Instant") sought an injunction
preventing defendant ("C.F.") from terminating the parties'
air freight handling contract. To demonstrate irreparable
harm, Instant argued that, without an injunction, its
business would be destroyed, requiring it to fire its
employees and causing damage to the reputation it had
established over 20 years. The Third Circuit concluded that
no matter how severe, this was not irreparable harm, and
thus vacated a preliminary injunction entered by the
district court:

9

"'[I]t seems clear that the
temporary loss of income,
ultimately to be recovered,
does not usually constitute
irreparable injury....    "The
key word in this consideration
is irreparable.  Mere
injuries, however substantial,
in terms of money, time and
energy necessarily expended in
the absence of a stay are not
enough.  The possibility that
adequate compensatory or other
corrective relief will be
available at a later date, in
the ordinary course of
litigation, weighs heavily
against a claim of irreparable
harm."'

               *  *  *

"The bottom line in this case
... centers on the loss of
money which Instant will
suffer as a result of the
contract termination.  Here
the monetary damages which
Instant alleges it is
suffering are capable of
ascertainment and award at
final judgment if Instant
prevails.  These money damages
will fully compensate Instant
for its losses.  As we stated
in Morton v. Beyer, 822 F.2d
364 (3d Cir. 1987), 'although
we are not insensitive to the
financial distress suffered by
[the plaintiff], we do not
believe that loss of income
alone constitutes irreparable
harm.'"    882 F.2d at 801
(citations and notes omitted,
emphasis in original).

In vacating the injunction, the Court also focused on the

facts that Instant's damages were ascertainable in light of

its historic profits; that even if Instant prevailed, C.F.

would be entitled to terminate the freight contract in less

than 2 years; and that Instant had presented no evidence

10

that it would be forced to close as a result of the termination. Id. at 802.

Here, PTS' purported irreparable harm is even less significant than the claim rejected by the Third Circuit in Instant Air Freight. Even assuming PTS had a cognizable claim, there is no claim or evidence that Tax Authority has misappropriated any purportedly "confidential" information which is subject to protection under the Delaware Uniform Trade Secrets Act, 6 Del.C. §§ 2001, et seq. See Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS 170, *14 (Del.Super. April 24, 2001), aff'd, 812 A.2d 894 (Del. 2002). Moreover, to the extent PTS were to somehow prevail, its damages would be easily ascertained with respect to the lost profits associated with any former PTS customers "misappropriated" by Tax Authority (in fact, the purported confidential information disclosed to Tax Authority is nothing but a list of customers and revenues, without any contact information). Finally, as in Instant Air Freight, even if the Court enforced the purported agreement which would prevent Tax Authority from leasing the Piane Defendants' Property, Tax Authority clearly enjoys the right and privilege of competing with PTS at any other location. In fact, Tax Authority already operated a tax preparation business in Wilmington before the discussions with PTS. This record precludes any suggestion that PTS' "irreparable injury" could stem from the simple fact of competition between the two businesses.

At most, this is a breach of contract case in which any injury could be fully addressed through an award of money damages. The extraordinary remedy of a preliminary injunction is not warranted.

## D. The Issuance Of An Injunction Would Harm Defendants More Than A Denial Would Harm PTS.

The third factor requires the court to consider the "balance of the hardships to the respective parties." Lewis v. Edinger, supra, 2005 U.S.Dist.LEXIS 15694 at *9 (citation omitted). "A basic purpose behind the balancing analysis is to ensure that the issuance of an injunction would not harm the [defendant] more than a denial would harm the [plaintiff]." Opticians Association of America v. Independent Opticians of America, 920 F.2d 187, 197 (3d Cir. 1990).

Here, the equities strongly weigh against an injunction. An injunction would immediately restrain Tax Authority's right to compete in the marketplace in the location of its choice, and interfere with the Piane Defendants' right to control the Property as they deem appropriate.[1] In contrast, the denial of an injunction at this time would cause no harm to PTS, particularly since Tax Authority has not even opened its tax preparation business in the Property, and there is not a shred of evidence of misappropriation or other unlawful competition by Tax Authority.

_____

[1] These same factors dictate against an injunction with respect to the fourth factor in light of the strong public interest in free competition and the free alienation of property.

12

## CONCLUSION.

For these reasons, defendants request that PTS' Motion

for Temporary Restraining Order be denied.

Erin D. Edwards (No. 4392)
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE    19899-0391
(302) 571-6552
(302) 576-3471 (Fax)
*Attorney for Defendants*
*The Tax Authority and*
*Kenneth M. Leese*

**OF COUNSEL**:

Howard A. Rosenthal
Patrick J. Dornan
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

13

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC.,           :
                                       :
                                       : Civil Action No.
                   Plaintiff,          : 1:05-CV-00872-SLR
                                       :
          v.                           :
                                       :
THE TAX AUTHORITY, INC., et al.,       :
                                       :
                                       :
                   Defendants.         :

---

**APPENDIX TO BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER OF DEFENDANTS, THE
TAX AUTHORITY, INC., AND KENNETH M. LEESE**

---

Erin D. Edwards
  Delaware Bar I.D. 4392
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6552
(302) 576-3471 (Fax)
  Attorney for Defendants
  The Tax Authority and
  Kenneth M. Leese

OF COUNSEL:
Howard A. Rosenthal
Patrick J. Doran
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

DATE FILED: January 5, 2006

## TABLE OF CONTENTS

Affidavit of Kenneth M. Leese . . . . . . . . . . . . . . . . App 1

Lease dated August 8, 2005  . . . . . . . . . . . . . . . . . App 6

List of Revenues  . . . . . . . . . . . . . . . . . . . . . . App 10

Lewis v. Edinger, 2005 U.S.Dist.LEXIS 15694 (D.Del.
2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . App 27

Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS 170 (Del.
Super. April 24, 2001)  . . . . . . . . . . . . . . . . . . . App 31