IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC., :
: Civil Action No.
Plaintiff, : 1:05-CV-00872-SLR
:
:
v. :
:
ROBERT PIANE et al., :
:
Defendants. :

**APPENDIX TO BRIEF IN SUPPORT OF MOTION OF
ROBERT PIANE, ROBERT PIANE, JR. AND PIANE CATERERS, INC.
TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT**

Michael J. Hood (No. 2080)
MICHAEL J. HOOD, LLC
1701 Shallcross Ave. Ste. C
P. O. Box 1471
Wilmington, DE 19899
(302)777-1000
(302)777-1098 (Fax)

Attorney for Defendants,
Robert Piane, Robert Piane, Jr.,
and Piane Caterers, Inc.

Dated: January 9, 2006

## **TABLE OF CONTENTS**

Huntington Homeowners Association, Inc. v. 706 Investments, 1999 Del. Ch. LEXIS 119, *13 (Del. Ch. May 28, 1999)..................................................................A 1-7

Page 1

1999 Del. Ch. LEXIS 119, *

LEXSEE 1999 DEL. CH. LEXIS 119

**HUNTINGTON HOMEOWNERS ASSOCIATION, INC., et al., Plaintiffs, v. 706 INVESTMENTS, et al., Defendants, v. OLDE PIKE TAVERN, L.L.C., Intervening Defendant.**

C.A. No. 16633

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

*1999 Del. Ch. LEXIS 119*

April 21, 1999, Date Submitted
May 28, 1999, Date Decided

**SUBSEQUENT HISTORY:** [*1]
Released for Publication by the Court June 25, 1999.

**DISPOSITION:**
The intervening defendant's motion for judgment on the pleadings GRANTED and its motion for attorneys' fees and expenses DENIED.

**COUNSEL:** Joseph J. Rhoades, Esquire and W. Christopher Componovo, Esquire, of the LAW OFFICE OF JOSEPH J. RHOADES, Wilmington, Delaware, Attorneys for Plaintiffs.

John J. O'Brien, Esquire, Wilmington, Delaware, Attorney for Defendants.

Thomas D. Whittington, Jr., Esquire and Dennis M. McBride, Esquire, of WHITTINGTON & AULGUR, Wilmington, Delaware, Attorneys for the Intervening Defendant.

**JUDGES:** Stephen P. Lamb, Vice Chancellor.

**OPINIONBY:** Stephen P. Lamb

**OPINION:**

MEMORANDUM OPINION

LAMB, Vice Chancellor

I. INTRODUCTION

This action is alleged to arise out of oral representations made by defendant, Anthony C. Vari ("Vari"), in 1996, during the course of public proceedings regarding Vari's plan to develop a shopping center on real property located adjacent to the neighborhoods of Huntington and Westover Woods in Newark, Delaware. Pending are motions of the intervening defendant, Old Pike Tavern, L.L.C. ("Tavern"), for judgment on the pleadings and for attorneys' fees. For the reasons stated herein, [*2] the motion for judgment on the pleadings (joined in by the other defendants) is granted, but the motion for attorneys' fees and expenses is denied.

A. Procedural History n1

n1 The facts outlined in this opinion, for the most part, are undisputed, and have been taken from the pleadings. Where disputed, the facts are assumed to be true as alleged in the complaint.

On September 9, 1998, plaintiffs, Huntington Homeowner's Association, Inc., Westover Woods Maintenance Association, the Honorable William A. Oberle, Jr., the Honorable Karen Venezky, and Dave Rush, Kent Eagle, Robin Denstin and Jeanette Lawson, n2 filed a complaint seeking a temporary restraining order, and preliminary and permanent injunctive relief, against defendants Vari, his wife, Joan M. Vari, and their company, 706 Investments, to prevent the opening of an establishment selling alcoholic beverages in a shopping center being developed by the Varis.

n2 I note the existence of questions concerning the standing of certain named plaintiffs to pursue this action. For instance, the certificate of incorporation of Huntington Homeowners Association appears to have been revoked for non-payment of franchise taxes. Moreover, the two public officials joined as parties plaintiff are not alleged to reside in either Huntington or Westover Woods and do not, merely by virtue of their office, have an interest in this action sufficient to support their standing as plaintiffs.

A1

[*3]

Plaintiffs allege that, on two occasions in 1996, Vari made representations to government officials and members of the communities surrounding the shopping center that none of the businesses in the shopping center would sell alcoholic beverages; representations that plaintiffs contend they relied on in not opposing the development of the shopping center, and which were breached when the Varis entered into a lease agreement with Tavern contemplating the opening of bar in the shopping center. Plaintiffs claim that this breach threatens them with imminent and irreparable harm, because "the operation of a liquor establishment would expose the community to vagrancy, loitering, increased traffic, noise pollution and other ill effects associated with establishments purveying alcoholic beverages."

On September 21, 1998, Tavern filed a motion to intervene on the basis that it had an interest in the outcome of the litigation. While noting that they had no grievance with the Tavern, plaintiffs opposed this motion, arguing that the Vari defendants "should not be permitted to benefit from any equitable and/or legal considerations which may run to [Tavern]." In urging denial of the motion, [*4] plaintiffs pointed to the fact that if Tavern "had a recoverable loss, it could file a claim for monetary damages in Superior Court if plaintiffs were successful in enjoining the Vari defendants from allowing the business in question to open." I rejected plaintiffs' arguments and granted Tavern's motion to intervene on October 13, 1998, finding that Tavern was, at the very least, a party whose joinder is described in Rule 19(a)(2). There was no other activity in this matter until Tavern filed its motion for judgment on the pleadings.

B. Factual History

The property underlying the dispute in this matter, 796 Old Baltimore Pike, Newark, Delaware, was purchased by the Varis sometime prior to February 20, 1996. This property is adjacent to the developments of Huntington and Westover Woods.

On February 20, 1996, the New Castle County Department of Planning Subdivision Advisory Committee held a public meeting (the "February 26 meeting") to review preliminary plans for the development of a shopping center on the property. At this meeting, residents of Huntington and Westover Woods and others expressed concerns about the proposed shopping center development, specifically raising issues [*5] such as loitering, noise, the operation of gasoline filling stations, and the creation of establishments maintaining extended hours of operation or selling alcoholic beverages. According to the complaint, Mr. Vari represented, among other things, that none of the businesses operating in the shopping center would sell alcoholic beverages.

On March 25, 1996, the Huntington Homeowners Association held a meeting to discuss the pending plan to develop the property as a shopping center. The meeting was attended by plaintiffs, residents of the surrounding neighborhoods, Mr. Vari and his attorney. Once again, participants expressed concerns about the effect of a shopping center on the community and about the types of establishments that they believed to be unacceptable uses of the shopping center, including adult bookstores, video game venues, and establishments selling alcoholic beverages. Allegedly, Mr. Vari again assuaged these concerns by representing to the attendees that no such "unacceptable" establishments would operate in the shopping center, and is alleged to have agreed specifically that no establishment in the shopping center would sell alcoholic beverages.

Plaintiffs claim that [*6] these representations formed an oral contract between Vari and one or more of the attendees of the meetings, and that such agreement was breached on or about April 23, 1998, when the Varis entered into an agreement with David R. Whittington and James Brady, the principals of Tavern, for the construction of a bar in the shopping center. A lease agreement memorializing this agreement was executed on May 25, 1998, and Tavern filed an application for a liquor license with the Delaware Alcoholic Beverage Control Commission ("ABCC") on May 26, 1998. Tavern was issued a liquor license and on October 23, 1998, it opened a bar, now known as Breakers, in the shopping center. Plaintiffs filed their complaint shortly thereafter.

II. DISCUSSION

A. Motion for Judgment on the Pleadings

1. Standard

Although styled as a motion for judgment on the pleadings pursuant to Court of Chancery Rule 12(c), this motion will be treated as one for summary judgment, since all parties have presented and asked me to consider affidavits supporting their respective positions. *See* Ch. Ct. R. 12(c).

Summary judgment should be granted where the moving party demonstrates that no genuine issue of material [*7] fact exists and that the moving party is entitled to judgment as a matter of law. Ch. Ct. R. 56(c). The facts must be viewed in the light most favorable to the non-moving party and the moving party has the burden of demonstrating that no material question of fact exists. *Goodwin v. Live Entertainment, Inc., 1999 Del. Ch. LEXIS 5,* *14, Del. Ch., C.A. No. 15765, Strine, V.C., (Jan. 22, 1999) (citing *Tanzer v. Int'l Gen. Indus., Inc.,* Del. Ch., 402 A.2d 382, 385 (1979)).

A2

2. Analysis

The facts of this case present insurmountable obstacles to plaintiffs' claim for relief. Essentially, the complaint alleges that oral representations made by Mr. Vari in the presence of certain public officials and neighboring landowners impose legally enforceable contractual limitations on otherwise lawful uses of the Vari defendants' land. These representations were never reduced to writing nor were they made part of the public record in the process of planning approval. Indeed, there is no allegation that plaintiffs ever sought to incorporate these representations into any written instrument, either as a part of county government's approval of the project or otherwise.

In limited circumstances, courts [*8] will enforce oral promises concerning the use of land, as an exception to the requirement of the Statute of Frauds that every contract creating an interest in land be in writing. n3 The holdings in these cases are generally premised on *Sections 522 and 524 of the Restatement of Property*, and provide, in pertinent parts, as follows:

> § 522. Promises to Use Land
>
> (1) [A] promise that certain land will be used in a particular way is subject to the provisions of the Statute of Frauds requiring promises which create interests in land to be in writing signed by the promissor.
>
> § 524. Promises Enforceable by Estoppel
>
> An oral promise or representation that certain land will be used in a particular way, though otherwise unenforceable, is enforceable to the extent necessary to protect expenditures made in reasonable reliance upon it.

Delaware law has codified the Statute of Frauds in 6 Del. C. § 2714(a), which provides that:

> No action shall be brought to charge any person . . . upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them . . . unless the contract is reduced to writing . . . .

[*9]

6 Del. C. § 2714(a).

---

n3 *See Nicol v. Nelson*, Colo. Ct. App., 776 P.2d 1144 (1989); *Haines v. Minnock Constr. Co.*, Pa. Supr., 289 Pa. Super. 209, 433 A.2d 30 (1981); *Simplex Precast Indus., Inc. v. Biehl*, Pa. Supr., 395 Pa. 105, 149 A.2d 121 (1959).

---

Plaintiffs concede that the right they seek to enforce is an interest in lands within the meaning of the Delaware Statute of Frauds, but argue that their reliance on Mr. Vari's oral representations, in forbearing from further opposing the Vari defendants' plan of development, is sufficient to support the creation of a promissory estoppel, citing *Nicol v. Nelson*, Colo. Ct. App., 776 P.2d 1144 (1989), *Haines v. Minnock Construction Co.*, Pa. Supr., 289 Pa. Super. 209, 433 A.2d 30 (1981) and *Simplex Precast Industries, Inc. v. Biehl*, Pa. Supr., 395 Pa. 105, 149 A.2d 121 (1959).

After reviewing these cases, I find that they are not helpful to plaintiffs' position. All three cases are distinguishable in that all involved the expenditure [*10] of monies in the purchase of land and representations regarding the condition or use of that land made by the seller. *Simplex* is the most easily distinguishable, as the court held that the plaintiffs action was not based on an oral promise, but instead sought enforcement of rights arising from a written instrument. 149 A.2d at 124.

The other cases cited by plaintiffs are also unhelpful to them. In *Haines*, the court was asked to determine whether the representations of a developer that the area surrounding certain townhouse units would remain wooded were enforceable. Relying on the developer's representations that the area would remain the same, plaintiff purchased a townhouse. Approximately four years later, the developer began preparations to develop the "open space." Plaintiff sued and obtained a permanent injunction. On appeal, the developer argued that any representation that the land behind plaintiffs townhouse would remain "open space" was unenforceable as an oral promise within the Statute of Frauds. Relying on *Restatement of Property*, Section 524, the court affirmed the grant of an injunction, finding the promise to be enforceable by estoppel, stating:

> [Plaintiff] [*11] was particularly interested in the townhouse she purchased because of its wooded charm and beauty and she had every reason to expect that it would remain that way. [She] made the substantial expenditure involved in purchasing the townhouse because of her reliance on the promise that the open space would remain in that condition.

*433 A.2d at 35.* The court then held that plaintiff had reasonably relied on the developer's representations and that an enforceable promise was created by her expenditure of monies in reliance thereon.

The issue in *Nicol* was substantially the same as in *Haines*. Plaintiffs purchased subdivision lots bordering an undeveloped tract of land offering a scenic view of an adjacent lake in reliance on the defendants' representation that the tract would remain undeveloped open space. After defendants took steps to develop the tract, plaintiffs sued to enforce the oral promises and obtained an injunction. On appeal, the court found that defendants' oral promises regarding the use of tract of land in question were enforceable both under the *Restatement of Property, section 524* and the *Restatement (Second) of Contracts, section 139(1)*. The more [*12] general provision of *section 139(1) of the Restatement (Second) of Contracts* states:

> A promise which the promisor should reasonably expect to induce action or a forbearance on the part of the promisee or third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

*Nicol, 776 P.2d at 1147.* The court noted that the purpose of the doctrine of promissory estoppel "is to assure fairness in business relationships by protecting one who relies to his detriment on the promise of another." *776 P.2d at 1146.*

My reading of these cases and the principles stated in the *Restatement of Property, sections 522 and 524*, lead me to conclude that plaintiffs' claim fails as a matter of law. Plaintiffs do not claim to have made any expenditure of monies in reliance on Mr. Vari's alleged representations. They did not buy property from the Vari defendants on the basis of Mr. Vari's alleged representations and had no business relationship of any kind with the Vari defendants. In the circumstances, [*13] I conclude that, having made no "expenditures" of money in reliance on the alleged promise, they are not entitled to rely on the principles of promissory estoppel embodied in *section 524 of the Restatement of Property* to establish the existence and nature of the servitude they seek to enforce against the Vari defendants. Instead, the representations or promises alleged to give rise to that servitude are within the scope of the Statute of Frauds and are made unenforceable by its terms. n4

> n4 I also note that, even if plaintiffs could establish the basis of a claim of promissory estoppel against the Vari defendants, they would need to confront the undisputed fact that Tavern entered into its lease arrangement with the Vari defendants and spent money to open its business without actual or constructive notice of the alleged restrictions on use. Tavern argues that its intervening status as a "good faith lessee for value" would make it inequitable to enter any injunction having the effect of preventing Tavern from conducting its business operations. In the circumstances, it is unnecessary to address these issues because plaintiffs' claim is barred by the statute of frauds.

[*14]

This result is not only consistent with the terms of the Restatement of Property and the case law, but is necessitated by the public interest in the proper administration of county governmental functions. The servitude plaintiffs seek to enforce does not arise out of any private commercial relationship between the Vari defendants and plaintiffs. Instead, it is claimed to depend on oral representations made during the course of the public process leading to the approval by the appropriate county governmental body of a plan of subdivision, which was then filed of record in the Office of the Recorder of Deeds in and for New Castle County. In that context, it is important and entirely appropriate that any special limitation on use either agreed to or imposed in the course of approving the plan of subdivision be specified in a writing signed or acknowledged by the landowner and be a matter of public record.

B. Motion for Attorneys' Fees

1. Standard

It is well settled under the American Rule that prevailing litigants must bear their own attorneys' fees and expenses. *Brice v. State of Delaware, Del. Supr., 704 A.2d 1176, 1178 (1998)* (citing *Goodrich v. E.F. Hutton Group,* [*15] *Inc., Del. Supr., 681 A.2d 1039, 1043-44 (1996)).* However, this general rule is subject to several exceptions. See *CM & M Group, Inc. v. Carroll, Del. Supr., 453 A.2d 788, 795 (1982).* Aside from litigation creating a common fund or a non-monetary benefit which inures to the benefit of others, the exceptions are limited to: (1) cases where fees are authorized by statute, (2) cases where the court finds that a party's bad faith conduct increased the costs of litigation, and (c) cases where the pre-litigation conduct of the losing party was so egregious as to justify an

A4

1999 Del. Ch. LEXIS 119, *

award of attorneys' fees as an element of damages. See *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 231 (1997).

Tavern has moved for an award of fees, arguing that the instant case falls within the second of these exceptions, and that it is entitled to have its attorneys' fees and expenses paid by the plaintiffs, in light of their bad faith conduct prior to and during the litigation in this action. Tavern lists three specific instances of plaintiffs' conduct that it contends "bring[s] this case within the [second] exception to the American Rule." I do not address the first, as it [*16] pertains to actions irrelevant to my decision in this matter.

The second instance of bad faith listed by Tavern relates to the complaint in this matter. Arguing that the legal authorities and facts cited in the motion for judgment on the pleadings demonstrate that there is no legal basis for the injunctive relief that plaintiffs request, Tavern contends that "plaintiffs' sole purpose in instituting these proceedings was to frustrate and delay [Tavern] in its effort to conduct a legitimate business enterprise." Tavern also contends that plaintiffs misrepresented the extent of opposition to the liquor establishment by naming in the complaint plaintiffs and plaintiff organizations that did not have standing to bring suit. See *supra*, note 1. Finally, Tavern contends that plaintiffs acted in bad faith and significantly increased the expenses faced by the Tavern in this litigation by not joining Tavern as a party defendant when plaintiffs had knowledge of: (1) the existence of the lease agreement between Tavern and the Varis, (2) Tavern's filing of a liquor license application and (3) the substantial financial investment made by Tavern in this venture.

The third instance of bad faith [*17] claimed by Tavern is plaintiffs' opposition to the Tavern's motion to intervene. Tavern contends that plaintiffs' argument against allowing Tavern to intervene demonstrates: (1) "plaintiffs knew that, if [Tavern] was permitted to intervene, their claim against the owners would fail," and (2) "that the plaintiffs came into this court of equity with unclean hands."

2. Analysis

The exception under which plaintiff seeks relief is narrow and is applied "in only the most egregious instances of fraud or overreaching." *Arbitrium*, Del. Ch., 705 A.2d at 231; see also *Ryan v. Tad's Enterprises, Inc.*, Del. Ch., 709 A.2d 682, 706 (1996) (attorneys' fees only awarded where conduct at issue rose to a "high level of egregiousness"). In *Barrows v. Bowen*, Chancellor Allen reviewed this exception, stating:

> A few Delaware cases have suggested that a finding of fraudulent behavior underlying the action may be grounds for awarding attorney's fees. While this court can imagine situations which may be so egregious as to warrant an award of attorney's fees on the basis of fraud, the American Rule would be eviscerated if every decision holding defendants liable for fraud or the like [*18] also awarded attorney's fees. Even more harmful would be to extend this narrow exception to situations involving less than unusually deplorable behaviors. The award of attorney's fees is "unusual" relief.

1994 Del. Ch. LEXIS 164, *6, Del. Ch., C.A. No. 1454-S, Allen, C., (Sept. 7, 1994) (citations omitted); see also *Weinberger v. UOP, Inc.*, Del. Ch., 517 A.2d 653, 656 (1986) ("To depart from the traditional rules with respect to attorneys' fees, there must be a showing of bad faith, conduct which was totally unjustified, or the like.").

Circumstances giving rise to an award of fees under the bad faith exception include those where "judicial intervention is necessary to secure clearly defined and established rights or where a defendant's actions are designed to force a party to resort to litigation for the purpose of causing unreasonable delay." Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 13-3(b), p. 870. However, attorneys' fees will not be awarded "in the absence of intentional misconduct" or where the party has "merely acted pursuant to an incorrect perception of its legal rights." *Id.*

I do not [*19] find plaintiffs' conduct in this action to rise to the egregious level of bad faith necessary to justify an award of fee shifting. In granting Tavern's motion to intervene, I found the decision of plaintiffs' counsel to not join Tavern and to oppose the motion procedurally incorrect. However, these choices of plaintiffs counsel in no way represent the "intentional misconduct" necessary for this Court to make the finding of bad faith necessary for an award of fees. Neither does the naming of Huntington or the two public officials as plaintiffs, which I consider to be mere oversight.

Likewise, while plaintiffs' were not successful in advocating their position that the estoppel exception to the Statute of Frauds applies to make the alleged representation of Vari enforceable as an oral promise, their arguments were not made in bad faith and were merely "incorrect perceptions" of their legal rights. For these reasons, Tavern's motion seeking reimbursement from the plaintiffs for its attorneys' fees and expenses is denied. I will; however, grant it court costs as the prevailing party in this matter.

III. CONCLUSION

1999 Del. Ch. LEXIS 119, *

For the reasons stated herein, the intervening defendant's motion for [*20] judgment on the pleadings is GRANTED and its motion for attorneys' fees and expenses is DENIED. Court costs are to be paid by plaintiffs. An order to this effect has been entered this date.

Stephen P. Lamb

Vice Chancellor

ORDER

For the reasons stated in the Court's memorandum opinion of May 28, 1999, the motion for judgment on the pleadings is GRANTED, the motion for attorneys' fees and expenses is DENIED, and the complaint is hereby DISMISSED as to all parties. Plaintiffs are directed to pay court costs in this matter. IT IS SO ORDERED this 28th day of May 1999.

Stephen P. Lamb

Vice Chancellor