## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC., :
a Delaware corporation,        :
                                 :     C.A. No.: **1:05-cv-872(SLR)**

        Plaintiff,          :
                                   :

v.                                      :
                                   :

THE TAX AUTHORITY, INC.,       :     **JURY TRIAL DEMANDED**
a New Jersey corporation, <u>et al.</u>,    :
                                   :

        Defendants.        :

<u>**PLAINTIFF'S ANSWERING BRIEF**</u>
<u>**IN OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTION TO DISMISS PLAINTIFF'S**</u>
<u>**VERIFIED COMPLAINT IN ITS ENTIRETY**</u>

J. R. Julian
J. R. JULIAN, P.A.
824 Market Street, Suite 1001
P. O. Box 2171
Wilmington, DE 19899-2171
(302) 658-6700
Attorneys for Preferred Tax
Dated: January 19, 2006                 Service, Inc.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iv

NATURE AND STAGE OF THE PROCEEDINGS ..................................... 1

SUMMARY OF ARGUMENT ..................................................................... 2

STATEMENT OF FACTS ........................................................................... 3

ARGUMENTS

A. Standard of Review ...................................................................... 11

B. Arguments ..................................................................................... 11

I.    PURSUANT 28 U.S.C.A. § 1331 – FEDERAL QUESTION
      JURISDICTION, THIS COURT HAS SUBJECT
      MATTER JURISDICTION BECAUSE PREFERRED TAX
      ALLEGED FACTS TO ESTABLISH PRIMA FACIE
      CASES FOR AT LEAST THREE FEDERAL
      QUESTIONS: WIRE FRAUD, MAIL FRAUD, AND RICO
      VIOLATIONS................................................................................. 11

II.   PREFERRED TAX HAS ALLEGED SUFFICIENT
      FACTS TO ESTABLISH PRIMA FACIE CASES FOR
      BREACH OF AGREEMENT, TORTIOUS
      INTERFERENCE WITH PROSPECTIVE ECONOMIC
      ADVANTAGE, TORTIOUS INTERFERENCE WITH
      CONTRACT, UNFAIR TRADE PRACTICES,
      MISAPPROPRIATION OF TRADE SECRETS, CIVIL
      CONSPIRACY, AND BAD FAITH...................................................... 19

      A.   Preferred Tax Has Adequately Alleged Breach of
           Agreement (Count I). ............................................................... 20

      B.   The Economic Loss Doctrine Is Inapplicable To This
           Case. ........................................................................................ 22

C.    Preferred Tax Has Adequately Alleged Tortious Interference With Prospective Economic Advantage (Count II). .......................................................................... 23

D.    Preferred Tax Has Adequately Alleged Tortious Interference With Contract (Count III). ....................................... 25

E.    Preferred Tax's Claims Of Unfair Trade Practices (Count IV) And Civil Conspiracy (Count VI) Are Not Barred By Delaware's Uniform Trade Secrets Act. ....................................... 26

F.    Preferred Tax Has Adequately Alleged Misappropriation Of Trade Secrets (Count V). ......................................................... 27

G.    Preferred Tax Has Adequately Alleged Civil Conspiracy (Count VI). .................................................................................... 33

H.    Preferred Tax Has Adequately Alleged Bad Faith (Count VIII). ............................................................................................ 35

CONCLUSION.......................................................................................... 36

# TABLE OF AUTHORITIES

CASE LAW

Acierno v. Priet-Rubin Inc., 199 F.R.D. 157 (D. Del. 2001)........................... 23

AeroGlobal Capital Mgmt, LLC v Cirrus Indus., 871 A.2d
428, 437 (Del. 2005) ..................................................................................... 25

Aspen Advisors LLC v. UA Theatre Co., 861 A.2d 1251, 1
265-66 (Del. 2002)......................................................................................... 25

Bissell v. Papastavros Assocs. Med. Imaging, Del. Super.,
626 A.2d 856 (1993) ...................................................................................... 11

Borish v. Graham, 655 A.2d 831 (Del. Super. 1994)........................................ 21

Bowl-Mor Co., Inc. v. Brunswick Corp., 297 A.2d 61
(Del. Ch. 1972)............................................................................................... 24

Brittingham v. Board of Adjustment of City of Rehoboth Beach,
2005 WL 1653979 (Del. Super. 2005) ............................................................ 35

Chrysler Corporation v. Chaplake Holdings, Ltd., 822 A.2d
1024 (Del. 2003) ............................................................................................. 22

Connolly v. Labowitz, 519 A.2d 138, 143 (Del. Super. 1986)..................... 33-34

Delaware Trust Company v. Robinson, 1993 WL 1303175
(Del. Com. Pl. 1993) ...................................................................................... 20

Exxon Mobil Corp. v. Allapattah Servs., 125 S.Ct. 2611
(U.S. 2005)...................................................................................................... 12

Hanrahan v. Britt, 1995 WL 422849 (E.D Pa. 1995) ....................................... 17

H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129 (Del. Ch. 2003)................. 14

In re Asbestos Litigation, 509 A.2d 1116 (Del. Super 1986)........................... 34

International Fidelity Insurance Co. v. Mattes Electric, Inc.,
2002 Del. Super. LEXIS 441 (Del. Super. June 27, 2002)................................. 22

Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983
(Del. Ch. 1987)................................................................................................... 25

Jaguar Cars, Inc. v. Royal Oaks Motor Car Company, Inc.,
46 F.3d 258 (3d Cir. 1995)............................................................................. 17-18

Livewire Publishing, Inc. v. Best Software, Inc., 252 F.Supp.2d 74
(D. Del. 2003) .................................................................................................... 32

Nepa v. Marta, 348 A.2d 182 at 186 (Del. 1975) ............................................... 22

Nicolet, Inc. v. Nutt, 525 A.2d 146, 149 (Del. 1987)...................................... 33-34

Nucar Consulting, Inc., v. Doyle, 2005 WL 820706 (Del.Ch.)........................ 32

Nutt v. A.C. & S. Co., Inc., 517 A.2d 690, 696 (Del. Super. 1986)................. 34

Sanirab Corp. v. Sunroc Corp., 2002 Del. Super. LEXIS 350
(Del. Super. April 29, 2002) ............................................................................. 26

Savor, Inc. v. FMR Corp., 2001 Del. Super. LEXIS 170
(Del. Super. 2001)......................................................................................... 29, 32

U.S. v. Gordon, 380 F.Supp.2d 356 (D. Del. 2005) ......................................... 17

## STATUTES

6 Del. C. § 2001(4)............................................................................................ 29

6 Del. C. § 2007(a)............................................................................................ 26

6 Del. C. § 2714 ................................................................................................ 21

18 U.S.C.A. § 1341 ........................................................................................... 12

18 U.S.C.A. § 1343 ........................................................................................... 12-13

18 U.S.C.A. § 1961, *et seq*. ................................................................................ 12, 16
-19

28 U.S.C. § 1331 ........................................................................................... 1-2, 11
-12, 16

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Preferred Tax Service, Inc. ("Preferred Tax"), filed a Verified Complaint in this Court on December 16, 2005 alleging breach of agreement, tortious interference with prospective economic advantage, tort, intentional tort, tortious interference with contract, unfair trade practices, misappropriation of trade secrets, civil conspiracy, common law fraud, mail fraud, wire fraud, racketeering and bad faith against defendants The Tax Authority, Inc., ("Tax Authority"), et al.    This Court has jurisdiction pursuant to 28 U.S.C.S. § 1331.    Simultaneously with the filing of the Verified Complaint, Preferred Tax filed a motion for a temporary restraining order.

On December 30, 2005, the defendants, Tax Authority and Kenneth M. Leese ("Leese"), filed a Motion to Dismiss the Verified Complaint in its entirety for failure to state any claim upon which relief can be granted and filed their brief in support of their Motion to Dismiss. On January 9, 2006, the Piane entities also filed a Motion to Dismiss along with their supporting brief. This is Plaintiff's Answering Brief in response to the defendants' Motions to Dismiss.

## SUMMARY OF ARGUMENTS

I.  **PURSUANT 28 U.S.C.A. § 1331 – FEDERAL QUESTION JURISDICTION, THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE PREFERRED TAX ALLEGED FACTS TO ESTABLISH PRIMA FACIE CASES FOR AT LEAST THREE FEDERAL QUESTIONS: WIRE FRAUD, MAIL FRAUD, AND RICO VIOLATIONS.**

II.  **PREFERRED TAX HAS ALLEGED SUFFICIENT FACTS TO ESTABLISH PRIMA FACIE CASES FOR BREACH OF AGREEMENT, TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, TORTIOUS INTERFERENCE WITH CONTRACT, UNFAIR TRADE PRACTICES, MISAPPROPRIATION OF TRADE SECRETS, CIVIL CONSPIRACY, AND BAD FAITH.**

    A.    Preferred Tax Has Adequately Alleged Breach of Agreement (Count I).

    B.    The Economic Loss Doctrine Is Inapplicable To This Case.

    C.    Preferred Tax Has Adequately Alleged Tortious Interference With Prospective Economic Advantage (Count II).

    D.    Preferred Tax Has Adequately Alleged Tortious Interference With Contract (Count III).

    E.    Preferred Tax's Claims Of Unfair Trade Practices (Count IV) And Civil Conspiracy (Count VI) Are Not Barred By Delaware's Uniform Trade Secrets Act.

    F.    Preferred Tax Has Adequately Alleged Misappropriation Of Trade Secrets (Count V).

    G.    Preferred Tax Has Adequately Alleged Civil Conspiracy (Count VI).

    H.    Preferred Tax Has Adequately Alleged Bad Faith (Count VIII).

## STATEMENT OF FACTS

Plaintiff Preferred Tax is in the business of preparing tax returns for individuals. Edwin Swan ("Swan") is the president of Preferred Tax and a resident of Delaware. Defendant, Tax Authority, also is in the business of preparing tax returns for individuals and is a direct competitor of Preferred Tax. Tax Authority operates under the name Jackson Hewitt® as a franchisee of Jackson Hewitt Tax Service, Inc. ("Jackson Hewitt"). Kenneth M. Leese ("Leese") is the president of Tax Authority and a resident of New Jersey.

A. Sale Negotiations and the Disclosure of Confidential Information.

On June 16, 2005, Swan began negotiations with Leese for the purchase of Preferred Tax by Tax Authority (the "Negotiations"). During the Negotiations, Leese requested from Swan the Preferred Tax customer list, pricing strategy, marketing methods, operational systems, employee ledger and other information about Preferred Tax, which Swan provided to Leese in confidence.

During the Negotiations, the renting of Preferred Tax's current office space was discussed and Leese commented that it might be too small. Unknown to Leese, but in order to promote the sale by removing limited office space as an obstacle, Swan contacted Robert A. Piane, Jr. ("Piane,

Jr."), a long-time friend, to discuss the possibility of converting storage space into office space in the building located at 2132 North Market Street ("Building"), which is directly across the street from the Preferred Tax office. This building is owned by Piane, Jr.'s father, Robert A. Piane ("Piane").

As set forth more fully below, as part of the Negotiations, Swan disclosed to Leese confidential information about the rental space, that is, the name of the owner – Piane.    Swan also disclosed confidential information about the Negotiations to Piane – the name of the prospective buyer, Leese and Tax Authority.

B. Piane Agreement.

Swan told Piane, Jr. in confidence that he was negotiating the sale of Preferred Tax and that, if purchased, the buyer might need a larger office space.  Swan inquired whether Piane would be interested in renting storage space in the Building to be converted into office space.  Piane, Jr. agreed with Swan to rent part of the Building to the prospective buyer on the limited condition that the prospective buyer had to purchase Preferred Tax.

Acting in reliance on this agreement, Swan provided Piane, Jr. with the name of the prospective buyer, Tax Authority.  Before the discussion

4

with Swan, neither Piane nor Piane, Jr. was aware of Leese's or Tax Authority's potential interest in renting the Building.

C. Leese Agreement.

Swan and Leese agreed that the availability of adequate office space to Tax Authority upon purchasing Preferred Tax was vital to the Negotiations and that Tax Authority would not need such office space if it did not purchase Preferred Tax. Acting in reliance on his agreement with Piane, Jr., Swan told Leese that the owner of the Building agreed to rent space to Tax Authority, but only if Tax Authority purchased Preferred Tax. On June 30, 2005, by e-mail, Leese requested additional information about the Building and about Preferred Tax.

On July 7, 2005, in reliance on his agreement with Leese, Swan provided Leese with the contact information for Piane, Jr. and additional information about the Building. Swan also provided the other business-related information that Leese had requested by e-mail. Prior to the Negotiations and his discussion with Swan, Leese did not know that the Building had office space available to rent.

D. Leese and Piane Execute a Lease that is Concealed from Swan.

Between July 7, 2005 and August 8, 2005, Swan received no further communication from Leese, Piane, Jr., or Piane regarding the Negotiations

or the Building.  At 4:50 p.m. on August 8, 2005, Leese e-mailed to Swan an

offer ("First Offer") to purchase Preferred Tax.    While Swan was

contemplating the First Offer, he learned, on August 10, 2005, by

happenstance, that Piane and Tax Authority already had signed a lease

("Lease") for office space in the Building on August 8, 2005.    Swan

obtained this information from a comment that Piane, Jr. made to third

parties at a meeting in an unrelated matter.  After the meeting, Swan

informed Piane, Jr. that the Negotiations were ongoing, that the Lease was

unacceptable, and that it was signed <u>before</u> Swan even received the First

Offer.  Similarly, Leese also failed to inform Swan: (1) that he executed a

Lease with Piane on August 8, 2005 before he made the offer to Swan and

(2) that he had commenced renovations and had taken steps to open a tax

preparation business directly across the street in the Building.  Leese did not

inform Swan of the Lease in any of his many e-mails, telephone

conversations and in-person meetings.

On August 11, 2005, Swan called Piane to discuss the Lease.  In that

discussion, (a) Piane informed Swan that Leese represented to Piane that a

sale agreement had been reached; (b) Piane asked Swan what the two of

them could do about Leese's misrepresentation; and (c) Piane mentioned

that he expected to receive a check from Tax Authority (and did receive the

check some time after August 11).  Piane failed to mention that he expected Tax Authority to send him a check in the amount of $14,100.00 in full prepayment of the first year's rent and that Piane had agreed to use the prepayment to convert the storage space into office space for Tax Authority while the Negotiations were ongoing.

Shortly after August 11, 2005, Swan's representative, Calvin Harmon ("Harmon") discussed the Lease with Leese.  In that discussion, Harmon informed Leese that it was unacceptable to Swan that the Lease had been executed and that Swan would not negotiate under such circumstances. Leese explicitly agreed that if the Negotiations were not successful Tax Authority would not need the office space and that Tax Authority would release Piane from the Lease, if Piane, in turn, released Tax Authority from the Lease.  Harmon informed Swan to that effect.  Swan called Piane and confirmed that Piane would release Tax Authority, if the deal was not consummated between Leese and Swan.  However, Leese failed to mention to Harmon that he already had sent $14,100.00 to Piane in prepayment of the first year's rent, that Piane had agreed to spend the $14,100.00 to convert the storage space, and that the conversion would take place while the Negotiations were ongoing.

The Lease negotiations, the Lease, the one-year prepayment and the spending of the $14,100.00 were facts that were conspicuously omitted from all e-mails, telephone conversations and in-person meetings between Leese and Swan. If Swan had known about the one-year rent prepayment, there would have been no further negotiations and no further disclosures of confidential information. Furthermore, Swan would have acted to stop the renovations before Piane spent the money.

Following up on the continuing Negotiations, Tax Authority requested additional confidential business information and submitted, on September 19, 2005, a second offer to purchase Preferred Tax ("Second Offer"). The Second Offer was unsatisfactory to Swan. On September 30, 2005, Swan rejected the Second Offer and informed Leese and Piane that Preferred Tax would not be sold at that time.

E. Swan Learns the Full Extent of the Lease Agreement.

After Piane, Jr. received a copy of the September 30 letter in early October 2005, he confessed to Swan that Tax Authority had prepaid $14,100.00 for the first year of the Lease and that Piane already had spent the money on renovations. No one (i.e., Piane, Piane, Jr., or Leese) ever mentioned the $14,100.00 pre-payment to Swan prior to that date. Piane claimed that he executed the Lease and spent the $14,100.00 on renovations

based on Leese's misrepresentations that the Preferred Tax sale was consummated. Leese claimed that Piane was aware that the deal was not consummated, but spent the money anyway and then refused to return the money to Leese.

Although Piane and Piane, Jr. have their primary place of business right across the street from Preferred Tax, Swan was unaware that renovations had begun. Neither Piane nor Piane, Jr. offered any explanation as to why the office space renovation was started or why the entire $14,100.00 pre-payment was spent without checking on the status of the Negotiations with their long-time friend Swan. Although Leese had several communications with Swan, he never offered an explanation as to why he did not disclose the Lease, the pre-payment, and the renovations to Swan.

F. Tax Authority Has Opened a Tax preparation Business at the 2132 North Market Street Location.

As of the filing of this lawsuit, Tax Authority had sent workers to prepare the office space for Tax Authority to move in and such work was continuing. Furthermore, with the past two weeks (mid-January 2006) Jackson-Hewitt® signs were installed by Tax Authority, indicating a clear intention to open for business in the near future. **In fact, Tax Authority opened for business either on Sunday, January 15, 2006 or Monday,**

January 16, 2006 and currently is operating a tax preparation business at the Building.

## ARGUMENTS

### A. Standard of Review

To succeed on a Motion to Dismiss, the moving party must demonstrate that the Plaintiff cannot recover "under any reasonably conceivable set of circumstances susceptible of proof under the Complaint." Bissell v. Papastavros Assocs. Med. Imaging, Del. Super., 626 A.2d 856, 860 (1993). In deciding the Motion to Dismiss, the Court "must accept as true all material allegations of the complaint and it must construe the complaint in favor of plaintiff . . . drawing all reasonable inferences in the Plaintiff's favor." *Id.*

Accepting as true all of Preferred Tax's material allegations, it is clear that its claims are valid and that Preferred Tax could recover under a reasonably conceivable set of circumstances susceptible of proof under the Complaint. Thus, the defendants' Motion to Dismiss should be denied.

### B. Arguments

I. **PURSUANT 28 U.S.C.A. § 1331 – FEDERAL QUESTION JURISDICTION, THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE PREFERRED TAX ALLEGED FACTS TO ESTABLISH PRIMA FACIE CASES FOR AT LEAST THREE FEDERAL QUESTIONS: WIRE FRAUD, MAIL FRAUD, AND RICO VIOLATIONS.**

The defendants' incorrectly argue that there are no valid federal question claims, and therefore no federal jurisdiction. In addition to the racketeering charge under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1961, *et seq.,* Preferred Tax also alleged common law fraud and mail fraud, pursuant to 18 U.S.C.A. § 1341, and wire fraud, pursuant to 18 U.S.C.A. § 1343. In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases – civil actions that arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Exxon Mobil Corp. v. Allapattah Servs., 125 S. Ct. 2611, 2617 (U.S. 2005). Because RICO, mail fraud, and wire fraud claims arise under the United States Code, they are federal questions. Thus, this Court has federal jurisdiction over this controversy.

The defendants advance no legal objection to the common law fraud, mail fraud, and wire fraud claims other than to challenge the sufficiency of Preferred Tax's pleadings pursuant to Federal Rule of Civil Procedure 9(b), which requires that "all averments of fraud . . . be stated with particularity." Preferred Tax's averments of fraud were pled with particularity as spelled out by virtue of Leese's and the Pianes' actions.

18 U.S.C.A. § 1341, common law fraud and mail fraud, provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C.A. § 1343, wire fraud, provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

"Common law fraud in Delaware requires: (1) the existence of a false representation, usually one of fact, made by the defendant; (2) the defendant had knowledge or belief that the representation was false, or made the representation with requisite indifference to the truth; (3) the defendant had the intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff

13

acted or did not act in justifiable reliance on the representation; and (5) the plaintiff suffered damages as a result of such reliance. In addition to overt representations, fraud may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak. To state a claim for equitable fraud under Delaware law, a plaintiff must satisfy all the elements of common-law fraud with the exception that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly." H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129 (Del. Ch. 2003).

In its Verified Complaint, Preferred Tax alleged, with particularity, that the defendants deliberately concealed the following material facts: (1) their negotiations to make the Lease, (2) the existence of the Lease, (3) Tax Authority's pre-payment of the first year rent, (4) Piane's agreement to make renovations while the Negotiations were ongoing, and (5) Piane's spending of the entire pre-payment on renovations in furtherance of the Lease. Additionally, the defendants' separate representations that they would be willing to abandon the Lease if the sale was not consummated were manifestly false representations considering that at the time these statements were made, renovations of the rental space already had commenced. In the Complaint, Preferred Tax outlined the particular dates and times these acts

of concealment and false representations occurred, alleging that the acts occurred by use of e-mail, telephone conversations, and in-person conversations.

Moreover, Preferred Tax alleged that the defendants had knowledge or belief that their omissions were material to Preferred Tax and that their representations were false at the time they were given. As stated above, renovations were begun at the time the defendants' claimed that the Lease could be abandoned. The defendants' calculated acts of concealment and misrepresentation were intended to induce Preferred Tax to continue negotiating, to continue providing confidential information to the defendants, and to avoid any objections Preferred Tax would have had if it had been aware of the concealed conditions. As a result of Preferred Tax's ignorance of these material facts, Preferred Tax continued negotiating and providing confidential information to Leese and Tax Authority. Furthermore, due to Preferred Tax's lack of knowledge, it was unable to object to the underhanded dealings that were occurring behind its back. Preferred Tax reasonably, and in good faith, relied upon the incomplete statements of Defendants because it had no knowledge of the concealed actions until the Negotiations ended, at which time, the concealed actions

had been completed.  In the Complaint, Preferred Tax alleged that damages have resulted and will result from these acts of fraud.

Preferred Tax's fraud claims are not based solely upon any underlying contract.  Preferred Tax's fraud claims are based upon the defendants' concealment of material facts and misrepresentations and are valid irrespective of the defendants' breaches of (1) any express or implied agreements with Preferred Tax or (2) an implied duty to keep information confidential and restrict its use.  Because these fraud allegations present valid claims that arise from federal statutes, this Court's jurisdiction is proper under 28 U.S.C. § 1331.

Additionally, the defendants incorrectly argue that Preferred Tax's RICO arguments are without merit.  § 1962 of RICO provides:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . .

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

§ 1961(5) of RICO defines a "pattern of racketeering activity" as two or more predicate racketeering acts within a ten-year period.  § 1961(1) of RICO defines "racketeering activity" as, *inter alia*, any act which is chargeable under State law and punishable by imprisonment for more than one year, mail fraud, and wire fraud.  U.S. v. Gordon, 380 F.Supp.2d 356 (D. Del. 2005).  § 1961(4) of RICO defines an "enterprise" as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  The Third Circuit has ruled that an "enterprise" can consist of an association in fact of the "persons" perpetrating the illegal scheme.  Jaguar Cars, Inc. v. Royal Oaks Motor Car Company, Inc., 46 F.3d 258 (3d Cir. 1995); Hanrahan v. Britt, 1995 WL 422849 (E.D Pa. 1995).

Preferred Tax has properly alleged a RICO claim.  Preferred Tax has alleged under 1962(a) that the defendants have obtained trade secrets

17

through a pattern of racketeering; invested those trade secrets into an enterprise (a new tax preparation business) engaged in preparing federal tax returns; and that the tax preparation enterprise has harmed and will harm Preferred Tax by use of the misappropriated trade secrets. The defendants actions are a "pattern of racketeering" under the statute because: (1) in misappropriating Preferred Tax's trade secrets, the defendants have engaged in acts that are chargeable under State law and punishable by imprisonment for more than one year, mail fraud, and wire fraud (as discussed above); and (2) the defendant committed four predicate acts related to the single illegal scheme through numerous instances of fraud. Preferred Tax has alleged that under 1962(b) the defendants have obtained or maintained control of an enterprise, which is a new tax preparation business that is engaged in preparing federal tax returns, using misappropriated trade secrets. Through the tax preparation enterprise, the defendants have harmed and will continue to harm Preferred Tax by using its trade secrets. In addition to the tax preparation business enterprise, under 1962(c) and <u>Jaguar Cars</u>, the defendants have formed another enterprise – the association in fact among the defendants. Thus, the defendants' use of both enterprises to defraud Preferred Tax of valuable trade secret information by a pattern of racketeering fits squarely within the type of activities proscribed by the

RICO statute.    Finally, Preferred Tax has alleged under 1962(d) that

Defendants have conspired to do all of the foregoing.

## II.    PREFERRED TAX HAS ALLEGED SUFFICIENT FACTS TO ESTABLISH PRIMA FACIE CASES FOR BREACH OF AGREEMENT, TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, TORTIOUS INTERFERENCE WITH CONTRACT, UNFAIR TRADE PRACTICES, MISAPPROPRIATION OF TRADE SECRETS, CIVIL CONSPIRACY, AND BAD FAITH.

Preferred Tax has alleged sufficient facts to establish prima facie

cases for breach of agreement, interference with prospective economic

advantage, interference with contract, unfair trade practices,

misappropriation of trade secrets, civil conspiracy, fraud and bad faith.

Preferred Tax alleges breach of agreement by alleging facts to establish

offer, acceptance and consideration. Preferred Tax alleged interference with

prospective economic advantage by alleging facts to establish that some

defendants (i.e., the Pianes) interfered with Preferred Tax's economic

advantage with respect to other defendants(i.e., Leese and Tax Authority).

Preferred tax alleges interference with contract by alleging facts to establish

that the defendants interfered with one another's contracts. Preferred Tax's

unfair trade practices claim arises out of breach of contract, tortious

interference, fraud and conspiracy, in addition to misappropriation of trade

secrets (and the claims of civil conspiracy and bad faith likewise arise from

the other allegations). Preferred Tax alleged facts to establish that the defendants acquired trade secrets by improper means and are using the information improperly.

A.    Preferred Tax Has Adequately Alleged Breach of Agreement (Count I).

The defendants' incorrectly argue that the agreements alleged by Preferred Tax are not supported by any consideration. "Consideration may be found in the mutual promises of the parties." Delaware Trust Company v. Robinson, 1993 WL 1303175 (Del. Com. Pl. 1993). There were four agreements among Preferred Tax and the defendants: (1) Swan's offer of the name of a prospective lessee in exchange for Piane's express or implied promise not to enter into a lease for office space in the Building with the prospective lessee unless that prospective lessee purchased Preferred Tax, which purchase was a condition precedent; (2) Swan's offer of the name and contact information of a prospective lessor in exchange for Leese's and Tax Authority's express or implied promise not to enter into a lease for office space in the Building with the prospective lessor unless Tax Authority purchased Preferred Tax, which purchase was a condition precedent; (3) Swan's forgiveness of Piane's breach of the first agreement in exchange for Piane's express or implied promise to release Tax Authority from the Lease and cancel the Lease if the Negotiations were unsuccessful; and (4) Swan's

20

forgiveness of Leese's and Tax Authority's breach of the second agreement and Swan's agreement to continue negotiating and providing confidential information in exchange for Leese's and Tax Authority's express or implied promise to release Piane from the Lease and cancel the Lease if the Negotiations were unsuccessful.

The defendants' argument that the Statute of Frauds bars the agreements alleged by Preferred Tax is without merit. Under the Statute of Frauds, as outlined in 6 Del. C. § 2714, there are four types of contracts that must be in writing and signed by the party to be charged in order to be enforceable: (1) contracts in consideration of marriage; (2) contracts concerning any interests in land, tenements, or hereditaments; (3) contracts that cannot be performed within the space of one year; and (4) contracts that charge the debt to another. 6 Del. C. § 2714; Borish v. Graham, 655 A.2d 831 (Del. Super. 1994). Contrary to the allegations of the defendants, the agreements at issue do not concern interests in land and therefore are not barred by the Statute of Frauds. Furthermore, the agreements are not related to marriage, can be performed within the space of a year, and are not related to assuming the debt of another. The agreements concern the use of confidential information, which included the name of a prospective tenant and the name and contact information of a prospective landlord. Thus, the

agreements do not fall within one of the enumerated categories. Even if the agreements had fallen within the scope of the Statute of Frauds (which they clearly do not), the Statute of Frauds would be inapplicable here due to the full performance of Preferred Tax, under the doctrine of promissory estoppel. Nepa v. Marta, 348 A.2d 182 at 186 (Del. 1975). See also, Chrysler Corporation v. Chaplake Holdings, Ltd., 822 A.2d 1024 at 1035 (Del. 2003).

      B.    The Economic Loss Doctrine Is Inapplicable To This Case.

The defendants' incorrectly argue that the "economic loss" doctrine applies. The economic loss doctrine bars tort liability where losses that arise out of a contractual breach between the parties do no harm to a person or to a property other than the bargained for item. International Fidelity Insurance Co. v. Mattes Electric, Inc., 2002 Del. Super. Lexis 441 (Del. Super. June 27, 2002). This argument is misplaced because the "bargained for item" concerns the use of confidential information, which included the name of a prospective tenant and the name and contact information of a prospective landlord. The losses that Preferred Tax alleged do not arise from harm to the bargained for item, but for losses that result from harm to Preferred Tax as a business itself. Thus, this doctrine is inapplicable.

Preferred Tax's tortious interference with prospective economic advantage claim (Count II) is based on a loss of bargaining power in the Negotiations due to the misappropriation of trade secrets (the landlord/tenant contact information) and the concealment of material facts, which concealment prevented Preferred Tax from protecting its interests with respect to Piane.

Preferred Tax's tortious interference with contract claims (Count III) are based upon (1) Leese's and Tax Authority's actions with respect to Piane's breach of Piane's contractual duty to Preferred Tax and (2) Piane and Piane, Jr.'s actions with respect to Leese's and Tax Authority's breach of Leese's and The Tax Authority's contractual duty to Preferred Tax.

Preferred Tax's fraud claims (Count VII) are based upon the defendants' concealment of material facts and misrepresentations. Preferred Tax's conspiracy claim (Count VI) and bad faith claim (Count VIII) are based upon all of the actions of the defendants, taken as a whole, not simply a breach of contract.

C.    <u>Preferred Tax Has Adequately Alleged Tortious Interference With Prospective Economic Advantage (Count II).</u>

The defendants' reliance upon <u>Acierno v. Priet-Rubin Inc.</u>, 199 F.R.D. 157 (D. Del. 2001) is misplaced. Defendants have no privilege to compete or protect their own business interests by breaching their contracts,

interfering with one another's contracts, misappropriating trade secrets and concealing material facts in a fraudulent manner. Bowl-Mor Co., Inc. v. Brunswick Corp., 297 A.2d 61 (Del. Ch. 1972)(The fact that one is a competitor of another for the business of a third person does not create a privilege to use illegal means, such as causing the third person to commit a breach of contract with the other).

In this case, Piane is a competitor of Preferred Tax for the business relationship of Tax Authority and Tax Authority is a competitor of Preferred Tax for the business relationship of Piane. Preferred Tax has alleged (1) the existence of a valid business relationship or expectancy with Piane and Tax Authority, separately; (2) knowledge of the relationship or expectancy on the part of Piane and Tax Authority, separately; (3) intentional interference by unlawful means which induced or caused a breach of the relationship or expectancy with Piane and Tax Authority, separately; and (4) damages to Preferred Tax by the loss of bargaining power in the Negotiations, by the threat of losing customers and business from unfair competition from Tax Authority's use of misappropriated trade secrets, and by the inability to protect its interests with respect to Piane.

24

D.    Preferred Tax Has Adequately Alleged Tortious Interference
      With Contract (Count III).

Defendants' argument that they cannot interfere with their own contract represents verbal legerdemain.    Preferred Tax alleged that the signing of the Lease by the defendants constitutes a tort, an intentional tort, and tortious interference by the defendants with each other's individual agreements with Preferred Tax.    Piane interfered with Leese's and Tax Authority's contract and Leese and Tax Authority interfered with Piane's contract.

The elements of tortious interference under Delaware law are well established.    "There must be (1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." AeroGlobal Capital Mgmt, LLC v Cirrus Indus., 871 A.2d 428, 437 (Del. 2005)., citing Aspen Advisors LLC v. UA Theatre Co., 861 A.2d 1251, 1265-66 (Del. 2002) (quoting Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983, 992 (Del. Ch. 1987).

By signing the Lease, Piane, Leese and Tax Authority committed tortious interference with contract.    Piane and Preferred Tax had a contract. Leese and Preferred Tax had a contract.    The defendants were aware of these contracts.    Thus, by signing the Lease in contravention of the contracts made

with Preferred Tax, the defendants intentionally and without justification caused each other to breach those contracts.

Preferred Tax has been disadvantaged in the Negotiations and is in imminent danger of losing customers and revenue because of the Lease. Tax Authority may and/or will solicit and do business with Preferred Tax's customers in violation of its express or implied agreement not to misappropriate Preferred Tax's trade secrets.

    E.    <u>Preferred Tax's Claims Of Unfair Trade Practices (Count IV)
And Civil Conspiracy (Count VI) Are Not Barred By
Delaware's Uniform Trade Secrets Act.</u>

The defendants' incorrectly argue that Preferred Tax's claims of unfair trade practices and civil conspiracy are solely predicated on misappropriation of trade secrets, and therefore, barred by the Uniform Trade Secrets Act ("UTSA"). The Delaware UTSA "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." 6 Del. C. § 2007(a); <u>Sanirab Corp. v. Sunroc Corp.</u>, 2002 Del. Super. LEXIS 350, *6 (Del. Super. April 29, 2002). In addition to having a basis in the misappropriation of trade secrets, Preferred Tax's claims of civil conspiracy and unfair trade practices have bases in the defendants' breach of contract, tortious interference with prospective economic advantage, tortious interference with contract, fraud

and bad faith. Even if Defendants are found not to have received any trade secrets, the defendants have placed Preferred Tax at a competitive disadvantage using other wrongful acts. Thus, the Delaware UTSA is not applicable because Preferred Tax's claims do not arise solely from the misappropriation of a trade secret.

>    F.    Preferred Tax Has Adequately Alleged Misappropriation Of
>          Trade Secrets (Count V).

The defendants' argument that Preferred Tax has failed to state a claim for misappropriation of trade secrets is without merit. First, the defendants argue that Preferred Tax's customer list, pricing strategy, marketing methods, operational systems and other information are *ipse dixit* not entitled to trade secret protection. Second, the defendants implicitly argue that Preferred Tax's customer list, pricing strategy, marketing methods, operational systems and other information have no commercial utility because Tax Authority has not opened a competing business that could make use of the information (this is a false statement because tax Authority <u>has</u> opened as of January 15 or 16, 2006). Third, the defendants argue that a customer list with names and fees is not a trade secret because the customers do not have exclusive agreements with Preferred Tax. Fourth, the defendants argue that a customer list with names and fees is not a trade secret because Preferred Tax has not alleged a reasonable expectation that

any of the customers will return to have their tax returns prepared by Preferred Tax. Fifth, the defendants argue that a customer list with names and fees is not a trade secret because it was not marked "confidential." Sixth, the defendants argue that a customer list with names and fees is not a trade secret because it included no contact information. Seventh, the defendants argue that Preferred Tax's customer list, pricing strategy, marketing methods, operational systems and other information were not misappropriated because there was no express request by Preferred Tax of the defendants to keep the information secret. Eighth, the defendants argue that Preferred Tax's customer list with social security numbers has nothing on it that could be deemed confidential. Ninth, the defendants argue that Preferred Tax's customer list, pricing strategy, marketing methods, operational systems and other information were not misappropriated because Preferred Tax terminated the Negotiations.

The relevant inquiry for analyzing a misappropriation of trade secrets claim is simple and clear:

> (1) Does a trade secret exist, i.e., have the statutory elements - commercial utility arising from secrecy and reasonable steps to maintain secrecy been shown; (2) Has the secret been communicated by plaintiff to the defendant; (3) Was such communication pursuant to an express or implied understanding that the secrecy of the matter would be respected; and (4) Has the secret information been improperly (e.g. in breach of the understanding) used or disclosed by the defendant to the injury

28

of the plaintiff? <u>Savor, Inc. v. FMR Corp.</u>, 2001 Del. Super. LEXIS 170, 8-10 (Del. Super. 2001).

In regard to the first element, a trade secret is: Information, including a formula, pattern, compilation, program, device, method, technique or process, that:

> a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
> 6 Del. C. § 2001(4).

In the case at bar, Preferred Tax's customer list, pricing strategy, marketing methods, operational systems and other information are trade secrets because they are information that derive economic value from not being generally known and are maintained in a reasonably secretive manner. Leese and Tax Authority did not have this information until it was provided by Swan.

In regard to the second element, these trade secrets were communicated to Tax Authority during the process of Negotiations, as evidence by its current possession of the documents and information.

In regard to the third element, Preferred Tax disclosed the information to Tax Authority pursuant to an implied understanding that the secrecy of the matter would be respected. The transmittal of such sensitive and

29

valuable documents was made <u>only</u> in the hopes of reaching a business sale agreement.  It is ludicrous for Leese and Tax Authority to suggest that transmitting the documents to Tax Authority during the Negotiations negated the expectation of confidentiality of the documents and the information.  Surely, had the sale gone through, Tax Authority would have expected that these trade secrets remain confidential and not also be provided to a third party.

In regard to the last element, this secret information has been and will continue to be improperly used by Tax Authority.  The defendants' implication that Tax Authority is not currently in the tax preparation business in Wilmington, Delaware and that Tax Authority is not making preparations to open another tax preparation business within days in the Building right across the street from Preferred Tax is outrageous and fraudulent.  The signs that announced Jackson Hewitt's impending opening in the Building belie the defendants' disingenuous claims.  Leese's and tax Authority's representations are undercut by the fact that Leese and Tax Authority opened for business either on Sunday, January 15, 2006 or Monday, January 16, 2006.  Moreover, simply possessing and reviewing the sensitive documents has provided the defendants' with an unfair commercial

edge. Thus, the use of this information has been and will continue to be used by Tax Authority improperly.

The commercial utility of the trade secret information is self-evident. Furthermore, the utility of the information concerning the respective names and willingness to contract of Piane to Leese and Leese to Piane, also is evident considering that the defendants used the information to enter into a commercial transaction by signing the Lease.

The defendants' argument that a list of names with corresponding social security numbers does not include "anything which could be deemed confidential" is simply unsupportable. The customer list can be converted to a full contact list, including addresses and phone numbers for less than 20 cents per name through standard people finder services. Moreover, the assumption of confidentiality should arise by the mere usage of social security numbers. With the real threat of identity theft in our computer age, it is common sense that any list that identifies customers' social security numbers should be maintained in secrecy.

Moreover, by Leese's and Tax Authority's reckless, unhelpful, unnecessary and indiscreet disclosure of the confidential list, Piane, Piane, Jr. and all of the public now know that the people on the list made good on their 2004 tax-refund loans. The significance of tax-refund loan status is

that 95% of the income earned by electronic tax preparers, like Preferred Tax and Tax Authority, is derived from tax-refund loan fees. 95% of the tax-refund loan risk comes from making loans to people who did not qualify for or make good on 2004 tax-refund loans. Thus, the mere "list of names" has substantial value that cannot be duplicated without preparing tax returns, making tax-refund loans, and incurring tax-refund loan defaults.

"[A customer list] is precisely the type of business information which is regularly accorded trade secret status". Livewire Publishing, Inc. v. Best Software, Inc., 252 F.Supp.2d 74 (D. Del. 2003). Moreover, not only is an exclusive agreement unnecessary for a customer list to be a trade secret under Delaware law, a previous customer relationship is not even required. Nucar Consulting, Inc., v. Doyle, 2005 WL 820706 (Del.Ch.) (The court found that a potential customer list was a trade secret). The understanding of confidentiality of trade secrets can be implied. Savor, supra. The defendants' improper use and disclosure of Preferred Tax's trade secrets is clear.

Finally, the defendants' argument that Preferred Tax terminated the Negotiations is irrelevant. Preferred Tax did not forfeit its trade secrets simply by terminating the Negotiations. The defendants are not arguing that they have been harmed any wrongful acts of Preferred Tax in terminating

the Negotiations. The defendants received Preferred Tax's trade secrets pursuant to the Negotiations and are attempting to use the trade secrets to take Preferred Tax's business without paying for it.

### G.   Preferred Tax Has Adequately Alleged   Civil Conspiracy (Count VI).

The defendants' argument that Preferred Tax has not alleged that the defendants may conspire to solicit and do business with Preferred Tax's customers is correct. Preferred Tax has not alleged that Leese and the Pianes will conspire to solicit customers. Preferred Tax alleges that Leese and the Pianes have committed civil conspiracy by breaching their contracts, interfering with Preferred Tax's prospective economic advantage, interfering with one another's contracts, engaging in unfair trade practices, misappropriating trade secrets, committing fraud, and engaging in bad faith.

The elements for civil conspiracy under Delaware law are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage. Id., citing Nicolet, Inc. v. Nutt, 525 A.2d 146, 149 (Del. 1987). The cause of action was further explained in Connolly v. Labowitz, 519 A.2d 138, 143 (Del. Super. 1986):

> Civil conspiracy is the combination of two or more persons or entities for an unlawful purpose or for the accomplishment of a lawful purpose by unlawful means, resulting in damage.

> [Citations omitted.] Civil conspiracy is not an independent cause of action in Delaware. [Citation omitted.] To be actionable a civil conspiracy must embody an underlying wrong which would be actionable in the absence of the conspiracy. 'The gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy.' [Citation omitted.] Coverdale v. Fisher, 1993 Del. Super. LEXIS 345, 10-11 (Del. Super. 1993).

There must be knowing participation in a conspiracy. *Id.* In the case of In re Asbestos Litigation, 509 A.2d 1116 (Del. Super 1986), aff'd sub nom., Nicolet, Inc. v. Nutt, supra, the Superior Court expounded on what is required to establish "knowing participation":

> 'Knowing participation' in a conspiracy, however, need not be an express agreement; tacit ratification is sufficient. [Citations omitted.] . . . Knowledge of the . . . wrongful conduct is not, by itself, sufficient to show 'knowing participation,' but once that is coupled with a consistent later act, an inference of knowing participation is permissible. [Citation omitted.] Likewise, consciously parallel action is not sufficient to show conspiracy, but it is enough that knowing concerted action was contemplated or invited, the defendant adhered to the scheme and participated in it. Coverdale v. Fisher, supra.

Oftentimes, a conspiracy is proven by circumstantial evidence, Nutt v. A.C. & S. Co., Inc., 517 A.2d 690, 696 (Del. Super. 1986), and therefore, "reasonable latitude may be permitted in establishing facts from which the conspiracy may be inferred." Id. at 12, citing Connolly v. Labowitz, supra at 144. In the case at bar, the defendants (Leese, Piane, and Piane, Jr.) conspired to breach their contracts with Preferred Tax, resulting in a

34

mutually beneficial contract between the defendants, and damages to Preferred Tax. The defendants' underlying wrongs of breaching their contracts, interfering with Preferred Tax's prospective economic advantage, interfering with one another's contracts, engaging in unfair trade practices, misappropriating trade secrets, committing fraud, and engaging in bad faith support the civil conspiracy claim.

   H.    Preferred Tax Has Adequately Alleged Bad Faith (Count VIII).

   Bad faith "imposes liability on conduct which defeats the purpose of the contract." This is precisely what Preferred Tax alleges Defendants did with respect to their own contracts, one another's contracts and their duty to keep trade secrets confidential. However, under Delaware law, bad faith is not limited to contract claims; it applies to any action where "there is some kind of dishonest motive or purpose." Brittingham v. Board of Adjustment of City of Rehoboth Beach, 2005 WL 1653979 (Del. Super. 2005). Considering the extensive list of wrongs committed by the defendants, preferred tax's bad faith claim is well supported.

## **CONCLUSION**

For the foregoing reasons, plaintiff, Preferred Tax Service, Inc.,

respectfully requests that this court deny defendants, Kenneth M. Leese and

The Tax Authority, Inc., motion to dismiss Preferred Tax's Verified

Complaint in its entirety, with prejudice.


J. R. Julian No. 488
J. R. JULIAN, P.A.
824 North Market Street
Suite 1001
P.O. Box 2171
Wilmington, DE 19899-2171
(302) 658-6700

Dated: January 19, 2006               Attorneys for Plaintiff –
JRJ/mal                               Preferred Tax Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2006 I electronically filed Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Verified Complaint in its Entirety with the Clerk of the Court using CM/EMF which will send notification of such filing to the following:

> Erin D. Edwards, Esq.
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899-0391

> Michael J. Hood, Esq.
> 1701 Shallcross Avenue
> Suite C-1
> P.O. Box 1471
> Wilmington, DE 19899-1471

BY: _____
J. R. Julian
J. R. JULIAN, P.A.
824 Market Street
Suite 1001
P.O. Box 2171
Wilmington, DE 19899