IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC., :
:
: Civil Action No.
Plaintiff, : 1:05-CV-00872-SLR
:
v. :
:
THE TAX AUTHORITY, INC., et al., :
:
Defendants. :

---

**REPLY BRIEF IN SUPPORT OF MOTION OF
THE TAX AUTHORITY, INC. AND KENNETH M. LEESE,
TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT**

---

**OF COUNSEL:**
Howard A. Rosenthal
Patrick J. Doran
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

Erin D. Edwards
   Delaware Bar I.D. 4392
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6552
(302) 576-3471 (Fax)
   Attorney for Defendants
   The Tax Authority and
   Kenneth M. Leese

DATE FILED: January 24, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

    A.    There Is No Federal Private Right Of
          Action For Mail Or Wire Fraud . . . . . . . . 1

    B.    Plaintiff Has Failed To Suggest Any
          Basis For A RICO Claim . . . . . . . . . . . 3

    C.    Assuming Somehow That There Exists Some
          Basis For Federal Jurisdiction,
          Plaintiff's State Law Claims Are
          Clearly Defective . . . . . . . . . . . . . . 6

        1.    Plaintiff's Contract Claims Are
             Barred By The Statute Of Frauds . . . . 6

        2.    Plaintiff Has Failed To State Any
             Valid Claim For Misappropriation Of
             Protected Trade Secrets . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 11

**TABLE OF AUTHORITIES**

**CASES**

Banks v. Wolk, 918 F.2d 418 (3d Cir. 1990) . . . . . . . 5

Bell v. Health-Mor, Inc., 549 F.2d 342
(5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . 2

Bonavitacola Electric Contractor, Inc. v. Boro
Developers, Inc., 2003 U.S.App.LEXIS 27918 (3d Cir.
October 30, 2003), cert. denied, 543 U.S. 818,
125 S.Ct. 57 (2004) . . . . . . . . . . . . . . . . . 4-5

Chrysler Corp. v. Chaplake Holdings, Ltd.,
822 A.2d 1024 (Del. 2003) . . . . . . . . . . . . . . . 9

Fleishman v. Scilley, 2004 U.S.Dist.LEXIS 20066
(E.D.Pa. September 30, 2004) . . . . . . . . . . . . . 3

H.J. Inc. v. Northwestern Bell Telephone Co.,
492 U.S. 229, 109 S.Ct. 2893 (1989) . . . . . . . . . . 4

Hindes v. Castle, 937 F.2d 868 (3d Cir. 1991) . . . . . 5

Huntington Homeowners Association, Inc. v. 706
Investments, 1999 Del.Ch.LEXIS 119 (Del.Ch.
1999) . . . . . . . . . . . . . . . . . . . . . . . 7-9

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d
1406 (3d Cir.), cert. denied, 501 U.S. 1222,
111 S.Ct. 2839 (1991) . . . . . . . . . . . . . . . . . 5

Marshall-Silver Construction Company, Inc. v.
Mendel, 894 F.2d 593 (3d Cir. 1990) . . . . . . . . . . 5

Napper v. Anderson, Henley, Shields, Bradford &
Pritchard, 500 F.2d 634 (5th Cir. 1974), cert.
denied, 423 U.S. 837, 96 S.Ct. 65 (1975) . . . . . . . 2

Nepa v. Marta, 348 A.2d 182 (Del. 1975) . . . . . . . . 9

Ryan v. Ohio Edison Co., 611 F.2d 1170 (6th
Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . 2

Sanirab Corp. v. Sunroc Corp., 2002 Del.Super.
LEXIS 350 (Del.Super. April 29, 2002) . . . . . . . . 10

Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS 170
(Del.Super. April 24, 2001), aff'd, 812 A.2d 894
(Del. 2002) . . . . . . . . . . . . . . . . . . . . . 10

Stern v. Prudential Property & Casualty
Insurance Co., 1994 U.S.Dist.LEXIS 9022 (E.D.Pa.
June 30, 1994) . . . . . . . . . . . . . . . . . . . . 2

<u>Wisdom v. First Midwest Bank of Poplar Bluff</u>,
167 F.3d 402 (8th Cir. 1999) . . . . . . . . . . . . . . 2

**STATUTES**

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . 1

6 Del.C. §§ 2001, <u>et</u> <u>seq.</u> . . . . . . . . . . . . . . . . 10

6 Del.C. § 2001(4)b . . . . . . . . . . . . . . . . . . 11

6 Del.C. § 2007(a) . . . . . . . . . . . . . . . . . . 10

## INTRODUCTION

Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss (D.I. No. 22)("Answering Brief") fails to address the central flaw of the Complaint: plaintiff has not and cannot state a valid RICO claim. Rather than address defendants' Brief in Support of Motion to Dismiss, as amended (D.I. Nos. 10 and 13), plaintiff offers nothing more than self-serving and unsubstantiated conclusions. Most disturbing, plaintiff's primary response -- that it stated "claims" under the federal mail and wire fraud statutes -- has absolutely no legal basis as there simply is no private right of action under those statutes.

In the absence of a federal claim, particularly as plaintiff now admits that its allegation of diversity jurisdiction was false, this action must be dismissed. [See Complaint (D.I. No. 1) at 1, ¶¶ 1, 7-9; Amended Brief in Support of Motion to Dismiss (D.I. No. 13) at 14-15; Answering Brief (D.I. No. 22) at 1, 11, 16 (plaintiff now only cites jurisdiction pursuant to 28 U.S.C. § 1331).] Even were that not the case, plaintiff still has not provided any valid basis for its state law claims.

**A. There Is No Federal Private Right Of Action For Mail Or Wire Fraud.**

In a desperate attempt to save federal jurisdiction, and without citing any legal standard or authority, plaintiff asserts that it has stated valid causes of action under the federal criminal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. [See Answering Brief (D.I. No. 22)

1

at 11-16.] Putting aside the question of whether plaintiff has alleged any fraudulent misrepresentation or detrimental reliance sufficient to state _any_ fraud claim -- which defendants deny for the reasons set forth in their opening Brief (D.I. No. 13)[1] -- plaintiff's suggestion of a _federal_ private right of action for mail or wire fraud is without _any_ legal merit and borders on lack of candor with the Court. See <u>Wisdom v. First Midwest Bank of Poplar Bluff</u>, 167 F.3d 402, 408 (8th Cir. 1999); <u>Ryan v. Ohio Edison Co.</u>, 611 F.2d 1170, 1178 (6th Cir. 1979); <u>Bell v. Health-Mor, Inc.</u>, 549 F.2d 342, 346 (5th Cir. 1977); <u>Napper v. Anderson, Henley, Shields, Bradford & Pritchard</u>, 500 F.2d 634, 636 (5th Cir. 1974), <u>cert. denied</u>, 423 U.S. 837, 96 S.Ct. 65 (1975); <u>Stern v. Prudential Property & Casualty Insurance</u>

---

[1] As previously noted in defendants' opening Brief (D.I. No. 13), PTS' allegations of fraud fall well short of the common law prerequisites. Principally, plaintiff has not identified any false or deceitful misrepresentation. At most, as made clear in the Answering Brief (D.I. No. 22), plaintiff simply claims that defendants did not advise plaintiff in advance of their breach of the purported oral agreement not to lease the Piane Defendants' Property unless Tax Authority acquired plaintiff's business. This is not fraud, but simple breach of contract. The lack of any fraud or deceit is emphasized by plaintiff's admission that _it_ chose to terminate the negotiations with Tax Authority. In addition, plaintiff still has not alleged detrimental reliance on _any_ fraudulent act or omission. Plaintiff's introduction of the Piane Defendants and Tax Authority cannot suffice, as those parties were free to enter into a lease with any willing party without plaintiff's permission. Nor is plaintiff's disclosure of any alleged "confidential" information sufficient, as plaintiff does not allege that it required any confidentiality agreement or restrictive covenant. Finally, plaintiff's allegation that Tax Authority represented to the Piane Defendants that the purchase was a "done deal" cannot form the basis for any fraud upon plaintiff, as such a representation did not induce _plaintiff_ to take any action, much less action to its detriment.

2

Co., 1994 U.S.Dist.LEXIS 9022, *4 (E.D.Pa. June 30, 1994); Fleishman v. Scilley, 2004 U.S.Dist.LEXIS 20066, *3 (E.D.Pa. September 30, 2004). Plaintiff cites no contrary authority, and there is none. In fact, the excerpted portions of federal law are derived from the federal criminal laws, and have no application in this civil action. Plaintiff's desperation to save this defective federal action (now acknowledging the lack of diversity) apparently led it again to ignore the clear law.

### B. Plaintiff Has Failed To Suggest Any Basis For A RICO Claim.

In a vain effort to salvage its less than one paragraph "RICO claim," plaintiff concocts allegations which do not appear in its Complaint. In two short pages (much of which is simply devoted to quoting the statute), plaintiff contends that the racketeering "enterprise" -- a word which does not appear in the Complaint -- is either Tax Authority's new tax preparation business in Wilmington or the association of Tax Authority and the Piane Defendants. [Answering Brief (D.I. No. 22) at 18.] According to plaintiff, the Complaint alleges a "pattern of racketeering" by virtue of the fact that it has alleged "four predicate acts [of mail and wire fraud] related to the single illegal scheme through numerous instances of fraud." [Id.]

Without regard to rules of pleading, this facile response ignores the statutory requirements to establish a valid RICO claim, as well as all of the case law developed under RICO. The "pattern" element bears particular emphasis

3

here, as no possible amendment could alter the fact that, at its core, this Complaint describes a single, discrete and short-lived "scheme" with a single purpose and victim (even assuming the Complaint can somehow be construed to allege any deceptive conduct or fraud). Plaintiff itself acknowledges this when it refers to the "single illegal scheme" purportedly described in the Complaint. [Answering Brief (D.I. No. 22) at 18.] At most, plaintiff claims that Tax Authority, without a good faith intention to actually acquire plaintiff's business, entered into discussions to do so in order to obtain (1) a customer list and (2) the name of a local landlord. Plaintiff could allege no more as nothing prohibited Tax Authority from operating a competing business in Wilmington, exactly as it already was doing.

Under well settled precedent, these allegations, no matter how recast, and even as now expanded in the Answering Brief, do not rise to the level of a related and continuous pattern of criminal activity which threatens ongoing or future criminal conduct, as is critically necessary for a civil RICO claim. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 2900-01 (1989). Indeed, the Third Circuit repeatedly has dismissed RICO claims based on allegations far more extensive than plaintiff's allegations in this case.

For example, in Bonavitacola Electric Contractor, Inc. v. Boro Developers, Inc., 2003 U.S.App.LEXIS 27918 (3d Cir. October 30, 2003), cert. denied, 543 U.S. 818, 125 S.Ct. 57 (2004), the Court affirmed the dismissal of a RICO claim in

4

which plaintiffs -- an electric contractor along with two labor unions and an individual -- alleged that a competing contractor ("Boro") and two of its officers engaged in a ten-year scheme to fraudulently obtain contracts from three school districts. The Third Circuit held that plaintiffs had not alleged a valid pattern of racketeering, as there was no relationship between the three school district contracts, and no threat of continuous criminal conduct:

> "[N]othing in the Amended Complaint suggests that Boro's alleged fraudulent transactions are its regular way of doing business. There is no allegation that Boro submitted other bids in which they falsely promised to comply with prevailing wage law in order to get that business. As the District Court properly noted, 'if, for example, over these eight years, Defendants had 100 different contracts, the fact that they may have committed fraud as to three of them ... would be plainly insufficient to support a scheme under RICO." 2003 U.S.App.LEXIS 27918 at *14.

See Marshall-Silver Construction Company, Inc. v. Mendel, 894 F.2d 593, 596-7 (3d Cir. 1990)(no pattern based on seven-month scheme to bankrupt business); Banks v. Wolk, 918 F.2d 418 (3d Cir. 1990)(no pattern based on single victim, single injury scheme); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1417-8 (3d Cir.), cert. denied, 501 U.S. 1222, 111 S.Ct. 2839 (1991)(mailings related to a single fraud of even uncertain duration do not create a pattern); Hindes v. Castle, 937 F.2d 868 (3d Cir. 1991)

5

(eight-month scheme involving mass mailings failed to satisfy the "continuity" necessary for a RICO pattern).

This authority is utterly ignored by plaintiff in its Answering Brief. In fact, plaintiff has not cited a single decision, nor could it, where a federal court has allowed a RICO claim to proceed on the basis of a single fraud, single goal, single victim scheme completed in a matter of four months.[2]

This remains no more than a commercial dispute, to which RICO has no possibly proper application. Thus, there can be no basis for federal jurisdiction as plaintiff admits that there is no diversity.

### C. Assuming Somehow That There Exists Some Basis For Federal Jurisdiction, Plaintiff's State Law Claims Are Clearly Defective.

#### 1. Plaintiff's Contract Claims Are Barred By The Statute Of Frauds.

Plaintiff's efforts to avoid the Statute of Frauds are unavailing. Plaintiff now argues that it has stated breach of contract claims based on four agreements. The first two agreements are plaintiff's parallel agreements with Tax Authority and the Piane Defendants to introduce the parties in exchange for an "express or implied promise" that they would not enter into a lease unless Tax Authority acquired

---

[2] Assuming there were any predicate acts of mail and wire fraud in furtherance of the scheme alleged in the Complaint (which defendants deny), they necessarily occurred approximately between June 16, 2005 (the date when Tax Authority and plaintiff began to negotiate) and early October, 2005 (when plaintiff admits it was advised of the Lease and Tax Authority's prepayment of the first year of rent). [See Complaint (D.I. No. 1), ¶¶ 16-47.]

6

plaintiff. [Answering Brief at 20.] Plaintiff cavalierly dismisses the Statute of Frauds by concluding that "the agreements at issue do not concern interests in land" but rather "the use of confidential information" (that is, the introduction of the parties to one another). [Answering Brief (D.I. No. 22) at 21.] In plaintiff's myopic view, an oral agreement to sell real property for $100,000 would not concern an interest in land, but rather the payment of money. Likewise, plaintiff argues that, even if barred by the Statute of Frauds, the agreements are enforceable under the doctrine of promissory estoppel simply because it introduced Tax Authority and the Piane Defendants. Plaintiff is wrong in every respect.

In Huntington Homeowners Association, Inc. v. 706 Investments, 1999 Del.Ch.LEXIS 119, *8 (Del.Ch. 1999), plaintiffs, homeowners' associations and various public officials, alleged that a real estate developer ("Vari") had orally promised that he would not lease space in a proposed shopping center to any business that sold alcoholic beverages, and that this promise induced them to waive their right to object to the development of the shopping center. The Chancery Court held that the alleged oral promise was plainly subject to the Statute of Frauds as concerning an interest in land. Moreover, the Court rejected plaintiffs' argument -- like the argument in this case -- that the doctrine of promissory estoppel applied simply because, by not objecting to the development, they had performed their part of the promise. The Court noted that promissory

7

estoppel specifically requires that the promisee make "expenditures" in reliance on the promise, and that plaintiffs had not done so:

> "Plaintiffs do not claim to have made any expenditure of monies in reliance on Mr. Vari's alleged representations. They did not buy property from the Vari defendants on the basis of Mr. Vari's alleged representations and had no business relationship of any kind with the Vari defendants. In the circumstances, I conclude that, having made no 'expenditures' of money in reliance on the alleged promise, they are not entitled to rely on the principles of promissory estoppel embodied in section 524 of the Restatement of Property to establish the existence and nature of the servitude they seek to enforce against the Vari defendants. Instead, the representations or promises alleged to give rise to that servitude are within the scope of the Statute of Frauds and are made unenforceable by its terms." 1999 Del.Ch.LEXIS 119 at *12-13 (Footnote omitted).

Similarly here, even assuming defendants made the alleged promise not to enter into a lease, plaintiff made no expenditures and suffered no other form of detrimental reliance induced by that promise. The fact that plaintiff introduced the parties cannot give rise to a promissory estoppel, just like the plaintiffs' waiver of their right to

8

object was found insufficient as a matter of law in Huntington Homeowners.[3]

The other two "agreements" on which plaintiff now focuses -- its parallel agreements with Tax Authority and the Piane Defendants to "forgive" them from breaching the underlying oral agreement, in exchange for their respective agreements to release or terminate the Lease -- do not appear in the Complaint. More important, these fabricated agreements are also subject to the Statute of Frauds as they too concern an interest in real property -- the Lease itself. Plaintiff's repeated and blatant attempts to redefine the the allegations of the Complaint merely confirm their lack of merit.

Putting aside the other grounds set forth in the Motion to Dismiss, in the absence of any enforceable agreement, plaintiff's related common law claims, whether sounding in contract or tort (such as its "tortious interference" and "bad faith" claims), cannot survive.[4] Moreover, plaintiff's

---

[3] The decisions cited by plaintiff are inapposite. Nepa v. Marta, 348 A.2d 182 (Del. 1975), did not involve an interest in real estate, but rather a commission, and there was no dispute that the broker had originally brought together the parties who later entered into a lease. Chrysler Corp. v. Chaplake Holdings, Ltd., 822 A.2d 1024 (Del. 2003), did not address the Statute of Frauds (in fact, the Court found that defendant had waived any Statute of Frauds defense), and involved a claim where the promisee had incurred substantial expenses based on Chrysler's representation that it was expanding its Lamborghini business.

[4] As explained in defendants' opening Brief, the purported contract claim is independently barred by the lack of any consideration supporting the alleged agreement. Plaintiff still has not identified any legally enforceable consideration it extended, particularly as it acknowledges
(continued...)

9

tort claims are also barred by the economic loss doctrine, and for the other reasons set forth in the Motion to Dismiss.

### 2. Plaintiff Has Failed To State Any Valid Claim For Misappropriation Of Protected Trade Secrets.

The only claims by plaintiff which do not depend entirely on an enforceable agreement are its "misappropriation" claims. However, as a matter of law, any common law misappropriation claims are barred by Section 2007 of the Delaware Uniform Trade Secrets Act, 6 Del.C. §§ 2001, et seq. ("UTSA"), which "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." 6 Del.C. § 2007(a); see Sanirab Corp. v. Sunroc Corp., 2002 Del. Super.LEXIS 350, *6 (Del.Super. April 29, 2002); Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS 170, *14 (Del.Super. April 24, 2001), aff'd, 812 A.2d 894 (Del. 2002)(Court dismissed plaintiff's common law claims of unfair competition and civil conspiracy based on the UTSA).

Simply suggesting to avoid dismissal, that plaintiff's "claims do not arise solely from the misappropriation of a trade secret" [see Answering Brief (D.I. No. 22) at 27] is

---

⁴(...continued)
that Tax Authority never was bound to proceed with any transaction, and was at all times free to lease any space or compete with plaintiff in any fashion. Essentially, plaintiff contends that Tax Authority was contractually bound not to lease the Property because (a) plaintiff talked to Tax Authority about a possible transaction and (b) plaintiff provided Tax Authority with the name of a local landlord without any corresponding benefit to Tax Authority (which could compete with plaintiff without any restriction).

insufficient in light of the actual allegations in the Complaint and, moreover, a sheer fabrication in view of the remaining portions of the Answering Brief itself [see, e.g., id. at 21 ("The agreements concern the use of confidential information....")].

The only possible "misappropriation" claim is one directly under UTSA. In this regard, while plaintiff goes to great length to describe the various types of "secret" information it purportedly disclosed to Tax Authority, it does not dispute that UTSA only applies to a trade secret which "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." 6 Del.C. § 2001(4)b. Even assuming, arguendo, that plaintiff disclosed information to Tax Authority which otherwise constituted a trade secret -- Tax Authority denies that a list of names and charges could ever qualify -- plaintiff still has not alleged that it made any effort to maintain the secrecy of any information. Much to the contrary, plaintiff's own allegations admit that any disclosure of information to Tax Authority was purely voluntarily, without any protective agreement or designation, and without any assurance that Tax Authority would ultimately acquire plaintiff's business. In these circumstances, there can be no claim that Tax Authority misappropriated anything, much less a legally recognized trade secret.

## CONCLUSION

As now demonstrated by the Answering Brief, there is no valid legal basis for this Court's exercise of subject

11

matter jurisdiction. Simplistic references to federal statutes cannot change the obvious result. In light of the now admitted lack of diversity, and for the other reasons set forth in this Reply Brief, as well as in defendants' opening Brief, this case should be dismissed in its entirety.

/s/ Erin D. Edwards

Erin D. Edwards (No. 4392)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6552
(302) 576-3471 (Fax)
   Attorney for Defendants
   The Tax Authority and
   Kenneth M. Leese

**OF COUNSEL**:
Howard A. Rosenthal
Patrick J. Doran
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

12