IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PREFERRED TAX SERVICE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 05-872-SLR |
| ) | |
| THE TAX AUTHORITY, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

At Wilmington this 11th day of April, 2006, having reviewed plaintiff's motion for a temporary restraining order and defendants' motions to dismiss, and the papers filed in connection therewith;

IT IS ORDERED that plaintiff's motion (D.I. 2) is denied and defendants' motions (D.I. 9, 17) are granted, for the reasons that follow:

1. **Background facts.** According to the complaint (D.I. 1), plaintiff Preferred Tax Service, Inc. ("Preferred Tax") is a Delaware corporation that is in the business of preparing federal and state income tax returns for individuals and businesses. Edwin Swan ("Swan") is the president and owner of Preferred Tax. Defendant The Tax Authority, Inc. ("The Tax Authority") is a New Jersey corporation[1] that is in the business of preparing federal

---

[1]The Tax Authority operates under the name Jackson Hewitt® Tax Service as a franchisee of Jackson Hewitt Tax Service, Inc.,

and state income tax returns for individuals. The Tax Authority has its principal place of business in Maple Shade, New Jersey. Defendant Kenneth M. Leese ("Leese"), an individual and resident of New Jersey, is the president and an owner of The Tax Authority. Defendants Robert A. Piane and Robert A. Piane, Jr. (collectively "Piane") are individuals who reside in Delaware and who own (with others) and manage the building located across the street from Preferred Tax ("the Building") in Wilmington, Delaware.

    2. In June 2005, Preferred Tax and The Tax Authority commenced negotiations over the sale of Preferred Tax to The Tax Authority. During the negotiations, Leese (representing The Tax Authority) and Swan (representing Preferred Tax) agreed that adequate office space was a key negotiating point for the sale. At or about the same time, Swan secured the agreement of Piane to convert and rent part of the Building to The Tax Authority if it were to purchase Preferred Tax. By July 7, 2005, Leese had secured information from Swan about the Building and about Preferred Tax and its employees, its customer list, pricing strategy, marketing methods, and operational systems. Swan received no further communications regarding the deal until August 8, 2005.

---

a Delaware corporation. For purposes of this decision, the court will not distinguish between defendant The Tax Authority and the Jackson Hewitt entities.

3. On August 8, 2005, Leese emailed to Swan an offer to purchase Preferred Tax ("the First Offer"). Swan learned on August 10, 2005 that The Tax Authority had already signed a lease ("the Lease") for office space in the Building. On August 11, 2005, Piane received $14,100 from The Tax Authority in payment for the first year's rent. Neither Piane nor Leese informed Swan of the prepaid rent.

4. Swan did not accept the First Offer and, indeed, declined to continue the negotiations for a period of time because the Lease had been executed before the First Offer had been sent. However, negotiations ultimately did resume and, on September 19, 2005, The Tax Authority submitted a second offer ("the Second Offer") to purchase Preferred Tax. On September 30, 2005, Swan rejected the Second Offer but informed Leese that the sale of Preferred Tax could be revisited after the 2006 tax season if both parties were still interested. When Swan so informed Piane and sought termination of the Lease, Swan was told that the $14,100 had already been spent by Piane.

5. By October 2005, an impasse had been reached between the parties to the deal. Swan had rejected both the First and Second Offers made by The Tax Authority and was unwilling to negotiate further. The Tax Authority was not willing to void the Lease unless the $14,100 prepayment was refunded by Piane. Piane was not willing to refund the money or to accept a loan in that

amount from Swan in order to void the Lease because, according to Piane, there was never an agreement between Swan and Piane that conditioned Piane's ability to do business with The Tax Authority on its purchase of Preferred Tax.

6. Preferred Tax filed its verified complaint and request for injunctive relief in December 2005, asserting eight causes of action: (1) breach of agreement; (2) tortious interference with prospective economic advantage; (3) tort, intentional tort and tortious interference with contract; (4) unfair trade practices; (5) misappropriation of trade secrets; (6) civil conspiracy; (7) common law fraud, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962); and (8) bad faith. According to the complaint, jurisdiction in this matter is conferred on the court through the operation of 28 U.S.C. § 1332, diversity of citizenship, and of 28 U.S.C. § 1331, federal question.

7. It is admitted by Preferred Tax that the court does not have diversity jurisdiction, because the Piane defendants are citizens of Delaware, as is Preferred Tax. The question posed by defendants' motions to dismiss, therefore, is whether the court has jurisdiction, pursuant to 28 U.S.C. § 1331, over the subject matter presented by the verified complaint.

8. **Standard of review.** "[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) (quoting Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988)). "A temporary restraining order may be granted without written or oral notice to the adverse party . . . only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required." Fed. R. Civ. P. 65(b).

9. A plaintiff has the burden of making a "clear showing of immediate irreparable injury." Cont'l Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 359 (3d Cir. 1980) (quoting Ammond v. McGahn, 532 F.2d 325, 329 (3d Cir. 1976)). The "requisite feared injury or harm must be irreparable not merely serious or substantial." Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977). "[T]he injury must be of a peculiar nature, so that compensation in money alone cannot atone for it." Id. (internal citation omitted).

10. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle it to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

11. **Analysis.** The RICO statute makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). In order to plead a violation of RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir.

6

2004). "A pattern of racketeering activity requires at least two predicate acts of racketeering" which may include such conduct as mail or wire fraud, 18 U.S.C. §§ 1341 and 1343." Id. However,

> a person cannot "be subjected to the sanctions of [RICO] simply for committing two widely separated and isolated criminal offenses . . . ." Instead, "[t]he term 'pattern' itself requires the showing of a 'relationship' between the predicates . . . and of 'the threat of continuing activity. . . .'"

H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989)(citations omitted). The Supreme Court in H.J. Inc. went on to describe RICO's pattern requirement in terms of the relationship of the defendant's criminal acts one to another:

> "Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are inter-related by distinguishing characteristics and are not isolated events."

Id. at 240 (citation omitted). In describing the second prong of the pattern requirement, the Court explained that

> "[c]ontinuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . It is, in either case, centrally a temporal concept - and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements. . . . **Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.**

Id. at 241-42 (emphasis added). Consistent with the above analysis, the Third Circuit has found that "conduct lasting no more than twelve months [does] not meet the standard for closed-ended continuity." Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir. 1995). Accord Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 610-11 (3d Cir. 1991)(fraudulent conduct lasting twelve months does not establish closed-ended continuity); Hindes v. Castle, 937 F.2d 868, 875 (3d Cir. 1991)(eight month period of predicate acts without a threat of future criminal conduct does not satisfy continuity requirement); Kehr Packages v. Fidelcor, Inc., 926 F.2d at 1413 (same); Banks v. Wolk, 918 F.2d 418, 422-23 (3d Cir. 1990)(same); Marshall-Silver Constr. Co. v. Mendel, 894 F.2d 593 (3d Cir. 1990)(seven month single-victim, single-injury scheme does not satisfy continuity requirement), overruled on other grounds by Tabas v. Tabas, 47 F.3d at 1293 n.17.

12. Assuming for purposes of this motion practice that plaintiff Preferred Tax has alleged sufficient facts to present the elements of either mail fraud or wire fraud or both, nevertheless, the allegations of the complaint present no more than a single victim, single-injury scheme that lasted five months. The complaint does not allege facts sufficient to satisfy the continuity requirement of RICO. At best, the complaint alleges facts that may provide a basis for pursuing commercial litigation under state law.

8

13. Having found that the court has no subject matter jurisdiction over count VII of the complaint, the court declines to exercise supplemental jurisdiction over the remaining state causes of action pursuant to 28 U.S.C. § 1367.

_____
United States District Judge
