## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC.,   :
                               :  Civil Action No.
           Plaintiff,     :  1:05-CV-00872-SLR
                               :
       v.                 :
                               :
THE TAX AUTHORITY, INC., <u>et al.</u>,:
                               :
          Defendants.    :

---

### BRIEF IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 11, F.R.C.P., OF DEFENDANTS, THE TAX AUTHORITY, INC., AND KENNETH M. LEESE.

---

**OF COUNSEL**:
Howard A. Rosenthal
Patrick J. Doran
Kevin C. Rakowski
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)


Dated: May 11, 2006

Erin D. Edwards (No. 4392)
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6552
(302) 576-3471 (Fax)
  *Attorney for Defendants*
  *The Tax Authority and*
  *Kenneth M. Leese*

**TABLE OF CONTENTS**

                                                          **PAGE**

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . 3

RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . 4

A R G U M E N T . . . . . . . . . . . . . . . . . . . . 8

    A.   Conduct Violative Of Rule 11  . . . . . . . . 8

    B.   There Was No Reasonable Legal Basis For
        PTS' Claims . . . . . . . . . . . . . . . . . 11

    C.   There Was No Factual Support For PTS'
        Allegations . . . . . . . . . . . . . . . . . 15

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

**CASES**

Banks v. Wolk, 918 F.2d 418 (3d Cir. 1990) . . . . . . . 12

Bell v. Health-Mor, Inc., 549 F.2d 342 (5th Cir. 1977) . 13

Bonavitacola Electric Contractor, Inc. v. Boro
Developers, Inc., 2003 U.S.App. LEXIS 27918 (3d Cir.
October 30, 2003), cert. denied, 543 U.S. 818, 125
S.Ct. 57 (2004) . . . . . . . . . . . . . . . . . . . . 12

Bradgate Associates, Inc. v. Fellows, Read & Associates,
Inc., 999 F.2d 745 (3d Cir. 1993) . . . . . . . . . . .  9

Cooter & Gell v. Hartmarx Corporation., 496 U.S. 384,
110 S.Ct. 2447 (1990) . . . . . . . . . . . . . . . . .  8

Divane v. Krull Electric Co. Inc., 200 F.3d 1020
(7th Cir. 1999) . . . . . . . . . . . . . . . . . . . .  8

Fellheimer, Eichen & Braverman, P.C. v. Charter
Technologies, Incorporated., 57 F.3d 1215 (3d Cir.
1995) . . . . . . . . . . . . . . . . . . . . . . . . .  9

Fleishman v. Scilley, No. 2004 U.S.Dist.LEXIS 20066
(E.D.Pa. September 30, 2004) . . . . . . . . . . . . . 13

Gaiardo v. Ethyl Corporation, 835 F.2d 479 (3d Cir.
1987) . . . . . . . . . . . . . . . . . . . . . . . . . 10

H.J. Inc. v. Northwestern Bell Telephone Company,
492 U.S. 229, 109 S.Ct. 2893 (1989) . . . . . . . . . . 12

Hindes v. Castle, 937 F.2d 868 (3d Cir. 1991) . . . . . 12

Huntington Homeowners Association, Inc. v. 706
Investments, 1999 Del.Ch.LEXIS 119 (Del.Ch. 1999) . . . 13

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406
(3d Cir.), cert. denied, 501 U.S. 1222, 111 S.Ct. 2839
(1991) . . . . . . . . . . . . . . . . . . . . . . . . 12

Loving v. Pirelli Cable Corporation, 11 F.Supp.2d 480
(D.Del. 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999) . 10,15

Marshall-Silver Construction Company, Inc. v. Mendel,
894 F.2d 593 (3d Cir. 1990) . . . . . . . . . . . . . . 12

Napper v. Anderson, Henley, Shields, Bradford &
Pritchard,500 F.2d 634 (5th Cir. 1974), cert. denied,
423 U.S. 837, 96 S.Ct. 65 (1975) . . . . . . . . . . . 13

Perpetual Securities, Inc. v. Tang, 290 F.3d 132
(7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 8

Powell v. Squire, Sanders & Dempsey, 990 F. Supp.
541 (E.D. Ohio 1998) . . . . . . . . . . . . . . . . . . 8

Project 74 Allentown, Inc. v. Frost, 143 F.R.D. 77
(E.D.Pa. 1992), aff'd, 998 F.2d 1004 (3d Cir. 1993) . . . 10

Ryan v. Ohio Edison Company, 611 F.2d 1170 (6th Cir.
1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sanirab Corp. v. Sunroc Corp., 2002 Del.Super.LEXIS 350
(Del.Super. April 29, 2002) . . . . . . . . . . . . . . . 14

Savor, Inc. v. FMR Corp., 2001 Del.Super.LEXIS 170
(Del.Super. April 24, 2001) . . . . . . . . . . . . . . . 14

Simmerman v. Corino, 27 F.3d 58 (3d Cir. 1994) . . . . . 11

Stern v. Prudential Prop. & Cas. Ins. Co., 1994 U.S.
Dist.LEXIS 9022 (E.D.Pa. June 30, 1994) . . . . . . . . . 13

Turner Construction Company v. First Indemnity of
America Insurance Company, 829 F.Supp. 752 (E.D.Pa.
1993), aff'd, 22 F.3d 303 (3d Cir. 1994) . . . . . . . . 9

Willy v. Coastal Corp., 503 U.S. 131, 137-9 (1992) . . . 8

Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d
402 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . 13

**STATUTES AND RULES**

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. §§ 1961-1968 . . . . . . . . . . . . . . . . . 1

6 Del.C. §§ 2001, et seq. . . . . . . . . . . . . . . . . 14

6 Del.C. § 2007(a) . . . . . . . . . . . . . . . . . . . 14

6 Del.C. § 2714(a) . . . . . . . . . . . . . . . . . . . 13

Rule 11(b), F.R.C.P. . . . . . . . . . . . . . . . . . . 8

Rule 11(b)(2), F.R.C.P. . . . . . . . . . . . . . . . . . 9,11

Rule 11(b)(3), F.R.C.P. . . . . . . . . . . . . . . . . . 15

Rule 11(c)(2)(A), F.R.C.P. . . . . . . . . . . . . . . . 9

## NATURE AND STAGE OF PROCEEDINGS.

In this action, plaintiff, Preferred Tax Service, Inc. ("PTS"), which operates a tax preparation business in Wilmington, primarily alleged that defendants, The Tax Authority, Inc. ("Tax Authority") and its principal, Kenneth M. Leese ("Leese"), breached an oral agreement not to lease office space from defendants Robert A. Piane and Robert A. Piane, Jr. (collectively "Piane Defendants") until such time as the Tax Authority, which competes with PTS, had reached an agreement to purchase PTS' tax preparation business.  PTS also claimed that Tax Authority misappropriated confidential information disclosed by PTS in the course of the parties' negotiations for the sale of PTS.

In its Verified Complaint [D.I. No. 1], PTS purported to state eight claims against all defendants:  breach of agreement (Count I), tortious interference with prospective economic advantage (Count II), "tort, intentional tort and tortuous interference with contract" (Count III), unfair trade practices (Count IV), misappropriation of trade secrets (Count V), civil conspiracy (Count VI), common law fraud and a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO")(Count VII), and "bad faith" (Count VIII).

Tax Authority and Leese filed a Motion to Dismiss on December 30, 2005 [D.I. Nos. 9 and 10], principally because PTS failed to state any valid RICO claim, having not alleged any of the required statutory elements.  In the absence of that claim, as there clearly was no diversity between PTS

1

and all defendants (the Piane Defendants, like PTS, are citizens of Delaware), there was no subject matter jurisdiction for this entire action.  Moreover, each of PTS' purported state law claims was equally defective.  The Piane Defendants also filed a Motion to Dismiss [D.I. No. 17.], principally for the same reasons.

Contemporaneous with its Complaint, PTS filed a Motion for Temporary Restraining Order ("TRO Motion") [D.I. No. 2], seeking to prevent Tax Authority not only from leasing the Piane Defendants' office space, but also from opening <u>any</u> tax preparation business which would compete with plaintiff in Wilmington.  PTS did not file any affidavit or other evidentiary justification for a preliminary injunction.

Tax Authority and Leese filed a Brief in opposition to PTS' TRO Motion [D.I. No. 14], supported by the Affidavit of Kenneth M. Leese in Opposition to Plaintiff's Motion for Temporary Restraining Order ("Leese Affidavit" or "Leese Aff."), a copy of which is included in the Appendix to this Brief.  As set forth in the Leese Affidavit, there is no factual basis for this action (even putting aside its legal infirmities), as Tax Authority never agreed to restrict its rights to lease any space or compete in the tax preparation business in Wilmington (where it already operated a business), nor did it misappropriate any confidential information.  This was underscored by the Piane Defendants' Brief in opposition to the Motion [D.I. No. 18], and the Affidavit of Robert A. Piane, Jr. ("Piane Affidavit" or "Piane Aff."), which also denies <u>any</u> alleged agreement.

2

After oral argument [D.I. No. 33], by Memorandum Order
dated April 11, 2006 [D.I. No. 35], the Court denied PTS'
TRO Motion and granted defendants' Motion to Dismiss.  The
Court concluded that, even assuming PTS successfully had
alleged any mail or wire fraud, PTS has failed to state any
valid RICO claim, as those allegations "present no more than
a single victim, single-injury scheme that lasted five
months."  [Memorandum Order [D.I. No. 35] at 8.]

### SUMMARY OF ARGUMENT.

This action lacked any valid basis in law or fact, and
is precisely the sort of frivolous action which is addressed
by Rule 11, F.R.C.P.

First, PTS' counsel knew or should have known that this
action is fatally flawed as a matter of law.  As set forth
in defendants' Motion to Dismiss, as amended [D.I. Nos. 9,
10 and 13], and as the Court held in dismissing this action
[D.I. no. 35], PTS' RICO claim, which consisted of one
conclusory sentence without any attempt to plead the
required statutory elements, was far from adequate.  It was
telling that when the Court invited PTS to cite any
authority in support of its RICO claim -- because it had
provided none -- PTS could not do so.  The significance of
this failure, and PTS' conscious disregard of process, is
highlighted by PTS' attempt to plead diversity jurisdiction
when, on the face of the Complaint, there was no diversity
between PTS and the Piane Defendants (all are citizens of
Delaware).  No reasonable lawyer could have concluded that
there was any reasonable basis to bring this action in

3

federal court. Moreover, the purported oral agreement which was the core of this action is plainly subject to the Statute of Frauds. Again, no reasonable lawyer could have concluded that there was any valid basis for PTS' claims.

Second, there was no factual basis for PTS' purported claims. This is made clear by the Leese Affidavit and Piane Affidavit, both of which plainly deny the existence of the purported oral agreement which was the underpinning of this entire action. Indeed, the purported agreement makes absolutely no sense.

### RELEVANT FACTUAL BACKGROUND.

Tax Authority operates tax preparation businesses under the name "Jackson Hewitt" in various locations in Pennsylvania, New Jersey, Delaware and Florida. [Leese Aff., ¶ 2.] In 2003, Tax Authority purchased a Jackson Hewitt franchise in Wilmington, Delaware. [Id., ¶ 4.] Some time in 2004, desiring to further expand its business in Wilmington, Leese, Tax Authority's principal, initially met with PTS' principal, Edwin Swan ("Swan"), concerning Tax Authority's potential acquisition of PTS. [Id., ¶¶ 5, 6.] Swan indicated that he was not interested at that time, but that he would contact Leese if he reconsidered. [Id., ¶ 7.]

In or about June, 2005, Swan contacted Leese and indicated that he was interested in selling PTS. [Id., ¶ 8.] Leese subsequently met with Swan at PTS' offices in Wilmington to discuss a possible transaction. [Id., ¶ 9.] Leese told Swan that, if Tax Authority determined the business desirable, the purchase price would be based upon

4

PTS' gross revenues and that Tax Authority generally was willing to pay up to 100% of gross revenues.  [Id., ¶ 10.] At that meeting, solely in order to document PTS' revenues, Swan provided Leese with a document which merely listed PTS' purported customers and PTS' charges to those individuals, without any contact information or any description of the specific tax services provided.  [Id., ¶ 11; PTS Revenue List (App 14-30).]  Other than reviewing PTS' purported total gross revenues, Tax Authority never reviewed or used this document for any purpose, nor does it intend to do so. [Leese Aff., ¶ 12.]  At no time did Swan or his associate Calvin Harmon, an attorney, suggest the document was confidential or request any form of confidentiality agreement.  [Id., ¶ 13.]  Nor did PTS request that Tax Authority agree to any restrictive covenant prohibiting Tax Authority from doing business in Wilmington if the negotiations were not successful.  [Id., ¶ 14.]

Leese and Swan also discussed the lack of sufficient space at PTS' office for Tax Authority's intended operation at that location in Wilmington.  [Id., ¶ 15.]  Swan later contacted Leese by e-mail and put him in touch with defendant Robert Piane, who owned a building with available space.  [Id., ¶ 16.]  Swan told Leese that he should contact Piane directly and make a deal.  [Id., ¶ 17.]  At no time did Swan suggest that the referral to Piane was conditioned on Tax Authority's agreement that it would only proceed with a lease if it completed the acquisition of PTS.  [Id., ¶ 18.]  Contrary to PTS' allegations, Tax Authority never

5

agreed to any restriction on its right to lease space or
compete with PTS in Wilmington as a condition of the
negotiations. [Id., ¶ 19.]

    Leese did contact Piane, and Tax Authority ultimately
entered into a Lease with Piane dated August 8, 2005
("Lease") for property located at 2132 North Market Street
("Property"). [Id., ¶¶ 20-22; Lease (App. 10-13).] The
Lease was not subject to any conditions relating to the
potential acquisition of PTS, as Tax Authority had
determined to add another location in the Wilmington market
whether or not it acquired PTS. [Id.] Pursuant to the
Lease, Tax Authority agreed to lease the Property for a 69
month term beginning on September 1, 2005, for a monthly
rental of $1,250. [Id.] Tax Authority also agreed to pay
the first year rental in advance at a reduced monthly rate
of $1,175 (for a total first-year payment of $14,100), in
light of renovation costs to be borne by Piane. [Id.]

    At the same time, Tax Authority continued to negotiate
in good faith with PTS. [See Leese Aff., ¶¶ 23-25.] On the
same day Tax Authority entered into the Lease (August 8,
2005), Leese e-mailed a draft, non-binding letter of intent
to Swan, for the purpose of "open[ing] discussion on some of
the basic terms and conditions of the proposed purchase ...
of the Tax Business owned by you." [Id., ¶ 23.] Leese
later transmitted a revised proposal to PTS on September 19,
2005, and believed that the parties were close to an
agreement, as he had proposed to purchase PTS for 120% of
its gross revenues on the condition that Swan and Harmon

6

execute restrictive covenants.  [<u>Id.</u>, ¶ 24.]  However, on
September 30, 2005, without any expressed rationale, Swan
advised Leese that he was not going to sell PTS to Tax
Authority.  [<u>Id.</u>, ¶ 25.]

Tax Authority then went forward with plans to open a
tax business at the Property without acquiring PTS.  [<u>Id.</u>, ¶
26.]  Again, Tax Authority has not used <u>any</u> information
disclosed by Swan during the parties' negotiations, and does
not intend to do so.  [<u>Id.</u>, ¶¶ 12, 27.]  Swan complained
about the Lease and Tax Authority's decision to compete in
Wilmington without any proper basis.

Notwithstanding the facts and the lack of reasonable
legal grounds for any claim, PTS filed this lawsuit on or
about December 16, 2005.  Before filing any response to PTS'
Complaint, Tax Authority's counsel promptly advised PTS'
counsel that this action was frivolous and should be
withdrawn.  [<u>See</u> Letter from Howard A. Rosenthal, Esquire,
to J.R. Julian, Esquire, dated December 20, 2005 (App. 1).]
PTS refused to respond.

On January 18, 2006, defendants served a Motion for
Sanctions pursuant to Rule 11, F.R.C.P., upon PTS, which
again refused to withdraw its Complaint or otherwise
respond.  Thus, defendants were required to incur
substantial costs to file Motions to Dismiss and Responses
to PTS' TRO Motion, when this frivolous action <u>never</u> had any
valid legal or factual basis.

Defendants now file their Motion for Sanctions as

7

permitted by Rule 11, F.R.C.P.[1]

### ARGUMENT.

### A.    Conduct Violative Of Rule 11.

"[T]he central purpose of Rule 11 is to deter baseless filings...." <u>Cooter & Gell v. Hartmarx Corporation</u>, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454 (1990). Rule 11(b) provides, in relevant part:

> "**Representations to Court.**  By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,
>
> * * *
>
> "(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> "(3) the allegations and other factual contentions have

---

[1] A motion for sanctions pursuant to Rule 11, F.R.C.P., is appropriately filed with the district court <u>after</u> a dismissal, provided that the motion was served upon the opposing party at least twenty-one days before the dismissal or judgment, as is the case here. <u>See</u> <u>Perpetual Securities, Inc. v. Tang</u>, 290 F.3d 132 (7th Cir. 2002), <u>Divane v. Krull Electric Co. Inc.</u>, 200 F.3d 1020 (7th Cir. 1999); <u>Powell v. Squire, Sanders & Dempsey</u>, 990 F. Supp. 541 (E.D. Ohio 1998); <u>see also</u> <u>Willy v. Coastal Corp.</u>, 503 U.S. 131, 137-9 (1992)(decided prior to the "safe harbor" amendment to Rule 11, F.R.C.P.). Defendants served this Motion upon PTS on January 18, 2006.

> evidentiary support or, if
> specifically so identified,
> are likely to have evidentiary
> support after a reasonable
> opportunity for further
> investigation or discovery."[2]

Rule 11 proscribes not only bad faith, but also unreasonable or frivolous legal contentions.  Both types of abuse are measured against <u>objective</u> criteria.  In <u>Bradgate Associates, Inc. v. Fellows, Read & Associates, Inc.</u>, 999 F.2d 745, 752 (3d Cir. 1993), the Third Circuit explained:

> "We have consistently noted
> that the Rule 11 test is 'now
> an objective one of
> reasonableness' which seeks to
> discourage pleadings 'without
> factual foundation, even
> though the paper was not filed
> in subjective bad faith.'  We
> have also said that Rule 11 is
> designed to ensure that
> pleadings are not used for
> improper purposes such as
> harassment, delay or needless
> increase in litigation
> expense."  [Citations
> omitted.]

See <u>Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Incorporated</u>, 57 F.3d 1215, 1225 (3d Cir. 1995)("The imposition of Rule 11 sanctions, [contrasted with the imposition of sanctions under the Court's inherent authority], requires only a showing of objectively unreasonable conduct"); <u>Turner Construction Company v. First Indemnity of America Insurance Company</u>, 829 F.Supp. 752, 768 (E.D.Pa. 1993), <u>aff'd</u>, 22 F.3d 303 (3d Cir. 1994)("'There is

---

[2]Where a party is represented by counsel, only counsel is subject to monetary sanctions for a violation of Rule 11(b)(2).  <u>See</u> Rule 11(c)(2)(A), F.R.C.P.

no room for a pure heart, empty head defense under Rule

11.'")(citations omitted); <u>Gaiardo v. Ethyl Corporation</u>, 835

F.2d 479, 482 (3d Cir. 1987)(objective analysis of frivolous

legal arguments required, as "Rule 11 was designed to

prevent abuse caused not only by bad faith but by negligence

and, to some extent, by professional incompetence"); <u>Loving</u>

<u>v. Pirelli Cable Corporation</u>, 11 F.Supp.2d 480, 492-493

(D.Del. 1998), <u>aff'd</u>, 178 F.3d 1279 (3d Cir. 1999)(Rule 11

test is objective reasonableness).

The Court fully explained this objective standard of

reasonableness in <u>Project 74 Allentown, Inc. v. Frost</u>, 143

F.R.D. 77, 82-3 (E.D.Pa. 1992), <u>aff'd</u>, 998 F.2d 1004 (3d

Cir. 1993):

> "Although Rule 11 has not been
> consistently applied
> throughout the Nation, certain
> aspects of Rule 11
> jurisprudence are clear.
> First, '[t]he Rule imposes an
> obligation on counsel and
> client analogous to the
> railroad crossing sign, "Stop,
> Look and Listen."  It may be
> rephrased, "Stop, Think,
> Investigate and Research"
> before filing papers either to
> initiate a suit or to conduct
> the litigation.'
>
> "Second, Rule 11 can only be
> violated if the signing of the
> document in question was
> unreasonable under the
> circumstances.  Although a
> court must avoid the use of
> hindsight ... it is the
> objective reasonableness of
> the signing which must be
> evaluated, not the subjective
> intent or belief of the
> signer.  In short, 'a pure
> heart and an empty head' is

10

> not a defense to a Rule 11
> violation."  (Citations and
> footnotes omitted.)

Stated differently with respect to the obligations imposed
by Rule 11(b)(2), "counsel 'must conduct a "reasonable
investigation of the facts and a normally competent level of
legal research to support [a complaint]."'"  Simmerman v.
Corino, 27 F.3d 58, 62 (3d Cir. 1994).

Here, the conduct of PTS and its counsel in bringing
this action is unreasonable under any objective analysis.

### B.   There Was No Reasonable Legal Basis For PTS' Claims.

For the reasons set forth in defendants' Brief in
Support of Motion to Dismiss, as amended [D.I. Nos. 10 and
13], and the Court's Memorandum Order dismissing this action
[D.I. No. 35], any reasonable lawyer should have concluded
that there was no legal basis for PTS' Complaint.  PTS'
purported RICO claim did not even attempt to plead the
required statutory elements of valid predicate racketeering
acts, a pattern of racketeering, or a RICO enterprise.  See
Amended Brief in Support of Motion to Dismiss [D.I. No. 13]
at 7-15.

As made clear by the Court's decision, the "pattern"
element bears particular emphasis here, as no possible
amendment of PTS' scant RICO claim could have altered the
fact that, at its core, PTS' Complaint described a single,
discrete and short-lived "scheme" with a single purpose and
victim (even assuming the Complaint alleges any deceptive
conduct or fraud, which is denied for the reasons explained

in the Brief in Support of Motion to Dismiss). [Memorandum Order [D.I. No. 35] at 8.] As expressly recognized by the Court, under well settled precedent of the United States Supreme Court and Third Circuit, these allegations, no matter how recast, could not rise to the sort of continuous and related pattern of criminal racketeering necessary for a RICO claim. See H.J. Inc. v. Northwestern Bell Telephone Company, 492 U.S. 229, 109 S.Ct. 2893, 2901 (1989); Bonavitacola Electric Contractor, Inc. v. Boro Developers, Inc., 2003 U.S.App. LEXIS 27918, *14 (3d Cir. October 30, 2003), cert. denied, 543 U.S. 818, 125 S.Ct. 57 (2004)(alleged scheme to fraudulently obtain three contracts over a ten-year period did not state a valid pattern); Marshall-Silver Construction Company, Inc. v. Mendel, 894 F.2d 593, 596-7 (3d Cir. 1990)(no pattern based on seven-month scheme to bankrupt business); Banks v. Wolk, 918 F.2d 418 (3d Cir. 1990)(no pattern based on single victim, single injury scheme); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1417-8 (3d Cir.), cert. denied, 501 U.S. 1222, 111 S.Ct. 2839 (1991) (mailings related to a single fraud of even uncertain duration do not create a pattern); Hindes v. Castle, 937 F.2d 868 (3d Cir. 1991)(eight-month scheme involving mass mailings failed to satisfy the "continuity" necessary for a RICO pattern).

Counsel's failure to "Stop, Think, Investigate and Research" this frivolous RICO claim cannot be minimized, as this was PTS' sole federal claim, and PTS never cited a single decision providing support for the conclusion that a

12

RICO pattern could be found.  Indeed, it is telling that
PTS' counsel was unable to provide any supporting authority
when the Court extended that opportunity after oral
argument.  This research should have been done before PTS
sued defendants in federal court and accused them of
criminal racketeering.

Even worse, PTS alleged diversity as an alternative
basis for the Court to exercise subject matter jurisdiction,
notwithstanding that, on the face of the Complaint, the
Piane Defendants were not diverse, as they are citizens of
Delaware like PTS.  Again, had counsel performed any cursory
research, this flaw -- which PTS admitted at oral argument
-- would have been apparent.  No reasonable counsel could
have brought this action in federal court.[3]

Nor could any reasonable counsel file a complaint in
any court setting forth PTS' purported state law claims.
The purported oral agreement -- pursuant to which Tax
Authority and the Piane Defendants allegedly agreed not to
enter into any lease unless Tax Authority purchased PTS --
is subject to, and thus barred by, the Statute of Frauds as
an agreement concerning an interest in real estate.  Had
counsel simply reviewed the language of the Statute of

---

[3]PTS' suggestion of an independent private right of
action for mail or wire fraud under 18 U.S.C. §§ 1341 or
1343 was equally ludicrous.  See Wisdom v. First Midwest
Bank of Poplar Bluff, 167 F.3d 402, 408 (8th Cir. 1999);
Ryan v. Ohio Edison Company, 611 F.2d 1170, 1178 (6th Cir.
1979); Bell v. Health-Mor, Inc., 549 F.2d 342, 346 (5th Cir.
1977); Stern v. Prudential Prop. & Cas. Ins. Co., 1994
U.S.Dist.LEXIS 9022, at *4 (E.D.Pa. June 30, 1994);
Fleishman v. Scilley, 2004 U.S.Dist.LEXIS 20066, at *3
(E.D.Pa. September 30, 2004).  PTS cited no contrary
authority, and there is none.

Frauds and related decisions in almost identical
circumstances, this would have been obvious. <u>See</u> 6 Del. C.
§ 2714(a) ("No action shall be brought to charge any person
... upon any contract or sale of lands, tenements, or
hereditaments, or any interest in or concerning them ...
unless the contract is reduced to writing...."); <u>Huntington</u>
<u>Homeowners Association, Inc. v. 706 Investments</u>, 1999
Del.Ch.LEXIS 119, *8 (Del.Ch. 1999), (Chancery Court held
that landlord's alleged oral promise not to lease space in
shopping center to any business that sold alcoholic
beverages was barred by the Statute of Frauds).

    In the absence of any enforceable agreement, as well as
for the other reasons set forth in the Motion to Dismiss
[D.I. No. 13], none of PTS' related common law claims,
whether sounding in tort or contract, could possibly
survive.[4] Likewise, PTS' "misappropriation" claims are
clearly flawed as a matter of law, as PTS' common law claim
is barred by Section 2007 of the Delaware Uniform Trade
Secrets Act, 6 Del.C. §§ 2001, <u>et</u> <u>seq.</u> ("UTSA"), which
"displaces conflicting tort, restitutionary and other law of
this State providing civil remedies for misappropriation of
a trade secret." 6 Del.C. § 2007(a); <u>see</u> <u>Sanirab Corp. v.</u>
<u>Sunroc Corp.</u>, 2002 Del.Super.LEXIS 350, *6 (Del.Super. April
29, 2002); <u>Savor, Inc. v. FMR Corp.</u>, 2001 Del.Super.LEXIS
170, *14 (Del.Super. April 24, 2001), <u>aff'd</u>, 812 A.2d 894

---

[4]PTS' tort and contract claims are independently barred
for the multiple other reasons set forth in the Motion to
Dismiss, including lack of consideration for the alleged
contract and application of the economic loss doctrine.

(Del. 2002)(Court dismissed plaintiff's common law claims of unfair competition and civil conspiracy based on the UTSA).

Nor is there any valid UTSA claim, as the customer list provided by PTS -- which was not subject to any confidentiality agreement or other restriction and does not include any contact information, is not subject to legal protection as a trade secret.

For these various reasons, as PTS' claims clearly are not warranted by existing law or by any nonfrivolous argument to modify or change the law, PTS' counsel should be subjected to sanctions under Rule 11(b)(2). <u>See</u> <u>Loving v. Pirelli Cable Corp.</u>, <u>supra</u>, 11 F.Supp.2d at 494 (Court imposed sanctions where, "[i]f [counsel] had conducted 'a reasonable inquiry into the applicable law and facts,' he would have concluded that [the complaint] was not 'well-grounded in law and fact.'").

    **C.**    **<u>There Was No Factual Support For PTS' Allegations.</u>**

Sanctions should also be imposed against PTS itself under Rule 11(b)(3), as there simply was no factual support for PTS' allegations. As set forth in detail in their respective Affidavits, both Leese and Piane, Jr. deny that there <u>ever</u> was any agreement conditioning the Lease on the completion of Tax Authority's acquisition of PTS. This stands in stark contrast to the lack of any affidavit or evidentiary support proffered by PTS for this agreement (even though it filed an equally ill-conceived Motion for Temporary Restraining Order with its Complaint). This is not surprising, as the claim simply makes no sense; Tax

Authority already had a tax preparation business in
Wilmington, and was free to lease space of its choosing,
regardless of any possible acquisition of PTS (so too were
the Piane Defendants free to lease their Property to any
suitable tenant).  PTS did not allege, nor could it, that
Tax Authority could not compete with PTS merely because it
discussed a potential acquisition of PTS' business.

    Moreover, the purported agreement, or any alleged
conspiracy between Tax Authority and the Piane Defendants,
is belied by PTS' admission that it, and not Tax Authority,
terminated the negotiations for the sale of the business.
PTS' allegation that Tax Authority represented to the Piane
Defendants that its purchase of PTS was a "done deal," is a
red herring and cannot form the basis for any fraud or other
claim, since such a statement, even if true, could not have
induced PTS to take any action to its detriment.

    Likewise, the Complaint makes clear that any
information disclosed by PTS to Tax Authority was disclosed
voluntarily, without any confidentiality agreement,
restrictive covenant or other condition or protective
designation.  More important, the information -- a list of
names with no contact information or description of the
services provided by PTS -- is of no possible use by PTS,
and has not been used by PTS.

    Finally, PTS' bad faith and the improper purpose of
this litigation is underscored by the fact that PTS somehow
sought to restrict Tax Authority from competing in any
location within the same zip code.  There was absolutely no

16

basis for such extraordinary relief in any of PTS'
allegations and legal theories, even if valid.

If necessary, an evidentiary hearing will demonstrate
that PTS commenced this action and made allegations against
these defendants -- indeed, branded these defendants as
criminals and racketeers -- without any factual basis
whatsoever.  This is precisely the sort of situation Rule 11
is intended to address.

### CONCLUSION.

For these reasons, defendants request that this Motion
be granted and that sanctions be imposed against both PTS
and its counsel in an amount adequate to deter future
violations of Rule 11, F.R.C.P.  PTS and its counsel were
given an opportunity to act properly and withdraw this
lawsuit; the failure to do so, under the circumstances
described above, justifies the harshest of sanctions.
Therefore, Tax Authority and Leese request that their Motion
be granted and that they be permitted to present an
Affidavit of Attorneys' Fees to this Court, and that such
amounts be awarded to them as an appropriate sanction.

Erin D. Edwards (No. 4392)
Young Conaway Stargatt &
Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE   19899-0391
(302) 571-6552
(302) 576-3471 (Fax)
   *Attorney for Defendants*
      *The Tax Authority and*
       *Kenneth M. Leese*

**OF COUNSEL:**
Howard A. Rosenthal
Patrick J. Doran
Pelino & Lentz, P.C.
One Liberty Place
1650 Market Street
Thirty-Second Floor
Philadelphia, PA 19103-7393
(215) 665-1540
(215) 665-1536 (Fax)

17