## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC.,           :
                                            :
       Plaintiff,                       :
                                            :
       v.                               :     C.A. No. 05-872 SLR
                                            :
THE TAX AUTHORITY, INC., et al.,       :
                                            :
       Defendants.                      :

### PLAINTIFF'S CONSOLIDATED ANSWERING BRIEF
### IN OPPOSITION TO
### DEFENDANTS THE TAX AUTHORITY INC. AND KENNETH M. LEESE'S
### AND
### DEFENDANTS ROBERT PIANE, ROBERT PIANE, JR. AND PIANE CATERS, INC.'S
### MOTIONS FOR SANCTIONS

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., P.A.
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

J.R. Julian (#488)
J.R. JULIAN, P.A.
824 North Market Street, Suite 1001
Wilmington, DE 19899
(302)658-6700

June 30, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.     Sale Negotiations and the Disclosure of Confidential Information. . . . . . . . . . . 3

       B.     Piane Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       C.     Leese Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       D.     Leese and Piane Execute a Lease that is Concealed from Swan. . . . . . . . . . . . . 5

       E.     Swan Learns the Full Extent of the Lease Agreement. . . . . . . . . . . . . . . . . . . . 7

       F.     Tax Authority Has Opened a Tax preparation Business at the 2332 North Market
            Street Location. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      I.     Defendants' Motions for Sanctions are untimely since they were filed after entry
           of final judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      II.    Defendants Robert Piane, Jr., Robert Piane, Sr., and Piane Caterers, Inc.'s Motion
          for Sanctions is fatally flawed since they violated Rule 11's "Safe Harbor"
          provision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     III.   In addition to being procedurally barred, Defendants' Motions for Sanctions have
          no substantive basis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          A.    Plaintiff's claims had a reasonable legal basis. . . . . . . . . . . . . . . . . . . . 13

          B.    Plaintiff's claims were supported by the facts. . . . . . . . . . . . . . . . . . . . 15

      IV.   Plaintiff and its counsel are entitled to their expenses and attorneys' fees in
          defending these untimely and groundless Motions for Sanctions. . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

Brickwood Contrs. Inc. v. Datanet Eng'g, Inc., 369 F.3d 385 (4th Cir. 2004). . . . . . . . . . . . . 11

Dipaolo v. Moran, 407 F.3d 140 (3d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Greene County Memorial Park v. Behm Funeral Homes, Inc., 1994 App. LEXIS 40945 (3d Cir.
    1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hilmon Co. v. Hyatt International, 899 F.2d 250 (3d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . 8

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989). . . . . . . . . . . . . . . . . . . . . . . . . 14

In Re Nicola, 65 Fed. Appx. 759 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In Re Rockefeller Center Properties, Inc. Securities Litigation, 2004 U.S. Dist. LEXIS 12796 (D.
    Del. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Kaplan v. Zenner, 956 F.2d 149 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1990). . . . . . . . . . . . . . . . . . . 14

Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Investments, 951 F.2d 1399
    (3d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pensiero v. Lingle, 847 F.2d 90 (3d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

Simmerman v. Corino, 27 F.3d 58 (3d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

Tabas v. Tabas, 47 F.3d 1280 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed its Verified Complaint on December 16, 2005, and alleged eight independent claims of action against the Defendants, which included: breach of agreement, tortious interference with prospective economic advantage, tortious interference with contract, unfair trade practices, misappropriation of trade secrets, civil conspiracy, common law fraud, mail fraud, wire fraud, a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) and bad faith. (D.I. 1). Simultaneously with the filing of the Verified Complaint, Plaintiff filed a motion for a temporary restraining order.

On December 30, 2005, Defendants Tax Authority and Kenneth Leese filed a Motion to Dismiss. (D.I. 9). On January 9, 2006, Defendant Robert Piane, Jr., Robert Piane, Sr., and Piane Caterers, Inc. filed a separate Motion to Dismiss. (D.I. 18).

On April 11, 2006, after briefing and oral argument, this Court issued a Memorandum Opinion entering final judgment in the case by granting Defendants' Motions to Dismiss for lack of subject matter jurisdiction and declining to exercise supplemental jurisdiction over the state law claims. (D.I. 35).

The Clerk of the Court entered the Opinion on the docket on April 11, 2006 and closed the case on April 20, 2006.

On May 11, 2006, one month after Your Honor entered final judgment in the case, Defendants each filed separate Motions for Sanctions. (D.I. 36 and 38).

This is Plaintiff's Answering Brief in opposition to both of those motions.

## SUMMARY OF ARGUMENT

1.    Defendants' Motions for Sanctions are untimely since they were filed after entry of final judgment.  Accordingly, they must be denied.

2.    Defendants' Robert Piane, Jr., Robert Piane, Sr., and Piane Caterers, Inc. Motion for Sanctions is fatally flawed and must be denied since they violated Rule 11's "Safe Harbor" provision.

3.    The Motions do not establish a basis for sanctions.

    A.    Rule 11 sanctions are extraordinary and should only be issued for abuse.

    B.    The mere failure of a complaint to withstand a motion to dismiss does not establish a Rule 11 violation.

    C.    There is no basis under the facts of this case to award sanctions.

## STATEMENT OF FACTS[1]

Plaintiff Preferred Tax is in the business of preparing tax returns for individuals. Edwin Swan ("Swan") is the president of Preferred Tax and a resident of Delaware. Defendant, Tax Authority, also is in the business of preparing tax returns for individuals and is a direct competitor of Preferred Tax. Tax Authority operates under the name Jackson Hewitt® as a franchisee of Jackson Hewitt Tax Service, Inc. ("Jackson Hewitt"). Kenneth M. Leese ("Leese") is the president of Tax Authority and a resident of New Jersey.

### A.     Sale Negotiations and the Disclosure of Confidential Information.

On June 16, 2005, Swan began negotiations with Leese for the purchase of Preferred Tax by Tax Authority (the "Negotiations"). During the Negotiations, Leese requested from Swan the Preferred Tax customer list, pricing strategy, marketing methods, operational systems, employee ledger and other information about Preferred Tax, which Swan provided to Leese in confidence.

During the Negotiations, the renting of Preferred Tax's current office space was discussed and Leese commented that it might be too small. Unknown to Leese, but in order to promote the sale by removing limited office space as an obstacle, Swan contacted Robert A. Piane, Jr. ("Piane, Jr."), a long-time friend, to discuss the possibility of converting storage space into office space in the building located at 2132 North Market Street ("Building"), which is directly across the street from the Preferred Tax office. This building is owned by Piane, Jr.'s father, Robert A. Piane ("Piane").

As set forth more fully below, as part of the Negotiations, Swan disclosed to Leese

---

[1] Plaintiff reasserts its Statement of Facts contained in Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Verified Complaint (D.I. 22).

confidential information about the rental space, that is, the name of the owner – Piane. Swan also disclosed confidential information about the Negotiations to Piane – the name of the prospective buyer, Leese and Tax Authority.

**B.    Piane Agreement.**

Swan told Piane, Jr. in confidence that he was negotiating the sale of Preferred Tax and that, if purchased, the buyer might need a larger office space. Swan inquired whether Piane would be interested in renting storage space in the Building to be converted into office space. Piane, Jr. agreed with Swan to rent part of the Building to the prospective buyer on the limited condition that the prospective buyer had to purchase Preferred Tax.

Acting in reliance on this agreement, Swan provided Piane, Jr. with the name of the prospective buyer, Tax Authority. Before the discussion with Swan, neither Piane nor Piane, Jr. was aware of Leese's or Tax Authority's potential interest in renting the Building.

**C.    Leese Agreement.**

Swan and Leese agreed that the availability of adequate office space to Tax Authority upon purchasing Preferred Tax was vital to the Negotiations and that Tax Authority would not need such office space if it did not purchase Preferred Tax. Acting in reliance on his agreement with Piane, Jr., Swan told Leese that the owner of the Building agreed to rent space to Tax Authority, but only if Tax Authority purchased Preferred Tax. On June 30, 2005, by e-mail, Leese requested additional information about the Building and about Preferred Tax.

On July 7, 2005, in reliance on his agreement with Leese, Swan provided Leese with the contact information for Piane, Jr. and additional information about the Building. Swan also provided the other business-related information that Leese had requested by e-mail. Prior to the

4

Negotiations and his discussion with Swan, Leese did not know that the Building had office space available to rent.

### D.    Leese and Piane Execute a Lease that is Concealed from Swan.

Between July 7, 2005 and August 8, 2005, Swan received no further communication from Leese, Piane, Jr., or Piane regarding the Negotiations or the Building. At 4:50 p.m. on August 8, 2005, Leese e-mailed to Swan an offer ("First Offer") to purchase Preferred Tax. While Swan was contemplating the First Offer, he learned, on August 10, 2005, by happenstance, that Piane and Tax Authority already had signed a lease ("Lease") for office space in the Building on August 8, 2005. Swan obtained this information from a comment that Piane, Jr. made to third parties at a meeting in an unrelated matter. After the meeting, Swan informed Piane, Jr. that the Negotiations were ongoing, that the Lease was unacceptable, and that it was signed before Swan even received the First Offer. Similarly, Leese also failed to inform Swan: (1) that he executed a Lease with Piane on August 8, 2005 before he made the offer to Swan and (2) that he had commenced renovations and had taken steps to open a tax preparation business directly across the street in the Building. Leese did not inform Swan of the Lease in any of his many e-mails, telephone conversations and in-person meetings.

On August 11, 2005, Swan called Piane to discuss the Lease. In that discussion, (a) Piane informed Swan that Leese represented to Piane that a sale agreement had been reached; (b) Piane asked Swan what the two of them could do about Leese's misrepresentation; and (c) Piane mentioned that he expected to receive a check from Tax Authority (and did receive the check some time after August 11). Piane failed to mention that he expected Tax Authority to send him a check in the amount of $14,100.00 in full prepayment of the first year's rent and that Piane had

agreed to use the prepayment to convert the storage space into office space for Tax Authority while the Negotiations were ongoing.

Shortly after August 11, 2005, Swan's representative, Calvin Harmon ("Harmon") discussed the Lease with Leese. In that discussion, Harmon informed Leese that it was unacceptable to Swan that the Lease had been executed and that Swan would not negotiate under such circumstances. Leese explicitly agreed that if the Negotiations were not successful Tax Authority would not need the office space and that Tax Authority would release Piane from the Lease, if Piane, in turn, released Tax Authority from the Lease. Harmon informed Swan to that effect. Swan called Piane and confirmed that Piane would release Tax Authority, if the deal was not consummated between Leese and Swan. However, Leese failed to mention to Harmon that he already had sent $14,100.00 to Piane in prepayment of the first year's rent, that Piane had agreed to spend the $14,100.00 to convert the storage space, and that the conversion would take place while the Negotiations were ongoing.

The Lease negotiations, the Lease, the one-year prepayment and the spending of the $14,100.00 were facts that were conspicuously omitted from all e-mails, telephone conversations and in-person meetings between Leese and Swan. If Swan had known about the one-year rent prepayment, there would have been no further negotiations and no further disclosures of confidential information. Furthermore, Swan would have acted to stop the renovations before Piane spent the money.

Following up on the continuing Negotiations, Tax Authority requested additional confidential business information and submitted, on September 19, 2005, a second offer to purchase Preferred Tax ("Second Offer"). The Second Offer was unsatisfactory to Swan. On

6

September 30, 2005, Swan rejected the Second Offer and informed Leese and Piane that Preferred Tax would not be sold at that time.

### E.    Swan Learns the Full Extent of the Lease Agreement.

After Piane, Jr. received a copy of the September 30 letter in early October 2005, he confessed to Swan that Tax Authority had prepaid $14,100.00 for the first year of the Lease and that Piane already had spent the money on renovations. No one (i.e., Piane, Piane, Jr., or Leese) ever mentioned the $14,100.00 pre-payment to Swan prior to that date. Piane claimed that he executed the Lease and spent the $14,100.00 on renovations based on Leese's misrepresentations that the Preferred Tax sale was consummated. Leese claimed that Piane was aware that the deal was not consummated, but spent the money anyway and then refused to return the money to Leese.

Although Piane and Piane, Jr. have their primary place of business right across the street from Preferred Tax, Swan was unaware that renovations had begun. Neither Piane nor Piane, Jr. offered any explanation as to why the office space renovation was started or why the entire $14,100.00 pre-payment was spent without checking on the status of the Negotiations with their long-time friend Swan. Although Leese had several communications with Swan, he never offered an explanation as to why he did not disclose the Lease, the pre-payment, and the renovations to Swan.

### F.    Tax Authority Has Opened a Tax preparation Business at the 2132 North Market Street Location.

As of the filing of this lawsuit, Tax Authority had sent workers to prepare the office space for Tax Authority to move in and such work was continuing. Furthermore, in mid-January 2006 the Tax Authority opened for business, operating a tax preparation business at the Building.

## ARGUMENT

### I. DEFENDANTS' MOTIONS FOR SANCTIONS ARE UNTIMELY SINCE THEY WERE FILED AFTER ENTRY OF FINAL JUDGMENT.

In this case, Defendants filed their Motions for Sanctions after the entry of final judgment. Final judgment was entered on April 11, 2006. The motions were filed on May 11, 2006. The motions are untimely. In 1988, the Third Circuit promulgated a supervisory rule[2] for the courts in the Third Circuit requiring "that all motions requesting Rule 11 sanctions be filed in the district court before the entry of a final judgment." Pensiero v. Lingle, 847 F.2d 90, 99 (3d Cir. 1988). The rationale for the supervisory rule is:

> Swift disposition of a Rule 11 motion is essential so that any ensuing challenge to it might be included with the appeal on the merits. This approach serves the interest of judicial economy without risking a significant waste of district court efforts. ... Similarly, concurrent consideration of challenges to the merits and the imposition of sanctions avoids the invariable demand on two separate appellate panels to acquaint themselves with the underlying facts and the parties' respective legal positions. Greene County Memorial Park v. Behm Funeral Homes, Inc., 1994 U.S. App. LEXIS 40945 (3d Cir. 1994)(quoting Pensiero v. Lingle, 847 F.2d 90, 100 (3d Cir. 1988)).

It is clear that the untimely filing of these motions for sanctions after the entry of final judgment requires that this Court dismiss the motion. See Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Investments, 951 F.2d 1399, 1412 (3d Cir. 1991)(citing Hilmon Co. v. Hyatt International, 899 F.2d 250, 252 n.1 (3d Cir. 1990)).

The Pensiero rule applies to "all motions for sanctions"[3], including ones like Defendants'

---

[2] A supervisory rule is a procedural rule rather than a substantive one.

[3] Pensiero v. Lingle, 847 F.2d 90, 99 (3d Cir. 1988)

8

motions, alleging a frivolous complaint.  See Simmerman v. Corino, 27 F.3d. 58 (3d Cir. 1994)

["there is no inordinate burden in requiring the district court to raise and resolve any Rule 11

issues prior to or concurrent with its resolution of the merits of the case" at 63].

In their Opening Brief, Defendants Tax Authority and Leese cite, on page 8 fn. 1, to

Seventh Circuit cases[4] for the proposition that their motion was timely, without bringing to this

Court's attention the controlling and conflicting Third Circuit Precedent.

Defendants have not explained their failure to cite to this controlling precedent.  When

that precedent was brought by Plaintiff to this Court's attention, Defendants asserted an argument

that the supervisory rule was adopted before, and did not contemplate, the Rule 11 amendments.

See Emergency Discovery Dispute Resolution, D.I. 44.  Defendants' argument is meritless.  The

1993 amendments had no effect on the Third Circuit's supervisory rule, which is still valid to this

day.  See Dipaolo v. Moran, 407 F.3d 140 (3d Cir. 2005).  "The rule was amended in 1993 to

broaden the parties' obligations to the court, but to de-emphasize the importance of

compensatory sanctions for violations of those obligations.  The 1993 revision also created a

'safe harbor' [21 day period] provision that allows a party served with a Rule 11 motion to avoid

the possibility of sanctions by withdrawing or correcting the offending paper." Fed. R. of Civ.

Pro. § 11.2 History of Rule p. 171.

Defendants also claim that the Third Circuit's supervisory rule was eroded in Dipaolo v.

Moran, 407 F.3d 140 (3d Cir. 2005).  See Emergency Discovery Dispute Resolution, D.I. 44.

---

[4] . The Seventh Circuit formed its precedence in Kaplan v. Zenner, 956 F.2d 149 (7th Cir. 1992).  In Kaplan, the Seventh Circuit recognized the importance of the prompt filing of a motions for sanctions; it did not, however, want to accept the Third Circuit's bright-line rule set forth in Pensiero, and rather would factually determine the reasonableness of the time when a motion for sanctions was filed.

This claim is equally meritless. In <u>Dipaolo</u> the Court <u>upheld</u> the supervisory rule, which was not implicated since the motion for sanctions was filed <u>prior to the entry of final judgment</u>. In that case, the only thing that came after the final judgment was the Court ordering the type of sanctions that were being imposed. At page 145 fn. 3, the court stated:

> Puricelli also argues that the entry of the sanction after dismissal of the action violates the supervisory rule-announced in <u>Lingle</u>, 847 F.2d at 100 [Pensiero], and relied upon in <u>Landon</u>, 938 F.2d at 453- that a litigant must file a motion for Rule 11 sanctions prior to the entry of final judgment. Here, although the sanction was fashioned after the dismissal, the filing of the sanctions motion; as well as the decision to impose a sanction, occurred before the dismissal. <u>As such, the supervisory rule is not implicated</u>. [emphasis added].

Further, in 2003, the Third Circuit, in <u>In Re: Nicola</u>, 65 Fed. Appx. 759 (3d Cir. 2003), even confirmed that the <u>Pensiero</u> supervisory rule extends to all proceedings in the Third Circuit, including those in Bankruptcy Court.

The Defendants' motions were clearly untimely in violation of the Third Circuit's supervisory rule and therefore must be denied.

II.    **DEFENDANTS' ROBERT PIANE, JR., ROBERT PIANE, SR., AND PIANE CATERERS, INC. MOTION FOR SANCTIONS IS FATALLY FLAWED SINCE THEY VIOLATED RULE 11'S "SAFE HARBOR" PROVISION.**

As discussed, <u>supra</u>, in 1993, Fed. R. of Civ. Proc. 11 was amended to include a "Safe Harbor" provision requiring the movant to serve a file-ready motion for sanctions, and requiring the movant to wait more than 21 days after service to file the motion with the Court. <u>See</u> Fed. R. of Civ. Proc. 11(c)(1)(a). The notes of the Advisory Committee explain the purpose of a file-ready motion being served in advance of the filing:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

In clear violation of the requirements of Rule 11, Defendants Robert Piane, Jr., Robert Piane, Sr. and Piane Caterers, Inc. failed to serve Plaintiff with any such motion for sanctions in advance of their May 11, 2006 filing of their Motion for Sanctions. (D.I. 36). Accordingly, their violation requires that their motion be dismissed. <u>See</u> <u>Brickwood Contrs. Inc. v. Datanet Eng'g, Inc.</u>, 369 F.3d 385 (4th Cir. 2004).

### III.     IN ADDITION TO BEING PROCEDURALLY BARRED, DEFENDANTS' MOTIONS FOR SANCTIONS HAVE NO SUBSTANTIVE BASIS

Defendants allege that Plaintiff's complaint was frivolous under Fed. R. Civ. Pro 11(b)(2) and/or (3) and ask this Court to award the extraordinary relief of sanctions against Plaintiff and its counsel. Rule 11(b) states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, --
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

Defendants' motions must be denied for two separate reasons.

First, the Third Circuit has emphasized that Rule 11 only targets abuse, i.e., the filing of the complaint constituted abusive litigation or misuse of the court's process. See In Re Rockefeller Center Properties, Inc. Securities Litigation, 2004 U.S. Dist. LEXIS 12796, *2 (D. Del. 2004)(citing Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994)). Plaintiff's filing of the Complaint is no where near the level of abusive litigation or misuse of the court's process for the issuance of sanctions. To the contrary, Your Honor stated that "the complaint alleges facts that may provide a basis for pursuing commercial litigation under state law." (D.I. 35 at 8).

Second, as set forth below, Plaintiff and its attorney complied with Rule 11(b)(2) by

having a nonfrivolous argument for the extension, modification, or reversal of existing law, and complied with 11(b)(3) by having factual support.

### A.     <u>Plaintiff's claims had a reasonable legal basis</u>.

Defendants allege that there was no legal basis for Plaintiff's Complaint. (Defendants The Tax Authority, Inc., and Kenneth M. Leese's Opening Brief D.I. 39 at 11-15). On April 11, 2006, this Court issued a Memorandum Opinion entering final judgment in the case by granting Defendants' Motions to Dismiss for lack of subject matter jurisdiction[5] and declining to exercise supplemental jurisdiction over the state law claims. (D.I. 35). In dismissing the complaint for lack of subject matter jurisdiction, Your Honor held that "[t]he complaint does not allege facts sufficient to satisfy the continuity requirement of Rico." " (D.I. 35 at 8). However, "[t]he mere failure of a complaint to withstand a motion for summary or a motion to dismiss should not be thought to establish a rule violation." <u>In Re Rockefeller Center Properties, Inc. Securities Litigation</u>, 2004 U.S. Dist. LEXIS 12796, *2 (D. Del. 2004)(quoting <u>Simmerman v. Corino</u>, 27 F.3d 58, 62 (3d Cir. 1994)).

RICO, the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. §§ 1961 - 68 (1984 & Supp. 1990) authorizes suits by "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." Section 1962 sets forth four types of prohibited activities that give rise to RICO liability. Subsection (a) outlaws the use of funds obtained through a pattern of racketeering activity or by the collection of an unlawful debt to acquire an interest in, or operate, a legitimate business enterprise affecting interstate commerce. Subsection (b) outlaws the

---

[5] At oral argument, prior to this Court's Opinion, and which was prior to the filing of Defendants' Motions for Sanctions, Plaintiff's counsel indicated that Plaintiff was not pursuing any other basis for subject matter jurisdiction except RICO.

employment of such racketeering conduct or proceeds to "acquire or maintain, directly or indirectly, any interest in or control of any enterprise" affecting interstate commerce. Subsection (c) outlaws "any person employed by or associated with any enterprise" affecting interstate commerce from "conducting or participating, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or the collection of an unlawful debt." Finally, subsection (d) makes it unlawful for any person to conspire to violate any of provisions of subsections (a), (b), or (c). See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1990).

In H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989), the United States Supreme Court held that "to prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id. at 239. Neither RICO itself, nor the United States Supreme Court, however, have defined what length of time is required for a showing of continuity. See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989). In Tabas v. Tabas, 47 F.3d 1280 (3d Cir. 1995), the Third Circuit arguably developed a durational requirement of at least twelve months. See id. at 1293. The United States Supreme Court, however, has held that "the precise methods by which relatedness and continuity or its threat may be proved, cannot be fixed in advance with such clarity that it will always be apparent whether in a particular case a 'pattern of racketeering activity' exists. The development of these concepts must await future cases, absent a decision by Congress to revisit RICO to provide clearer guidance as to the Act's intended scope." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 243 (1989).

Since neither RICO itself, nor the United States Supreme Court, have a bright-line length

14

of time requirement to establish RICO violations, Plaintiff had "a nonfrivolous argument for the extension, modification or reversal of existing law" and, therefore, contrary to Defendants' argument, cannot be sanctioned under Rule 11(b)(2).

**B.      Plaintiff's claims were supported by the facts.**

Defendants' allege that there was no factual basis for Plaintiff's Complaint. (Defendants The Tax Authority, Inc., and Kenneth M. Leese's Opening Brief D.I. 39 at 15-17). Defendants' sole reliance on the facts is through Affidavits filed by the Defendants themselves. It should be noted that the Complaint filed by Plaintiff on December 16, 2005 was filed as a Verified Complaint through the sworn verification of the President of Preferred Tax Service, Inc., Edwin Swan. (D.I. 1). Plaintiff's facts, which were set forth in the Verified Complaint and Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Verified Complaint in its Entirety, (D.I. 22) support the Plaintiff's allegation that defendants violated RICO - they obtained trade secrets through a pattern of racketeering; invested those trade secrets into an enterprise (a new tax preparation business) engaged in preparing federal tax returns; and that the tax preparation enterprise has harmed and will harm Plaintiff by the use of the misappropriated trade secrets. In their Opening Brief, Defendants attempt to argue factual disputes when the only determination made by this Court was on a discrete issue of law - whether the complaint alleges "facts sufficient to satisfy the continuity requirement of RICO." (D.I. 35 at 8).

IV.     **PLAINTIFF AND ITS COUNSEL ARE ENTITLED TO THEIR EXPENSES AND ATTORNEYS' FEES IN DEFENDING THESE UNTIMELY AND GROUNDLESS MOTIONS FOR SANCTIONS.**

Fed. R. of Civ. Proc. 11(c)(1)(a) provides that "the Court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in ... opposing the motion." As set forth above, it is clear that the untimely filing of a motion for sanctions after the entry of final judgment violates the Third Circuit's supervisory rule established in <u>Pensiero v. Lingle,</u> 847 F.2d 90, 99 (3d Cir. 1988).[6] Further, as also set forth above, there is no basis for Defendants seeking the extraordinary relief of sanctions against Plaintiff and its counsel. For these reasons, Plaintiff and its attorney should be awarded their expenses and attorneys' fees incurred in opposing these motions. An application for fees and expenses will be filed with the Court upon the Court's decision on these motions.

---

[6] In addition, Plaintiff should also be entitled to its attorneys' fees for the separate violation of the Safe Harbor provision of Rule 11 by Defendants Robert Piane, Jr., Robert Piane, Sr. and Piane Caterers, Inc.

16

## **CONCLUSION**

For the reasons set forth above, and the authorities in support of those reasons, Plaintiff

and its counsel pray that this Court enter an Order dismissing Defendants' motions for sanctions,

and, pursuant to Fed. R. of Civ. Proc. 11(c)(1)(a), awarding Plaintiff and its counsel their

"reasonable expenses and attorney's fees incurred in ... opposing the motion."

Respectfully submitted,
**RICHARD R. WIER, JR., P.A.**


  /s/ Daniel W. Scialpi
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

J.R. Julian (#488)
J.R. JULIAN, P.A.
824 North Market Street, Suite 1001
Wilmington, DE 19899
(302)658-6700

17

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PREFERRED TAX SERVICE, INC.,           :
                                       :
            Plaintiff,                 :
                                       :
       v.                              :      C.A. No. 05-872 SLR
                                       :
THE TAX AUTHORITY, INC., et al.,       :
                                       :
            Defendants.                :

### CERTIFICATE OF SERVICE

I certify that on this 30th day of June 2006 that I electronically filed the attached with the

Clerk of the Court through CM/ECF which will said notice of said filing to counsel of record.

**RICHARD R. WIER, JR., P.A.**


 /s/ Daniel W. Scialpi
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222

18